CULLEN & DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Attorneys for Metroplex on the Atlantic, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:                                                    Chapter 11

METROPLEX ON THE ATLANTIC, LLC,                           Case No.: 15-42499 (CEC)

                                    Debtor.
----------------------------------------------------------x

### DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 327, 328 AND 543 AND RULES 2014 AND 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO ENGAGE PLAN ADMINISTRATOR, REAL ESTATE ADVISORS AND MANAGEMENT COMPANY, FOR TURNOVER OF PROPERTY BY RECEIVER AND FOR EXPEDITED HEARING

To the Honorable Carla E. Craig, Chief United States Bankruptcy Judge:

Metroplex on the Atlantic, LLC (the "Debtor"), debtor and debtor-in-possession herein,

by and through its counsel Cullen and Dykman LLP, respectfully represents as follows:

#### BACKGROUND

1.      On May 28, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") with United

States Bankruptcy Court for the Eastern District of New York. The Debtor remains a debtor-in-

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or

official committee of unsecured creditors has been appointed in the Debtor's case.

2.      On November 19, 2015, the Debtor, together with its pre-petition secured lender,

DOF IV Metroplex, LLC (the "Secured Lender") filed a Joint Motion for an Order Approving a

Certain Settlement and Plan Support Stipulation (the "Plan Support Stipulation") by and among the Debtor, the Secured Lender, Kew Gardens Property LLC ("Kew"), Elzbieta Mielczarek ("Mielczarek") and Jerzy Szymczyk ("Szymczyk") and Related Term Sheet (the "Term Sheet") annexed thereto (the "Joint Motion")[1]. The Plan Support Stipulation and Term Sheet represent a global agreement by the parties thereto to consensually resolve the issues by and between the Debtor, the Secured Lenders, the Debtor's principals and Kew in the Debtor's case. Among other things, the Plan Support Stipulation and Term Sheet provide for the filing of a Joint Chapter 11 Plan and a sales process thereunder that will maximize the value of the Debtor's Property, which will result in certain payments to creditors of this estate that would otherwise not be achievable. The hearing on the Joint Motion is scheduled for December 2, 2015.

3.    The Plan Support Stipulation and the Term Sheet require the Debtor to engage a Plan Administrator who will act as an independent fiduciary both prior to and after confirmation of a Joint Chapter 11 Plan and who will conduct a marketing and sales process with respect to the Debtor's Property, as well as to engage a real estate broker and property manager to operate the Property pending the sale of same pursuant to the Joint Chapter 11 Plan. In furtherance of those provisions of the Plan Support Stipulation and Term Sheet, the Debtor has determined to engage Getzler Henrich & Associates LLC (the "Getzler Firm") as Plan Administrator, Hilco Real Estate LLC ("Hilco") as Real Estate Advisors (i.e., the "Broker" under the Plan Support Stipulation) and NNC Property Management LLC, doing business in the State of New York as KW Property Management & Consulting ("KW") as Property Manager.

4.    As set forth below, Debtor believes that such engagements as part of the Plan Support Stipulation process are appropriate and in the best interest of the Debtor's estate.

---

[1]  Any capitalized terms used by not otherwise defined herein shall have the meanings ascribed in the Joint Motion.

## REQUEST TO ENGAGE PLAN ADMINISTRATOR

5.      Pursuant to the terms of the Plan Support Agreement, the Debtor seeks to engage the Getzler Firm, *nunc pro tunc* to the commencement of its services on behalf of the Debtor, to act as Plan Administrator on the Debtor's behalf both pre- and post-confirmation.  The Getzler Firm's duties as Plan Administrator shall include (a) the marketing of the Property, including the supervision of the Real Estate Advisors to be engaged by the Debtor, (b) the negotiation of confidentiality agreements and provision of due diligence materials to potential purchasers of the Property, (c) the negotiation of a purchase and sale agreement with one or more potential purchasers of the Property, (d) the determination as to whether a potential purchaser shall serve as a stalking horse bidder and, if so, the bid protections and bid procedures in connection therewith, (e) the conduct of the auction, if any, of the Property, (f) the filing, prosecution and settlement of any objections to claims that are not allowed claims, (g) any other acts reasonably necessary to consummate the Joint Chapter 11 Plan as provided for in the Joint Chapter 11 Plan, the Term Sheet or the Plan Support Stipulation, and (h) such other matters as are reasonably necessary and appropriate to accomplish the Plan Administrator's duties. A copy of the proposed engagement letter with the Getzler Firm (the "Getzler Engagement Letter") is annexed hereto as Exhibit "A".

6.      The Getzler Firm is one of the oldest and most respected corporate restructuring firms.  The engagement will be led by Dan Polsky, who has thirty (30) years of diversified restructuring experience serving in advisory, expert and crisis/turnaround management roles, and has led many engagements in formal bankruptcy proceedings and out-of-court restructurings. Assisting Mr. Polsky will be Mark Podgainy, who has more than twenty (20) years of experience in operational roles and consulting in a variety of industries.  Mr. Podgainy has extensive experience in the real estate and hospitality sectors, which is essential to this engagement.

3

7.      As set forth in the Getzler Engagement Letter, the Getzler Firm's fees will be billed on an hourly basis with standard hourly rates as follows:  Principal/Managing Director - $495 to $595; Director/Specialist - $385 to $550; and Associate Professionals - $160 to $385. Mr. Polsky and Mr. Podgainy's rates will be billed at $525 an hour and Associate Professionals will be billed at $350 per hour.  The Getzler Firm's fees will be capped at $90,000 for the first year, together with reasonable out-of-pocket expenses.  The Getzler Firm will be paid a $25,000 retainer, which will be applied to its final bill.  Finally, the Getzler Firm will apply to the Bankruptcy Court for allowance of its fees and reimbursement of its expenses and will be paid in accordance with orders of the Bankruptcy Court allowing such fees and reimbursement of such expenses.[2]  All payments to be made to the Getzler Firm will be paid by the Secured Lender through the Exit Facility (as such term is defined in the Plan Support Stipulation).

8.      Annexed hereto as Exhibit "B" is the Affidavit of Mark Podgainy, Managing Director of the Getzler Firm.  Other than as set forth in Mr. Podgainy's Affidavit, to the best of Mr. Podgainy's knowledge, the Getzler Firm holds no claims against the Debtor, does not currently represent any creditors of the Debtor, has never represented the Debtor or any of its creditors and represents no interest adverse to the Debtor or the Debtor's estate regarding the matters upon which the Getzler Firm will be engaged.  The Debtor believes that the engagement of the Getzler Firm as Plan Administrator is in the best interest of the estate and that the Getzler Firm is a "disinterested person" within the meaning of sections 101(14) and 327(a) of the Bankruptcy Code.

9.      The Debtor therefore requests an order of the Court authorizing the Debtor to engage Getzler Firm as Plan Administrator in accordance with the terms of the Plan Support

---

[2]  After the Effective Date of the Joint Chapter 11 Plan, the Getzler Firm will be paid upon submission of invoices without the need for Court approval.

Stipulation and in accordance with the term of the Getzler Engagement Letter annexed hereto as Exhibit "A".

<u>**REQUEST TO ENGAGE REAL ESTATE ADVISORS**</u>

10.     The Plan Support Agreement also requires that the Debtor engage a broker to assist in the marketing for sale of the property.  The Debtor has determined to, and hereby seeks to, engage Hilco as its Real Estate Advisors for such purpose, *nunc pro tunc* to the commencement of its services.  Hilco is a diversified real estate consultant and advisory firm that evaluates, restructures, facilitates the acquisition of, and disposes of all types of real estate both nationally and internationally.  Hilco has extensive experience solving complex real estate problems, which currently exist with respect to the Property.  Hilco has an excellent reputation as a leader in the real estate field and has an experienced team of real estate brokers and analysts.  Hilco's disposition and auction team has worked with numerous clients in the accelerated sale of challenging properties and assets nationwide and to monetize hard-to-sell assets.  Such challenges exist in this case.

11.     A copy of Hilco's proposed Exclusive Listing Agreement (the "Hilco Engagement Agreement") is annexed hereto as Exhibit "C".  As set forth therein, Hilco will be paid a commission of one (1%) percent of the purchase price for the Property up to $26,500,000.00 and four (4%) percent of the purchase price for the Property above $26,500,000.00, at a cap of $450,000.00. In the event Hilco's engagement is terminated other than for Hilco's default thereunder, Hilco shall be paid a commission of one-third (.33%) of a percent of the highest *bona fide* bid received from a prospective purchaser, not to exceed $87,450.  In the event that the Secured Lender acquires the Property by credit bid or otherwise, Hilco will receive a fee equal to one-third (.33%) of a percent of the total consideration paid by

— 

the Secured Lender, not to exceed $87,450. Hilco will advance a marketing investment budget of up to $20,000.00 reimbursable only in the event the Property does not sell or the engagement is terminated other than for Hilco's default. Finally, Hilco will be paid its commissions from the proceeds of the sale of the Property, or in the event of a termination of Hilco's engagement or if the Secured Lender acquires the Property, it will be paid its commissions, break up fee and marketing investment by the Secured Lender.

12.      Annexed hereto as Exhibit "D" is the Affidavit of Jeff Azuse, Senior Vice President of Hilco. Other than as set forth in Mr. Azuse's Affidavit, to the best of Mr. Azuse's knowledge, Hilco holds no claims against the Debtor, does not currently represent any creditors of the Debtor, has never represented the Debtor or any of its creditors and represents no interest adverse to the Debtor or to the Debtor's estate regarding the matters upon which Hilco will be engaged. The Debtor believes that the engagement of Hilco as Real Estate Advisors is in the best interest of its estate and that Hilco is a "disinterested person" within the meaning of sections 101(14) and 327(a) of the Bankruptcy Code.

13.      The Debtor therefore requests that consistent with the Plan Support Stipulation, the Court authorize it to engage Hilco as Real Estate Advisors in accordance with the terms set forth herein and in the Hilco Engagement Agreement annexed hereto as Exhibit "C".

### REQUEST TO ENGAGE PROPERTY MANAGER

14.      In addition to the Plan Administrator and Real Estate Advisors, the Plan Support Stipulation provides for the engagement of a Property Manager to manage the Property pending the ultimate sale thereof. The Debtor has determined to engage KW as the Property Manager, *nunc pro tunc* to the commencement of its services, pursuant to the Management Agreement annexed hereto as Exhibit "E" (the "KW Engagement Agreement"). The Property is presently being managed by Walters and Samuels, who was hired by the Receiver to manage the Property.

As this Court has been made aware on prior occasions, it is the Debtor's belief that Walters and Samuels caused the deterioration of the Property and as a result, the Debtor believes that it is in the best interest of the Debtor's estate and of all creditors to replace Walters and Samuels with KW.

15.     Under the KW Management Agreement, KW will be present at the Property at all times needed to help facilitate the sale of the Property and will provide a full accounting including but not limited to accounts payable and monthly financial statements by the 15th of each month.  KW will manage the Property on behalf of the Debtor for a fee of $5,000 per month.  Any amounts payable to KW under the KW Agreement, as well as any amounts for insurance and compliance with building regulations, will be paid by the Secured Lender through the Exit Facility and KW will look solely to the Secured Lender for payment of same.

16.     As set forth in the Affidavit of Paul Kaplan, a Managing Director of KW, a copy of which is annexed hereto as Exhibit "F", to the best of his knowledge, KWC holds no claims against the Debtor, does not currently represent any creditors of the Debtor, has never represented the Debtor or any of the Debtor's creditors and represents no interest adverse to the Debtor or to the Debtor's estate regarding the matters upon which KW will be engaged.  The Debtor believes that the employment of KW is in the best interest of its estate and that KW is a "disinterested person" within the meaning sections 101(14) and 327(a) of the Bankruptcy Code.

17.     For reasons set forth herein, the Debtor respectfully requests that the Court enter an Order authorizing the Debtor to engage KW as Property Manager in accordance with the terms set forth herein and the KW Engagement Agreement.

## TERMINATION OF RECEIVERSHIP

18.     Finally, in the event that the Court authorizes the Debtor to engage KW as Property Manager, the Court should also enter an Order terminating the receivership and

7

requiring the Receiver to turn over the Property and any other property of the Debtor in his possession, custody or control, as well provide an accounting of any property of the Debtor that at any time came into the possession, custody or control the Receiver.

19.    Section 543(b) of the Bankruptcy Code provides, in pertinent part, that

> A custodian shall (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property that, at any time, came into the possession, custody, or control of such custodian.

11 U.S.C. § 543(b).

20.    As defined in the Bankruptcy Code, a custodian includes a receiver of any property of the debtor appointed in a case or proceeding not under title 11.  11 U.S.C. §101(11); *see also In re Lizeric Realty Corp.*, 188 B.R. 499 (Bankr. S.D.N.Y. 1995); *In re Paren*, 158 B.R. 447 (Bankr. N.D. Ohio 1993); *In re Sundance Corp., Inc.*, 149 B.R. 641 (Bankr. E.D. Wash. 1993).

21.    Here, the Receiver has had possession of the Property as well as any proceeds, product, offspring, rents, or profits of the Property, since the Receiver was appointed in the State Court foreclosure action by Order entered on May 31, 2011.  In order to effectuate the Debtor's plan to market and sell the Property, it is necessary that the Property be turned over by the Receiver, pursuant to section 543(b)(1) of the Bankruptcy Code.

22.    In addition to compelling the Receiver to turn over the Property and the proceeds and product therefrom, the Receiver should also be required to deliver to the Debtor an accounting of all of the Debtor's property and the proceeds of same in his possession, custody, or control at any time pursuant to section 543(b)(2) of the Bankruptcy Code.

23.    Accordingly, the Debtor requests that in the event the Court grants the engagement of KW as sought herein, that the Court also require the Receiver to turn over the Property to the Debtor, and provide an accounting to the Debtor with respect to the Property and the proceeds thereof, so that the Debtor, through the Property Manager, can maintain the Property until it is sold.

### REQUEST FOR APPROVAL OF ENGAGEMENT *NUNC PRO TUNC* AND FOR ENTRY OF AN ORDER SCHEDULING EXPEDITED HEARING

24.    As set forth in a Local Rule 9077-1 Affirmation submit in connection with this request for an expedited hearing, and as this Court is aware, the Plan Support Stipulation and Term Sheet provide for an expedited sale process and a sale deadline of February 1, 2016.  The deadlines set forth in the Plan Support Stipulation and Term Sheet were insisted on by the Secured Lender and without those deadlines the Secured Lender would not agree to the consensual process under which creditors will be receiving a distribution that they otherwise would not receive in this case.

25.    In order to meet the deadlines imposed by the Plan Support Stipulation and Term Sheet, the Plan Administrator and Real Estate Advisors have already begun the vetting of possible stalking horse bidders and the negotiation of a purchase and sale agreement, and the Property Manager has begun determining the needs of the Property until sale.  Because of this, as set forth above, the Debtor seeks *nunc pro tunc* relief with respect to the engagements of the Plan Administrator, Real Estate Advisor and Property Manager, to the time of the respective commencement of their services.

26.    In addition, the Debtor believes that it is essential that expedited hearings be held on approval of this Motion.  The benefit to all creditors by the approval of the Plan Support Stipulation and Term Sheet, which require the engagements requested by this Motion, and

ultimate confirmation of a Joint Chapter 11 Plan outweighs any harm to the creditors in the reduction of time by holding an expedited hearing.

27.     Accordingly, the Debtor requests the Court enter an Order for expedited hearing on this Motion, submitted simultaneously herewith, so that this process can move forward as quickly as possible.

CONCLUSION

28.     For the reason set forth herein, the engagement by the Debtor by the Plan Administrator, Real Estate Advisor and Property Manager will facilitate the Debtor's obligations under the Plan Support Stipulation, which will ultimately benefit all of the Debtor's creditors. The Debtor believes, therefore, that the retention of the Getzler Firm as Plan Administrator, Hilco as Real Estate Advisor, and KW as Property Manager, as well as the turnover of the Property by the Receiver, is in the best interest of the Debtor and its estate, and that orders should be entered approving their engagements *nunc pro tunc* to the dates upon which each of them began performing services on behalf of the Debtor's estate.  Proposed order are annexed hereto as Exhibit "G".

29.     No prior request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Debtor requests that it be authorized to engage the Getzler Firm as Plan Administrator, Hilco as Real Estate Advisors and KW as Property Manager in accordance with the terms set forth herein and the respective Engagement Letters and Agreements annexed hereto, and that the Debtor be granted such other and further as is just and proper.

Dated: Garden City, New York
December 1, 2015

CULLEN AND DYKMAN LLP

BY:    s/  Bonnie L. Pollack
       Mathew G. Roseman, Esq.
       Bonnie L. Pollack, Esq.
       100 Quentin Roosevelt Boulevard
       Garden City, New York 11530
       (516) 357-3700