Allegaert Berger & Vogel, LLP
111 Broadway, 20th Floor
New York, New York 10006
Lawrence P. Gottesman, Esq.
Attorneys for DOF IV Metroplex, LLC

CULLEN & DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
Telephone: (516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
Attorneys for Metroplex on the Atlantic, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re:                                                           Chapter 11

METROPLEX ON THE ATLANTIC, LLC,                Case No.: 15-42499 (CEC)

                                    Debtor.

---------------------------------------------------------x

## AMENDED CHAPTER 11 PLAN OF DEBTOR
## METROPLEX ON THE ATLANTIC, LLC JOINTLY
## <u>PROPOSED BY DEBTOR AND SECURED LENDER</u>

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE SECURED LENDER, THE DEBTOR OR ANY OTHER PARTY IN INTEREST. THIS PLAN IS SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTOR'S SECURITIES) PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME AND GOVERNING LAW .................................................... 1
    A.   Defined Terms ................................................................................................ 1
    B.   Rules of Interpretation ................................................................................. 14
    C.   Computation of Time .................................................................................... 14
    D.   Governing Law ............................................................................................. 14
    E.   Reference to Monetary Figures .................................................................... 15
    F.   Controlling Document .................................................................................. 15

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ............... 15
    A.   Administrative Claims .................................................................................. 15
    B.   Accrued Professional Compensation Claims ................................................ 16
    C.   Priority Tax Claims ...................................................................................... 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ............................................................................................................................ 17
    A.   Summary of Classification ............................................................................ 17
    B.   Treatment of Claims and Interests ............................................................... 18
    C.   Special Provision Governing Unimpaired Claims ......................................... 23
    D.   Elimination of Vacant Classes ...................................................................... 23
    E.   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code .............. 23

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .............................. 24
    A.   Overview ...................................................................................................... 24
    B.   Plan Administrator ....................................................................................... 24
    C.   Exit Financing .............................................................................................. 24
    D.   Property Sale Transaction ............................................................................. 25
    E.   Waterfall ...................................................................................................... 26
    F.   Insurance ...................................................................................................... 28
    G.   Settlement of Disputed Claims ...................................................................... 28
    H.   Litigation Trust ............................................................................................ 28
    I.   Substantive Consolidation ............................................................................ 31
    J.   Release of Liens ........................................................................................... 31
    K.   Corporate Action ......................................................................................... 32
    L.   Effectuating Documents; Further Transactions ............................................. 32
    M.   Withdrawal of Appeals ................................................................................. 32
    N.   Division Place Collateral .............................................................................. 32
    O.   Exemption from Certain Taxes and Fees ...................................................... 33
    P.   Insurance Policies ........................................................................................ 33
    Q.   Plan Administrator to Serve as Disbursing Agent ......................................... 33
    R.   Dissolution of Entity .................................................................................... 33
    S.   Preservation of Rights of Action .................................................................. 33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ............................................................................................34
    A.    Rejection of Executory Contracts and Unexpired Leases ...............................34
    B.    Cure of Defaults for Assumed and Assigned Executory Contracts and Unexpired
        Leases ............................................................................................................34
    C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases ....35
    D.    Pre-existing Obligations to the Debtor or Estate Under Executory Contracts and
        Unexpired Leases............................................................................................36
    E.    Modifications, Amendments, Supplements, Restatements, or Other Agreements...........36
    F.    Reservation of Rights .....................................................................................36

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS....................................37
    A.    Timing and Calculation of Amounts to Be Distributed...................................37
    B.    Distributions to Holders of Claims Against the Debtor...................................37
    C.    Rights and Powers of Plan Administrator as Disbursing Agent.......................37
    D.    Distributions on Account of Claims Allowed After the Effective Date............38
    E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions.......38
    F.    Compliance with Tax Requirements/Allocations ...........................................39
    G.    Claims Paid or Payable by Third Parties ........................................................39

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS ...........................................................40
    A.    Resolution of Claims Against the Debtor .......................................................40
    B.    Disallowance of Claims..................................................................................42
    C.    Amendments to Claims...................................................................................42

ARTICLE VIII. SETTLEMENT, RELEASES, EXCULPATIONS,
INJUNCTIONS, AND RELATED PROVISIONS .........................................................43
    A.    Compromise and Settlement of Claims, Interests, and Controversies..............43
    B.    Subordinated Claims.......................................................................................43
    C.    General Releases.............................................................................................44
    D.    Exculpations ..................................................................................................50
    E.    Indemnification...............................................................................................51
    F.    Injunction ......................................................................................................52
    G.    Setoffs and Recoupments ...............................................................................54

ARTICLE IX. CONDITIONS PRECEDENT...................................................................54
    A.    Condition Precedent to Confirmation of the Plan............................................54
    B.    Conditions Precedent to the Effective Date of the Plan ..................................55
    C.    Waiver of Conditions......................................................................................55

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
PLAN ............................................................................................................................55
    A.    Modification and Amendments .......................................................................55
    B.    Effect of Confirmation on Modifications .......................................................56
    C.    Revocation or Withdrawal of the Plan.............................................................56

ARTICLE XI. RETENTION OF JURISDICTION ................................................................... 56

ARTICLE XII. MISCELLANEOUS PROVISIONS ............................................................... 59
    A.   Immediate Binding Effect ............................................................................................ 59
    B.   Additional Documents ................................................................................................. 59
    C.   Payment of Statutory Fees .......................................................................................... 59
    D.   Reservation of Rights .................................................................................................. 59
    E.   Successors and Assigns ............................................................................................... 59
    F.   Certain Rights of the Secured Lender .......................................................................... 60
    G.   Service of Documents .................................................................................................. 60
    H.   Term of Injunctions or Stays ....................................................................................... 61
    I.   Entire Agreement ........................................................................................................ 62
    J.   Nonseverability of Plan Provisions ............................................................................. 62

## INTRODUCTION

Secured Lender DOF IV Metroplex, LLC (the "Secured Lender") and debtor Metroplex on the Atlantic, LLC (the "Debtor") propose the following consensual Plan for the Debtor. The Plan provides for the resolution of all Claims against and Interests in the Debtor in the Chapter 11 Case.

## ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A.    Defined Terms

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.    "*Accrued Professional Compensation Claims*" means, at any given moment, all Claims for accrued fees and expenses (including success fees, if any) for services rendered by a Professional through and including the Effective Date, to the extent such fees and expenses have not been paid pursuant to any order of the Bankruptcy Court or the Local Bankruptcy Rules and regardless of whether a fee application has been Filed for such fees and expenses. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses (including success fees, if any), then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claim.

2.    "*Accrued Professional Compensation Claims Bar Date*" means the first Business Day that is thirty (30) days following the Effective Date of the Plan, except as specifically set forth in the Plan or a Final Order.

3.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtor's Estate pursuant to Sections 503(b) or 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estate incurred after the Petition Date and through the Effective Date; (b) Claims of Professionals in the Chapter 11 Case; (c) Claims of the Plan Administrator, the Litigation Trustee, if any, the Property Manager and any Broker retained by the Estate; and (d) fees and charges assessed against the Estate pursuant to chapter 123 of the Judicial Code, including the U.S. Trustee Fees.

4.    "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days following the Effective Date of the Plan, except as specifically set forth in the Plan or a Final Order.

5.    "*Affiliate*" shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

6.    "*Allowed*" means with reference to any Claim or Interest, as may be applicable, (a) any Claim against the Debtor that has been listed on its Schedules (as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009) as liquidated in

amount and not Disputed or contingent and for which (1) no contrary Proof of Claim has been Filed, (2) no objection to allowance, request for estimation, or other challenge has been interposed, or (3) no motion to deem the Schedules amended has been Filed, (b)(1) any Proof of Claim or Interest that is timely Filed by the applicable Claims Bar Date, as to which no litigation (whether stayed or unstayed) is pending and to which no objection or other challenge has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, if any, and (2) any Claim that is not subject to any applicable Claims Bar Date, as to which no objection or other challenge has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if any, (c) any Claim expressly allowed by a Final Order or under the Plan, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Plan Administrator pursuant to a Final Order or under the Plan, but only to the extent provided therein, (e) any Claim that is not otherwise subject to disallowance under Section 502 of the Bankruptcy Code or that has not been Disallowed, (f) any Claim arising from the recovery of property in accordance with Sections 550 and 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code (unless such Claim is otherwise Disputed), (g) any Claim allowed by stipulation approved by the Bankruptcy Court, including, without limitation, the Allowed Secured Lender Secured Claim and the Allowed Secured Lender Administrative Claim, (h) Claims of the Secured Lender arising under and in respect of the Exit Facility, or (i) any Interest registered in the ownership register or otherwise on the Debtor' books and records, maintained by, or on behalf of, the Debtor as of the Voting Record Date. Except as otherwise provided in the Plan, for purposes of determining the amount of an "Allowed Claim," there shall be deducted therefrom an amount equal to the amount of any Cause of Action that the Debtor may hold against the Holder thereof, to the extent such Cause of Action may be offset pursuant to applicable non-bankruptcy law or subject to recoupment. Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by a Final Order of the Bankruptcy Court. For any purpose under the Plan, unless specifically provided for herein, a Claim that has been Allowed shall not include amounts constituting interest, penalties, or late charges arising from or relating to the period from and after the Petition Date. Any Claim or Interest that has been or is hereafter listed in the Schedules as Disputed, contingent, or unliquidated for which no Proof of Claim or Interest has been timely Filed and which is not included in subparts (a)-(i) herein, is not considered an Allowed Claim or Allowed Interest and shall be expunged and Disallowed without further action by the Debtor and without any further notice to or action, order, or approval of the Bankruptcy Court.

7.      "*Allowed Secured Lender Administrative Claim*" has the meaning provided for in the Plan Support Stipulation. Without limiting the foregoing, the Allowed Secured Lender Administrative Claim shall not be subject to setoff, recoupment, counterclaim or reduction or subordination/change in priority.

8.      "*Allowed Secured Lender Secured Claim*" has the meaning provided for in the Plan Support Stipulation. Without limiting the foregoing, the Allowed Secured Lender Secured Claim shall not be subject to setoff, recoupment, counterclaim or reduction or subordination/change in priority.

9.    *"APA"* means an asset purchase agreement and any ancillary documents (as such agreement and ancillary documents may be amended or modified from time to time) by and between the Plan Administrator on behalf of the Debtor or the Estate and the Purchaser.

10.    *"Appeals"* has the meaning provided for in the Plan Support Stipulation.

11.    *"Approval Order"* has the meaning provided for in the Plan Support Stipulation.

12.    *"Ballot"* means the ballot distributed to each eligible Holder of a Claim or Interest in the Voting Classes by the Balloting Agent, on which ballot such Holder of a Claim or an Interest may, *inter alia*, vote for or against the Plan.

13.    *"Ballot Deadline"* means the date and time set by the Bankruptcy Court by which the Balloting Agent must receive all Ballots.

14.    *"Balloting Agent"* means Cullen and Dykman LLP, Attn: Bonnie Pollack, Esq., 100 Quentin Roosevelt Boulevard, Garden City, New York, NY 11530.

15.    *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101– 1532, as applicable to the Chapter 11 Case, as may be amended from time to time.

16.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of New York, having jurisdiction over the Chapter 11 Case, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to Section 151 of title 28 of the United States Code, the United States District Court for Eastern District of New York.

17.    *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under Section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, as may be amended from time to time.

18.    *"Beneficiaries"* means the beneficiaries of the Litigation Trust with any right to receive distributions of Net Litigation Recoveries in accordance with the Waterfall.

19.    *"Bid Procedures"* means the bid procedures approved by the Bankruptcy Court pursuant to the Bid Procedures Motion by order dated January 8, 2016.

20.    *"Bid Procedures Motion"* means the motion or application Filed with the Bankruptcy Court seeking approval of Bid Procedures, which may include break-up fees, expense reimbursement and minimum bid increments, jointly filed by the Plan Proponents.

21.    *"Broker"* has the meaning provided for in the Plan Support Stipulation.

22.    *"Business Day"* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

23.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

24.     "*Causes of Action*" means any Claim, cause of action (including avoidance actions), controversy, right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, debt, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort (including fraud), in law or in equity, or pursuant to any other theory of law, including violations of state or federal securities laws.

25.     "*Chapter 11 Case*" means the chapter 11 case commenced by the Debtor, which is currently pending before the Bankruptcy Court.

26.     "*Claim*" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

27.     "*Claims Bar Date*" means August 28, 2015, the applicable deadline by which a Proof of Claim must be or must have been Filed, as established by order of the Bankruptcy Court entered on July 21, 2015 and the Easement Bar Date.

28.     "*Claims Objection Bar Date*" means the date that is 120 days after the Effective Date of the Plan or such later date as may be fixed by order of the Bankruptcy Court.

29.     "*Claims Register*" means the official register of Claims.

30.     "*Class*" means a category of Holders of Claims or Interests as set forth in Article III of the Plan in accordance with Section 1122(a) of the Bankruptcy Code.

31.     "*Class 4 Payment Pool*" means a payment pool for the benefit of the Holders of Allowed Unliquidated and Disputed Easement Claims, to be funded in accordance with the Waterfall.  Notwithstanding the foregoing, in the event that all Allowed Claims entitled to payment from the Class 4 Payment Pool are paid in full without interest, then any Cash remaining in such Class 4 Payment Pool shall be distributed to the Holder of the Allowed Secured Lender Secured Claim.

32.     "*Class 5 Payment Pool*" means a payment pool for the benefit of the Holders of Allowed Disputed Easement Judgment Claims, to be funded in accordance with the Waterfall. Notwithstanding the foregoing, in the event that all Allowed Claims entitled to payment from the Class 5 Payment Pool are paid in full without interest, then any Cash remaining in such Class 5 Payment Pool shall be distributed to the Holder of the Allowed Secured Lender Secured Claim.

33.     "*Class 6 Payment Pool*" means a payment pool for the benefit of the Holders of Allowed General Unsecured Claims, to be funded in accordance with the Waterfall.

Notwithstanding the foregoing, in the event that all Allowed Claims entitled to payment from the Class 6 Payment Pool are paid in full without interest, then any Cash remaining in such Class 6 Payment Pool shall be distributed to the Holder of the Allowed Secured Lender Secured Claim.

34.     "*Class 7 Payment Pool*" means a payment pool for the benefit of the Holders of Allowed Punitive Damages Claims, to be funded in accordance with the Waterfall. Notwithstanding the foregoing, in the event that all Allowed Claims entitled to payment from the Class 7 Payment Pool are paid in full without interest, then any Cash remaining in such Class 7 Payment Pool shall be distributed to the Holder of the Allowed Secured Lender Secured Claim.

35.     "*Class 8 Payment Pool*" means a payment pool for the benefit of the Holders of Allowed Interests, to be funded in accordance with the Waterfall.

36.     "*Confirmation*" means the entry on the docket of the Confirmation Order.

37.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order (within the meaning of Bankruptcy Rules 5003 and 9021).

38.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

39.     "*Confirmation Objection Deadline*" means the deadline for Filing objections to Confirmation of the Plan.

40.     "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.  The Confirmation Order for the Plan shall be in form and substance acceptable in all respects to the Secured Lender.

41.     "*Credit Bid*" means a bid by the Secured Lender for the Property pursuant to which the Secured Lender offsets, in whole or in part, the Allowed Secured Lender Secured Claim against the proposed purchase price for the Property, irrespective of whether such bid is made in the context of a sale under Section 363 of the Bankruptcy Code, the Plan or otherwise. The right of the Secured Lender to Credit Bid shall not be limited or conditioned in any respect.

42.     "*Cure Obligations*" means all (a) amounts required to cure any monetary defaults and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults  (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed and assigned by the Debtor pursuant to Sections 365 or 1123 of the Bankruptcy Code.

43.     "*Debtor*" is defined in the Introduction.

44.     "*Debtor Parties*" has the meaning provided for in the Plan Support Stipulation.

45. *"Debtor Party Releasees"* has the meaning provided for in the Plan Support Stipulation.

46. *"Debtor Party Releasors"* has the meaning provided for in the Plan Support Stipulation.

47. *"Disallowed"* means any Claim or Interest that is not or that is no longer Allowed.

48. *"Disclosure Statement"* means such amended disclosure statement relating to the Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

49. *"Disclosure Statement Approval Order"* means the Order (i) Approving Amended Disclosure Statement Relating to Amended Joint Chapter 11 Plan, (ii) Establishing Voting Record Date, (iii) Approving Solicitation Procedures, Form of Ballot and Manner of Notice; and (iv) Fixing the Deadline for Filing Objections to Confirmation of the Plan and Scheduling Hearing on Plan Confirmation entered on January 22, 2016 approving the Disclosure Statement and certain procedures for solicitation of votes on such Plan and granting related relief.

50. *"Disputed"* means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed, and shall include any Claim that is designated as disputed pursuant to the Plan. Without limiting the foregoing, all Insider Claims are disputed and, to the extent Allowed, shall be Allowed solely as Interests. All Claims in Class 4 and Class 5 are disputed.

51. *"Disputed Claims Reserve"* means the reserve to be created by the Plan Administrator as disbursing agent to hold Cash, which reserve shall be held for the benefit of Holders of subsequently Allowed Claims for distribution according to the procedures set forth in Article VI and Article VII.

52. *"Disputed Easement Judgment Claims"* means an Easement Claim that has been reduced to judgment prior to the Petition Date, but only with respect to a judgment for compensatory, rather than punitive, damages.

53. *"Division Place Collateral"* has the meaning provided for in the Plan Support Stipulation.

54. *"Easement Bar Date "* means the deadline for filing proofs of claims based upon Easement Claims or Easement Rights pursuant to the Order Establishing Deadline for Filing Proofs of Claim by Purported Easement Holders Only, and Approving the Form and Manner of Notice Thereof entered by the Bankruptcy Court on November 16, 2015.

55. *"Easement Claim"* means any Claim arising from, relating to or concerning any Easement Rights. All Easement Claims are Disputed.

56.    "*Easement Rights*" means any right or claim or right of way, access, passage, use, or similar right or claim of right with respect to or relating to, on or through the Property, including but not limited to any claimed easement or right of way allegedly arising from that certain Indenture dated January 24, 1922, by and between The Dickerson Estates and Adolph [Illegible], recorded in Libre 2395, Page 97 of the land records of Queens County, New York whether or not such right is deemed to be appurtenant or in gross or affirmative or negative.

57.    "*Effective Date*" means the date that is a Business Day selected by the Secured Lender after the Confirmation Date on which:  (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in Article IX.B of the Plan have been satisfied or waived, in accordance with Article IX.C of the Plan.

58.    "*Entity*" shall have the meaning set forth in Section 101(15) of the Bankruptcy Code.

59.    "*Estate*" means the estate created for the Debtor on the Petition Date pursuant to Sections 301 and 541 of the Bankruptcy Code, which shall include the estate on and after the Confirmation Date.

60.    "*Exit Facility*" has the meaning provided for in Article IV.C of the Plan.

61.    "*Exculpated Matter*" means any matter within the scope of the Exculpation.

62.    "*Exculpated Parties*" means any Entity that is entitled to the benefit of the Exculpation.

63.    "*Exculpation*" means the exculpation provision set forth in Article VIII.D of the Plan and the exculpation provision set forth in paragraphs 15(b) and 16(b) of the Plan Support Stipulation.

64.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

65.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

66.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court.

67.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from

being a Final Order; provided further that, with the exception of the Confirmation Order (which is addressed in Article IX), the Secured Lender reserves the right to waive any appeal period.

68.     "*General Release*" means the release provisions set forth in Article VIII.C of the Plan.

69.     "*General Unsecured Claim*" means any Claim against any Debtor that is not Secured and that is not:  (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) an  Easement Claim; or (e) an Insider Claim.

70.     "*Governmental Unit*" shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

71.     "*Gross Sales Proceeds*" means the gross proceeds, whether in Cash or otherwise, from the Property Sale Transaction prior to the deduction of any expenses of sale or similar items.

72.     "*Guaranty*" has the meaning provided for in the Plan Support Stipulation.

73.     "*Holder*" means any Entity holding a Claim or an Interest.

74.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

75.     "*Indemnification Provision*" means any indemnification provisions of the Debtor in place as of the Effective Date, if any, whether in the bylaws, operating agreement, other formation documents, board resolutions, Management Agreement or employment contracts for the current and former directors, members, trustees, officers, and managers, employees, attorneys, other professionals, and agents of the Debtor and such current and former directors, members, trustees, officers, and managers' respective affiliates.

76.     "*Insider*" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.  For the avoidance of doubt, the Debtor shall be treated both as a corporation and as a partnership for determining if an Entity is an Insider.

77.     "*Insider Administrative Claims*" means any Administrative Claim held by or acquired from an Insider

78.     "*Insider Claim*" means any Claim held by or acquired from an Insider, including any Claim arising from, relating to or in connection with the rejection of the Management Agreement or an Indemnification Provision.

79.     "*Insurance Policy*" means any insurance policy covering the Debtor, the Debtor's employees, members, equity holders or Affiliates, or the Property from any casualty or liability, to the extent such policy is in effect and has not lapsed.  Without limiting the foregoing, Insurance Policy shall include any insurance policy for directors, members, trustees, officers, and managers' liability maintained by the Debtor as of the Effective Date.

80.    "*Interests*" means the common stock or shares, limited liability company interests, limited partnership units, preferred interests, and any other equity, ownership or profits interests of the Debtor and options, warrants, rights or other securities or agreements to acquire the common stock or shares, limited liability company interests, or other equity, ownership or profit interests of the Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtor subject to subordination pursuant to Section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.  Without limiting the foregoing, any Insider Claim is recharacterized and shall be treated, to the extent Allowed, as an Interest for all purposes under the Plan.

81.    "*Insured Claim*" means any Claim that is payable pursuant to one or more insurance policies.

82.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

83.    "*Kew*" means Kew Gardens Property LLC, a Delaware limited liability company.

84.    "*Kew Parties*" has the meaning provided for in Article IV.N of the Plan.

85.    "*Lien*" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

86.    "*Litigation Claims*" means any and all Causes of Action belonging to the Debtor or the Estate (and not belonging to the Secured Lender or any other non-Debtor Entity), except to the extent released, exculpated or discharged pursuant to the Plan Support Stipulation, the Plan or any Final Order, against any Entity.  Without limiting the foregoing, Litigation Claims shall not include any Cause of Action against a Secured Lender Releasee.

87.    "*Litigation Trust*" means that certain trust to be created on the Effective Date, as described in Article IV.H.

88.    "*Litigation Trust Agreement*" means that certain Litigation Trust Agreement, to be executed by the Debtor and the Litigation Trustee effective as of the Effective Date, establishing the Litigation Trust.  The form of the Litigation Trust Agreement will be provided for in the Plan Supplement.

89.    "*Litigation Trust Expense Fund*" means Cash in the amount provided for in the Litigation Trust Agreement.

90.    "*Litigation Trustee*" means the Plan Administrator, who shall serve as litigation trustee for the Litigation Trust.

91.    "*Litigation Trustee Releasees*" means the Litigation Trustee, including any successor thereto, and any Entity employed by or that employs the Plan Administrator, or of which the Plan Administrator is a partner, member or owner, and each of their respective predecessors, successors and assigns, shareholders, affiliates and Insiders (determined as if such

Entity were a debtor under the Bankruptcy Code), subsidiaries, principals, employees, agents, officers, directors, trustees, members, partners, professionals, consultants and advisors.

92.    "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the Bankruptcy Court, as applicable to the Chapter 11 Case, as may be amended, modified, or supplemented from time to time.

93.    "*Major Decision*" means (a) the selection, engagement or termination of the Broker or a replacement thereof or other professional; (b) any material modification of the sales and marketing process; (c) the selection of a Stalking Horse; (d) any material modification of the Stalking Horse APA, including the terms of any breakup fee and/or expense reimbursement; (e) any decision to offer and the amount and terms of expense reimbursement to a potential bidder other than a Stalking Horse; (f) the qualification of a potential bidder as a qualified bidder; (g) any decision with respect to whether to conduct an auction, the form thereof and other related matters; (h) the designation of a qualified bid as a successful bid or as a back-up bid; (i) the settlement or compromise of any Disputed Claim, unliquidated Claim or contingent Claim for an amount in excess of $10,000; (j) the settlement or compromise of any material Litigation Claim; (k) the use of proceeds of the Litigation Claims to fund the expenses of the Litigation Trust; and (l) any decision that may have a material effect on the net amount distributable to the Secured Lender under the Plan.

94.    "*Management Agreement*" means any agreement providing for the management or operation of the Debtor by any Affiliate or Insider thereof, including but not limited to the Principals.

95.    "*Mielczarek*" means Elzbieta Mielczarek.

96.    "*Net Litigation Recoveries*" means all recoveries obtained by the Litigation Trustee in respect of any Litigation Claims, whether by settlement, judgment or otherwise.

97.    "*Net Sales Proceeds*" means the Gross Sales Proceeds less any expenses of sale or similar items, including but not limited to any commissions due to the Broker.

98.    "*Other Priority Claim*" means any Claim against the Debtor entitled to priority in right of payment under Section 507 of the Bankruptcy Code, other than: (a) an Administrative Claim or (b) a Priority Tax Claim.

99.    "*Other Secured Claim*" means any Secured Claim against the Debtor that is not an Allowed Secured Lender Secured Claim. Without limiting the foregoing, in order to be an Other Secured Claim, such Claim must be Secured and must have priority over the Allowed Secured Lender Secured Claim.

100.    "*Petition Date*" means May 28, 2015.

101.    "*Plan*" means the Amended Chapter 11 Plan of Debtor Metroplex On The Atlantic, LLC Jointly Proposed by Debtor and Secured Lender, including the Plan Supplement, which is incorporated herein by reference and made part of this Plan as if set forth herein, as amended, supplemented, or modified from time to time.

102.    "*Plan Administrator*" means Daniel Polsky, or such other person as selected pursuant to the Plan Support Stipulation.

103.    "*Plan Administrator Releasees*" means the Plan Administrator, including any successor thereto, and any Entity employed by or that employs the Plan Administrator, or of which the Plan Administrator is a partner, member or owner, and each of their respective predecessors, successors and assigns, shareholders, affiliates and Insiders (determined as if such Entity were a debtor under the Bankruptcy Code), subsidiaries, principals, employees, agents, officers, directors, trustees, members, partners, professionals, consultants and advisors.

104.    "*Plan Proponents*" means the Secured Lender and the Debtor; provided, however, in the event of the occurrence of a Termination Event and the election of the Secured Lender to continue the prosecution of the Plan in accordance with paragraph 23 of the Plan Support Stipulation, such term shall exclusively mean the Secured Lender.

105.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed before the Confirmation Hearing (to the extent such document is in existence as of the time thereof), as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including any item required to be included in the Plan Supplement under the Plan or under the Bankruptcy Code.

106.    "*Plan Support Stipulation*" means that certain Settlement and Plan Support Stipulation by and among Metroplex on the Atlantic, LLC, DOF IV Metroplex, LLC, Kew Gardens Property LLC, Elzbieta Mielczarek and Jerzy Szymczyk, including the Term Sheet annexed as an exhibit thereto, dated as of November 17, 2015.  Subject to paragraph 2 of the Term Sheet, all references to the Plan Support Stipulation shall be deemed to include a reference to the Term Sheet.

107.    "*Principals*" means Mielczarek and Szymczyk.

108.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

109.    "*Pro Rata*" means (a) the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class or (b) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

110.    "*Professional*" means an Entity:  (a) retained in the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to Sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

111.    "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

112.    "*Property*" has the meaning provided for in the Plan Support Stipulation.

113.    "*Property Manager*" means a property manager of the Property that has been retained with the consent or approval of the Secured Lender.

114.    "*Property Sale Transaction*" means a sale transaction of the Property to either a Third Party Purchaser or to the Secured Lender (which shall include for these purposes the designee or nominee of the Secured Lender).

115.    "*Purchaser*" means an Entity that purchases the Property pursuant to the Plan.

116.    "*Punitive Damages*" means any damages, whether awarded or claimed, that are not awarded or claimed for the sole purpose of compensating the claimant for any alleged damage or loss.

117.    "*Punitive Damages Claim*" means any Claim for Punitive Damages.

118.    "*Receiver*" has the meaning provided for in the Plan Support Stipulation.

119.    "*Released Matter*" means any matter or claim that is released pursuant to Article VIII.C of the Plan or pursuant to the Plan Support Stipulation.

120.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to Section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

121.    "*Section 510(b) Claim*" means any Claim against the Debtor arising from rescission of a purchase or sale of a Security of the Debtor or an Affiliate of the Debtor, which Security is not an Interest, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such a Claim.

122.    "*Secured*" means when referring to a Claim:  (a) Secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

123.    "*Secured Lender*" has the meaning provided for in the Introduction.

124.    "*Secured Lender Parties*" has the meaning provided for in the Plan Support Stipulation.

125.    "*Secured Lender Releasees*" has the meaning provided for in the Plan Support Stipulation.

126.    "*Secured Tax Claims*" means any Secured Claim against the Debtor that, absent its Secured status, would be entitled to priority in right of payment under Section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

127.    "*Security*" shall have the meaning set forth in Section 101(49) of the Bankruptcy Code.

128.    "*Stalking Horse*" or "*Stalking Horse Bidder*" means a bidder with whom the Plan Administrator negotiates a Stalking Horse APA.

129.    "*Stalking Horse APA*" means an asset purchase agreement and any ancillary documents (as such agreement and ancillary documents may be amended or modified from time to time) by and among the Plan Administrator on behalf of the Debtor or the Estate and a Stalking Horse providing for a Property Sale Transaction.

130.    "*Stapled Financing*" shall have the meaning provided for in Article IV.D.3 of the Plan.

131.    "*Stapled Financing Documents*" means all documents to be executed, delivered and/or Filed by a Purchaser utilizing the Stapled Financing, as determined by the Secured Lender in its sole and absolute discretion.

132.    "*Szymczyk*" means Jerzy Szymczyk.

133.    "*Term Sheet*" means that certain term sheet annexed as Exhibit A to the Plan Support Stipulation.

134.    "*Termination Event*" meaning provided for in the Plan Support Stipulation.

135.    "*Third Party Purchaser*" means a Purchaser other than the Secured Lender.

136.    "*Trust Assets*" means all Litigation Claims to be transferred to the Litigation Trust pursuant to the Plan and the right to prosecute, settle, withdraw, or resolve the Litigation Claims.

137.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

138.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

139.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

140.    "*Unliquidated and Disputed Easement Claims*" means any Easement Claim other a  Disputed Easement Judgment Claim or an Easement Claim for Punitive Damages.

141.    "*Voting Classes*" means Classes 3, 4, 5, 6, 7 and 8 of the Plan, whose Claims or Interests, as applicable, are Impaired and are entitled to vote on the Plan.

142.    "*Voting Deadline*" means February 22, 2016 at 5:00 p.m. Eastern Time.

143.    "*Voting Record Date*" means the close of business on the date that the Disclosure Statement Approval Order is entered by the Court .

144.    "*Waterfall*" has the meaning provided for in Article IV.E of the Plan.

B.    Rules of Interpretation

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.      Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

F.      Controlling Document

In the event of an inconsistency between the Plan or the Plan Support Stipulation and the Disclosure Statement, the terms of the Plan or the Plan Support Stipulation, as applicable, shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document). The provisions of the Plan, the Plan Support Stipulation and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that if there is determined to be any inconsistency between any provision in the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

A.      Administrative Claims

1.      Payment of Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Plan Administrator, each Holder of an Allowed Administrative Claim (other than of an Accrued Professional Compensation Claim), will receive in exchange for full and final satisfaction, settlement, release, and compromise of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either: (1) except as otherwise provided in the Confirmation Order, on the Effective Date or as soon as practicable thereafter; (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than five (5) business days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of their business after the Petition Date, such Allowed Administrative Claims shall be assumed and paid by the applicable Purchaser and paid pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims and without any further notice to or action, order, or approval of the Bankruptcy Court. United States Trustee Fees shall be paid until the earlier of the entry of a final decree, dismissal or conversion of the Debtor's case. To the extent sufficient funds are not available from the Net Sales Proceeds or the Net Litigation Recoveries, the foregoing payments shall be funded from the Exit Facility.

2.      Requests for Payment of Administrative Claims

Except for Claims of Professionals and Governmental Units, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Plan Administrator and the Secured Lender no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date. The Plan Administrator and/or the Secured Lender may file an objection to any such request for payment in accordance with such procedures. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor and the Estate, the Plan Administrator, the Secured Lender or any Purchaser (except to the extent such Purchaser is obligated to pay or assume such Administrative Claims pursuant to the Plan, the Confirmation Order or the APA) or any of the property of any of the foregoing, and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by the later of (a) 180 days after the Effective Date and (b) 180 days after the Filing of the applicable request for payment of Administrative Claims, if applicable.

(a)      *Payment of Allowed Secured Lender Administrative Claim*

The Holder of the Allowed Secured Lender Administrative Claim will receive in exchange for full and final satisfaction, settlement, release, and compromise of such Allowed Secured Lender Administrative Claim, an amount of Cash equal to the amount of such Allowed Secured Lender Administrative Claim, to be paid from the Net Sales Proceeds or the Net Litigation Recoveries in accordance with the Waterfall.

(b)      *Disallowance of Insider Administrative Claims*

Without limiting the foregoing, any Insider Administrative Claims are Disallowed.

B.      Accrued Professional Compensation Claims

1.      Final Fee Applications and Payment of Accrued Professional Compensation Claims

All final requests for payment of Claims of a Professional shall be Filed no later than thirty (30) days after the Effective Date of the Plan. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Local Bankruptcy Rules and any prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court. The Plan Administrator and/or the Secured Lender may file an objection to any such request for payment in accordance with such procedures. Except as otherwise provided in the Plan Support Stipulation with respect to a successful Credit Bid, the Allowed amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from the Net Sales Proceeds or the Net Litigation Recoveries when and to the extent such Claims are Allowed by a Final Order. In the event of a successful Credit Bid by the Secured Lender, such

Accrued Professional Compensation Claims shall be paid as provided for in the Plan Support Stipulation.

2.    Professional Fee Estimates

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall estimate their Accrued Professional Compensation Claims prior to and as of the Effective Date and shall deliver such estimate to the Plan Administrator no later than five (5) business days after the Confirmation Date. If a Professional does not provide an estimate, the Plan Administrator may estimate the unbilled fees and expenses of such Professional.

3.    Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Plan Administrator shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court but subject to a budget or budgets approved by the Secured Lender, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred by the Plan Administrator on behalf of the Debtor or the Estate in connection with the consummation of the Plan.

C.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, in exchange for full and final satisfaction, settlement, release, and compromise of such Claim, Cash, payable on the latter of the Effective Date or as soon as reasonably practicable thereafter, or, if such Priority Tax Claim is not an Allowed Claim on the Effective Date, on the date such Allowed Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter, in an amount equal to the amount of such Allowed Priority Tax Claim. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Plan Administrator and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Article III.

A.    Summary of Classification

All Claims and Interests, other than Administrative Claims, the Allowed Secured Lender Administrative Claim, Accrued Professional Compensation Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and in connection with Sections 1122 and 1123(a)(1) of the Bankruptcy Code. Each Class shall be a Class of Claims or Interests in the

Chapter 11 Case of the Debtor. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

      1.      Class Identification for the Debtor

      The classification of Claims and Interests against the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Allowed Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Allowed Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Allowed Secured Lender Secured Claim | Impaired | Entitled to Vote |
| Class 4 | Allowed Unliquidated and Disputed Easement Claims | Impaired | Entitled to Vote |
| Class 5 | Allowed Disputed Easement Judgment Claims | Impaired | Entitled to Vote |
| Class 6 | Allowed General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Allowed Punitive Damages Claims | Impaired | Entitled to Vote |
| Class 8 | Allowed Interests | Impaired | Entitled to Vote |

B.      Treatment of Claims and Interests

      1.      The treatment provided to each Class relating to the Debtor for distribution purposes and voting rights are specified below:

### Class 1 – Allowed Other Priority Claims Against the Debtor

      (a)      *Classification*: Class 1 consists of all Allowed Other Priority Claims against the Debtor.

      (b)      *Treatment*: Except to the extent that a Holder of an Allowed Class 1 Other Priority Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release and compromise of each and every Allowed Other Priority Claim against the Debtor, each Holder of an Allowed Other Priority Claim shall, at the option of Plan Administrator:

        (i)      be paid in full in Cash on such date as is provided in the Confirmation Order or the later of the Effective Date and the date on which such Other Priority Claims becomes an Allowed Other Priority Claim, or as soon as reasonably practical thereafter; or

        (ii)     otherwise be treated in any other manner such that the Allowed Other Priority Claim shall be rendered Unimpaired on such date as is provided in the Confirmation Order or the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim or as soon as reasonably practicable thereafter.

(c)    *Voting*: Class 1 is Unimpaired, and Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Holders of Class 1 Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

### Class 2 – Allowed Other Secured Claims Against the Debtor

(a)    *Classification*: Class 2 consists of all Allowed Other Secured Claims against the Debtor.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed Class 2 Other Secured Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release and compromise of each and every Allowed Other Secured Claim against the Debtor, each Holder of such Claim shall, at the option of the Plan Administrator:

        (i)      be paid in full in Cash in an amount equal to such Allowed Other Secured Claim on the Effective Date;

        (ii)     receive the collateral securing any such Allowed Other Secured Claim and be paid interest required to be paid under Section 506(b) of the Bankruptcy Code; or

        (iii)    otherwise be treated in any other manner such that the Allowed Other Secured Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Other Secured Claim becomes an Allowed Other Secured Claim or as soon as reasonably practicable thereafter or have its Allowed Other Secured Claim reinstated in accordance with Section 1124 of the Bankruptcy Code, which treatment may include the assumption of such Allowed Other Secured Claim by a Purchaser.

(c)    *Voting*: Class 2 is Unimpaired, and Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to

Section 1126(f) of the Bankruptcy Code.  Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

### Class 3 – Allowed Secured Lender Secured Claim

(a)  *Classification*:  Class 3 consists of the Allowed Secured Lender Secured Claim.

(b)  *Treatment*:  In exchange for full and final satisfaction, settlement, release and compromise of the Allowed Secured Lender Secured Claim against the Debtor, the Holder of the Allowed Secured Lender Secured Claim shall receive the following:  (A) the Net Sales Proceeds and the Net Litigation Recoveries allocated to the Holder of the Allowed Secured Lender Secured Claim pursuant to the Waterfall; (B) solely in the case of a Property Sale Transaction to a Third Party Purchaser that utilizes the Stapled Financing, the Stapled Financing Documents; and (C) solely in connection with respect to a Property Sale Transaction pursuant to a Credit Bid, the Property (including all related personality and other property that is the property of the estate of the Debtor).  Nothing set forth herein shall operate to release, waive, impair, modify or reduce any Claim or Cause of Action or other right or remedy of the Secured Lender against any other Entity, except to the extent expressly provided for in the Plan or in the Plan Support Stipulation.

(c)  *Voting*:  Class 3 is Impaired, and the Holder of the Allowed Secured Lender Secured Claim is entitled to vote to accept or reject the Plan.

### Class 4 – Allowed Unliquidated and Disputed Easement Claims

(a)  *Classification*:  Class 4 consists of all Allowed Unliquidated and Disputed Easement Claims against the Debtor.

(b)  *Treatment*:  Except to the extent that the Holder of an Allowed Unliquidated and Disputed Easement Claim and the Plan Administrator agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release and compromise of each Allowed Unliquidated and Disputed Easement Claim, the Holder of an Allowed Unliquidated and Disputed Easement Claim shall receive its Pro Rata share of the Class 4 Payment Pool.  The distribution to Holders of Allowed Unliquidated and Disputed Easement Claims shall be in full satisfaction of any such Claims and the Holders will release and discharge and be deemed to release and discharge any Easement Rights held by such Holders or which is appurtenant to any real property owned, leased or otherwise occupied by such Holders.  To the extent such Holder (a) votes in favor of the Plan, (b) does not object to the Plan and/or (c) accepts any distribution under the Plan, such Holder shall be deemed to have consented to the transfer of the Property free and clear of any such

Easement Rights or Easement Claims pursuant to Section 363(f)(2) of the Bankruptcy Code; provided, however, that whether or not such Holder (a) votes in favor of the Plan, (b) does not object to the Plan and/or (c) accepts any distribution under the Plan, the Property will be transferred free and clear of any such Easement Rights or Easement Claims pursuant to Section 363(f)(4) and/or Section 363(f)(5) of the Bankruptcy Code.

(c)     *Voting*:  Class 4 is Impaired, and each Holder of an Allowed Unliquidated and Disputed Easement Claim is entitled to vote to accept or reject the Plan.  In accordance with Bankruptcy Rule 3018(a), each Holder of an Unliquidated and Disputed Easement Claim that has timely filed a Proof of Claim on or before the Easement Bar Date or such other date as may be ordered by the Bankruptcy Court shall have an Allowed Claim, solely for the purpose of voting to accept or reject the Plan, in the amount of $10.00.  The foregoing shall not result in an Unliquidated and Disputed Easement Claim being treated as an Allowed Claim for any other purpose, and such Claim shall remain a Disputed Claim unless and until such Claim becomes an Allowed Claim.

## Class 5 – Allowed Disputed Easement Judgment Claims

(a)     *Classification*:  Class 5 consists of all Allowed Disputed Easement Judgment Claims against the Debtor.

(b)     *Treatment*:  Except to the extent that the Holder of an Allowed Disputed Easement Judgment Claim and the Plan Administrator agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release and compromise of each Allowed Disputed Easement Judgment Claim, the Holder of an Allowed Disputed Easement Judgment Claim shall receive its Pro Rata share of the Class 5 Payment Pool.  The distribution to holders of Allowed Disputed Easement Judgment Claims shall be in full satisfaction of any such Claims and the Holders will release and discharge and be deemed to release and discharge any Easement Rights or Easement Claims held by such Holders or which is appurtenant to any real property owned, leased or otherwise occupied by such Holders.  To the extent such Holder (a) votes in favor of the Plan, (b) does not object to the Plan and/or (c) accepts any distribution under the Plan, such Holder shall be deemed to have consented to the transfer of the Property free and clear of any such Easement Rights or Easement Claims pursuant to Section 363(f)(2) of the Bankruptcy Code; provided, however, that whether or not such Holder (a) votes in favor of the Plan, (b) does not object to the Plan and/or (c) accepts any distribution under the Plan, the Property will be transferred free and clear of any such Easement Rights or Easement Claims pursuant to Section 363(f)(4) and/or Section 363(f)(5) of the Bankruptcy Code.

. (c)  *Voting*: Class 5 is Impaired, and each Holder of an Allowed Disputed Easement Judgment Claim is entitled to vote to accept or reject the Plan. In accordance with Bankruptcy Rule 3018(a), each Holder of an Allowed Disputed Easement Judgment Claim that has timely filed a Proof of Claim on or before the Easement Bar Date or such other date as may be ordered by the Bankruptcy Court shall have an Allowed Claim, solely for the purpose of voting to accept or reject the Plan, in the amount of $150,000.00.  The foregoing shall not result in an Allowed Disputed Easement Judgment Claim being treated as an Allowed Claim for any other purpose, and such Claim shall remain a Disputed Claim unless and until such Claim becomes an Allowed Claim.

## Class 6 – Allowed General Unsecured Claims

(a)  *Classification*: Class 6 consists of all Allowed General Unsecured Claims against the Debtor.

(b)  *Treatment*: Except to the extent that the Holder of an Allowed General Unsecured Claim and the Plan Administrator agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release and compromise of each Allowed General Unsecured Claim, the Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Class 6 Payment Pool.  The distribution to holders of Allowed General Unsecured Claims shall be in full satisfaction of any such Claims.  Mielczarek has agreed to waive distribution on her General Unsecured Claim.

(c)  *Voting*: Class 6 is Impaired, and each Holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

## Class 7 – Allowed Punitive Damages Claims

(a)  *Classification*: Class 7 consists of all Allowed Punitive Damages Claims against the Debtor.

(b)  *Treatment*: Except to the extent that the Holder of an Allowed Punitive Damages Claim and the Plan Administrator agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release and compromise of each Allowed Punitive Damages Claim, the Holder of an Allowed Punitive Damages Claim shall receive its Pro Rata share of the Class 7 Payment Pool.  The distribution to holders of Allowed Punitive Damages Claims shall be in full satisfaction of any such Claims.

(c)  *Voting*: Class 7 is Impaired, and each Holder of an Allowed Punitive Damages Claim is entitled to vote to accept or reject the Plan.  To the extent a Allowed Punitive Damages Claim has been liquidated pursuant to a Judgment, in accordance with Bankruptcy Rule 3018(a), each Holder

of such an Allowed Punitive Damages Claim that has timely filed a Proof of Claim on or before the Claims Bar Date or such other date as may be ordered by the Bankruptcy Court shall have an Allowed Claim, solely for the purpose of voting to accept or reject the Plan, in the amount set forth in such Judgment. The foregoing shall not result in an Allowed Punitive Damages Claim being treated as an Allowed Claim for any other purpose, and such Claim shall remain a Disputed Claim unless and until such Claim becomes an Allowed Claim.

### Class 8 – Allowed Interests

(a) *Classification*: Class 8 consists of all Allowed Interests. Except to the extent that the Holder of an Allowed Interest and the Plan Administrator agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release and compromise of each Allowed Interest, the Holder of an Allowed Interest shall receive its Pro Rata share of the Class 8 Payment Pool. The distribution to holders of Allowed Interests shall be in full satisfaction of any such Claims. The holders of Allowed Interests shall not retain their equity interests under the Plan.

(c) *Voting*: Class 8 is Impaired, and each Holder of an Allowed Interest is entitled to vote to accept or reject the Plan.

C.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing shall affect the rights of the Plan Administrator, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    Elimination of Vacant Classes

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement and Solicitation Procedures Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies Section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Plan Proponents shall seek Confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Plan Proponents reserve the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    Overview

The Plan Administrator will, in consultation with the Secured Lender, sell the Property free and clear of all liens, claims and interests (including free and clear of any and all Easement Claims and Easement Rights) to a Third Party Purchaser or to the Secured Lender.  The foregoing Property Sale Transaction may be with or without a Stalking Horse.  In connection with a sale to a Third Party Purchaser, the Secured Lender may, in its sole and absolute discretion, elect to offer Stapled Financing to a potential Third Party Purchaser.  The Net Sales Proceeds, along the Net Litigation Recoveries, will be used to fund the Plan pursuant to the Waterfall, as more particularly described in Articles IV.E and IV.H of the Plan.

The Plan Proponents commenced the process to sell the Property and, to the extent necessary, such process will continue on and after the Confirmation Date.  The sale process will be in accordance with the Bid Procedures approved by the Bankruptcy Court pursuant to the Bid Procedures Motion.  In furtherance of the foregoing, the Plan Proponents or the Plan Administrator, as applicable, took or will take such steps as are necessary to effectuate the foregoing, including the retention of the Broker, the selection of a Stalking Horse if feasible and advisable, the filing of a motion or application with the Bankruptcy Court to obtain the approval of the Bid Procedures and, if necessary, the conduct of an auction.  Notwithstanding the foregoing, (i) the consummation of the Property Sale Transaction shall occur on, and shall be a condition to the occurrence of, the Effective Date and (ii) for purposes of 11 U.S.C. § 1146(a), the Property Sale Transaction shall occur pursuant to the Plan.

B.    Plan Administrator

Prior to Confirmation Date, the Debtor retained a Chief Restructuring Officer, who will become the Plan Administrator on and after the Confirmation Date.  The duties, and any replacement of, the Plan Administrator shall be as set forth in and in accordance with the Plan Support Stipulation.

C.    Exit Financing

To the extent reasonably necessary to fund (i) payments to Holders of Allowed Administrative Claims and Priority Tax Claims and (ii) the expenses of implementing and effectuating the Plan, the Secured Lender shall advance such sums, pursuant to the Exit Facility made available to the Estate.  The maximum amount to be advanced under the Exit Facility, the interest rate, other fees to be charged in connection with the Exit Facility and other material terms and conditions with respect to the Exit Facility shall be set forth in the Plan Supplement. The Exit Facility will be secured by a first priority lien against and security interest in all assets and property of the Estate and shall be an Allowed Claim with priority over any and all other Allowed Claims; provided however, in the event that any asset or property of the Estate secures, pursuant to a duly perfected and unavoidable lien and security interest, one or more Other Secured Claim, the lien against and security interest in such property shall be subordinate to such duly perfected and unavoidable lien and security interest.  The Plan Administrator, on

behalf of the Estate, shall execute such loan documents, mortgages and security interests as are required by the Secured Lender in connection with such Exit Facility; provided, however, that the liens and security interests securing the Exit Facility shall be deemed perfected without the necessity of any filing or recording. Notwithstanding the foregoing, if the Secured Lender in its absolute discretion elects to file and record any mortgage or other security document, such mortgage or security document shall, pursuant to 11 U.S.C. § 1146(a), be accepted for filing and recording without the payment of any stamp or other transfer tax. The Secured Lender will be entitled, with respect to the Exit Facility, to all of the protections available to a debtor-in-possession lender under 11 U.S.C. § 364.

The Exit Facility will be paid in full from the Gross Sales Proceeds and/or any Net Litigation Recoveries prior to the payment of any other obligation in accordance with the Waterfall. The Exit Facility will be secured by a first priority security interest in and lien against all of the Debtor's assets and will be entitled to all of the protections available to a debtor-in-possession lender under 11 U.S.C. § 364 of the Bankruptcy Code.

D.    Property Sale Transaction

    1.    Generally

The Property will be sold pursuant to the Plan on an "as is, where is" basis and will exclude Cash, reserves, escrows and similar items, all of which shall be retained by the Estate and distributed in accordance with the Plan.

    2.    Stalking Horse

In the event that a Stalking Horse is selected, the Plan Administrator will negotiate a Stalking Horse APA with the Stalking Horse, which Stalking Horse APA may include customary bidder protections, including a breakup fee and/or expense reimbursement. The selection of a Stalking Horse and the terms and conditions of any Stalking Horse APA (including bid procedures and bidder protections) will be subject to the approval of the Secured Lender in its sole and absolute discretion. As set forth above, this may occur prior to the Confirmation Date.

    3.    Stapled Financing

The Secured Lender may elect to offer Stapled Financing to one or more potential bidders. The terms of such Stapled Financing and the decision of the Secured Lender to offer or not to offer Stapled Financing in general, and to any potential bidder in particular, shall be determined and made by the Secured Lender in its absolute and sole discretion. In the event that the Secured Lender offers such Stapled Financing and such bidder is the Purchaser, such Purchaser shall execute and deliver the Stapled Financing Documents to the Secured Lender.

    4.    Easement Rights

The sale of the Property pursuant to the Property Sale Transaction shall be free and clear of any Easement Claims or any Easement Rights pursuant to 11 U.S.C. 363(f)(2), (4) & (5). Without limiting the foregoing, any Holder of any Easement Claim or Easement Right shall

have no right to assert, and shall be barred and precluded from asserting, any Easement Claim or any Easement Right against the Debtor, the Estate or the Purchaser of the Property or maintain any action, *in rem* or otherwise, against the Property, with respect to the foregoing. Upon the Effective Date, any and all Easement Rights shall be deemed to be satisfied, terminated and discharged and, to the extent requested by the Purchaser, such Holder of an Easement Claim shall execute and deliver such document or documents as are reasonably necessary to reflect and effectuate the foregoing. In addition, the Purchaser may file a copy of the Confirmation Order or memorandum of same with the applicable recording office, confirming the foregoing, and the recorder shall be directed to accept the same for filing and recording without the requirement of the payment of any fees, transfer tax or similar amount.

5.    Cooperation

Without limiting any of their obligations under the Plan Support Stipulation, the Debtor Parties shall fully and completely cooperate with the sales process and the Property Sale Transaction. Without limiting the foregoing, the Debtor Parties shall provide such information as may be reasonably requested by the Plan Administrator or a potential bidder regarding the Property or any matters reasonably related thereto and shall cooperate with the Plan Administrator with respect to objections to and the resolution of Disputed Claims.

6.    Credit Bidding by the Secured Lender

At any sale of the Property, the Secured Lender may Credit Bid all or part of the Allowed Secured Lender Secured Claim. In the event that the Secured Lender submits a Credit Bid, is the winning bidder and the Property Sale Transaction closes, then the Secured Lender will be required to fund in Cash in an amount equal to the funding that would have been distributed under the Waterfall (other than distributions to the Secured Lender in respect of the Exit Facility, the Allowed Secured Lender Secured Claim and the Allowed Secured Lender Administrative Claim) in the event of a Cash purchase price in the amount of such Credit Bid.

Without limiting the foregoing, there is no cause to limit the Secured Lender's right to Credit Bid pursuant to Section 363(k) of the Bankruptcy Code and the Debtor Parties and any other Person shall be precluded, barred and estopped from asserting or alleging the existence of such cause or otherwise seeking to preclude, limit or restrict the right of the Secured Lender to Credit Bid.

E.    Waterfall

The Net Sales Proceeds and the Net Litigation Recoveries shall be distributed in accordance with the following Waterfall:

- First, to repay all amounts due under the Exit Facility, if any;

- Second, to the extent such claims are not paid from the Exit Facility, to pay all Allowed Administrative Claims (including the Allowed Secured Lender Administrative Claim and Allowed Claims of Professionals), Allowed Priority Tax Claims, Allowed Other