Priority Claims and Allowed Other Secured Claims (to the extent such Allowed Other Secured Claims are to receive payment in Cash under the Plan);

- Third, the aggregate sum of $100,000.00 to fund the Class 4 Payment Pool in the amount of $25,000.00, the Class 5 Payment Pool in the amount of $25,000.00 and the Class 6 Payment Pool of $50,000.00;

- Fourth, 100% of the Net Sales Proceeds and of Net Litigation Recoveries to the Secured Lender, until the Secured Lender has received the aggregate amount of $27,500,000.00 in respect of the Allowed Secured Lender Secured Claim;

- Fifth, 90% of the Net Sales Proceeds and the Net Litigation Recoveries to the Secured Lender and 10% of the Net Sales Proceeds and the Net Litigation Recoveries to be allocated to the Class 4 Payment Pool, the Class 5 Payment Pool and the Class 6 Payment Pool in the same proportion as the initial funding of such payment pools pursuant to "Third" above, until the Secured Lender has received the total aggregate amount of $29,500,000.00 in respect of the Allowed Secured Lender Secured Claim;

- Sixth, 75% of the Net Sales Proceeds and the Net Litigation Recoveries to the Secured Lender and 25% of the Net Sales Proceeds and the Net Litigation Recoveries to be allocated to the Class 4 Payment Pool, the Class 5 Payment Pool and the Class 6 Payment Pool in the same proportion as the initial funding of such payment pools pursuant to "Third" above, until the Secured Lender has received the total aggregate amount of $33,500,000.00 in respect of the Allowed Secured Lender Secured Claim;

- Seventh, 50% of the Net Sales Proceeds and the Net Litigation Recoveries to the Secured Lender and 50% of the Net Sales Proceeds and the Net Litigation Recoveries to be allocated to the Class 4 Payment Pool, the Class 5 Payment Pool and the Class 6 Payment Pool in the same proportion as the initial funding of such payment pools pursuant to "Third" above;

- Eighth, after payment in full of the Allowed Secured Lender Secured Claim (including any interest accruing on and after the Petition Date) and of all Allowed Claims in Class 4, Class 5 and Class 6, to the Class 7 Payment Pool; and

- Ninth, after payment in full of all Allowed Claims in Class 7, to the Class 8 Payment Pool.

Notwithstanding the foregoing, in no event shall any amount be allocated to the Class 4 Payment Pool, the Class 5 Payment Pool, the Class 6 Payment Pool and/or the Class 7 Payment Pool if all Allowed Claims entitled to payment from such Payment Pool have either been paid, or reserved for, in full and without interest, in which case any such amount that would otherwise have been allocated to such Payment will be reallocated to the Secured Lender and, upon payment in full of all the Allowed Secured Lender Secured Claim, to Class 8.

The Secured Lender will carve out its lien and security interests to the extent necessary to permit the funding of distributions to holders of Allowed Claims in accordance with the above Waterfall

F.    Insurance

On and after the Confirmation Date, the Plan Administrator will maintain customary insurance coverage, if appropriate and available, for the protection of the Plan Administrator, the Debtor and the Estate, including casualty and liability insurance. Any insurance policies or rights of the Debtor with respect thereto shall be assigned to the Plan Administrator and shall be deemed to be part of the Estate. To the extent necessary, amounts necessary to fund the premiums with respect to such insurance will be paid from the Exit Facility.

G.    Settlement of Disputed Claims

The Plan Administrator shall have authority to settle Disputed Claims against the Debtor without further approval of the Bankruptcy Court; provided, however, that settlement of Disputed Claims pursuant to which the Estate will pay $5,000.00 or more shall require the approval of the Bankruptcy Court.

H.    Litigation Trust

　　　1.    Formation of the Litigation Trust

On the Effective Date, the Litigation Trust will be formed and shall have the power and authority to take any action necessary to liquidate the Trust Assets, including prosecution and, if appropriate, settlement of the Litigation Claims, including the authority to retain attorneys and consultants. Notwithstanding the foregoing, if the Plan Proponents determine, on or before the Confirmation Date, that the likely amount of any Net Litigation Recoveries is immaterial, then the Litigation Trust shall not be created and the other provisions of the Plan with respect to the Litigation Trust shall be inoperative.

　　　2.    Trustee

The Plan Administrator will serve as the Litigation Trustee for the Litigation Trust. The compensation of the Litigation Trustee will be as provided for in the Litigation Trust Agreement. In the event of the death or incompetency (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is a corporation or other Entity), bankruptcy, insolvency, resignation or removal of the Litigation Trustee, a successor trustee shall be appointed as set forth in the Litigation Trust Agreement.

　　　3.    Purpose of the Litigation Trust; Reporting Duties

The Litigation Trust will be established for the primary purpose of liquidating the Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Litigation Trust, to make distributions to Holders of Allowed Claims and Interests from the Net Litigation Proceeds in accordance with the Plan and the Waterfall, and to take such actions as are

reasonably necessary to accomplish the foregoing, as more particularly set forth in the Plan and in the Litigation Trust Agreement. Upon the transfer by the Debtor of the Trust Assets to the Litigation Trust, the Debtor will have no reversionary or further interest in or with respect to the Trust Assets or the Litigation Trust. For all federal income tax purposes, the Beneficiaries of the Litigation Trust will be treated as the grantors and owners thereof and it is intended that the Litigation Trust be classified as a Litigation Trust under Section 301.7701 4 of the Treasury Regulations and that such Trust is owned by the Beneficiaries of the Litigation Trust. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries of the Litigation Trust be treated as if they had received a distribution of an interest in the Trust Assets and then contributed such interests to the Litigation Trust. Accordingly, the Litigation Trust will, in an expeditious but orderly manner, liquidate the Trust Assets by litigating and/or settling the Litigation Claims, make timely distributions to the Beneficiaries of the Litigation Trust pursuant to the Plan and the Confirmation Order, and not unduly prolong its duration. The Litigation Trust will not be deemed a successor in interest of the Debtor for any purpose other than as specifically set forth in the Plan. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

The Litigation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Beneficiaries of the Litigation Trust treated as grantors and owners thereof for federal income tax purposes. The Litigation Trustee shall endeavor to ensure that the Litigation Trust files tax returns as a grantor trustee pursuant to Treasury Regulation Section 1.671-4(a) and shall comply with all requirements of any Governmental Unit in connection therewith. The Litigation Trustee shall file or shall cause to be filed any other statement, returns, or disclosures relating to the Litigation Trust that are required by any Governmental Unit. The Litigation Trustee shall send to each Beneficiary an annual statement setting forth such Beneficiary's share of items of income, gain, loss, deduction or credit and provide to all such parties information for reporting such items on their federal income tax returns, as appropriate.

4.    Transfer of Assets to the Litigation Trust; Trust Assets Available for Distribution

The Litigation Trustee will establish the Litigation Trust on behalf of the Beneficiaries, with the Beneficiaries of the Litigation Trust to be treated as the grantors and deemed owners of the Trust Assets. On the Effective Date, the Debtor will transfer to the Litigation Trust for the benefit of the Beneficiaries of the Litigation Trust the Trust Assets in accordance with the provisions herein, notwithstanding any prohibition of assignability under non-bankruptcy law. The Litigation Trust will agree to accept and hold the Trust Assets in the Litigation Trust for the benefit of the Beneficiaries of the Litigation Trust, subject to the terms of the Plan.

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all Trust Assets shall vest in the Litigation Trust free and clear of all Liens, Claims, charges, mortgages, deeds of trust and encumbrances, other than all Liens, Claims, charges, mortgages, deeds of trust and encumbrances in favor of the Secured Lender or that secure the Allowed Secured Lender Secured Claim.

5.    Prosecution of the Litigation Claims

The Litigation Trustee shall take such action as is reasonably necessary to maximize the value of and liquidate the Litigation Claims, including the commencement and prosecution of any adversary proceedings, contested matters, lawsuits, arbitrations or other proceedings (including the prosecution or defense of any appeals, writs of mandamus, writs of certiorari, discovery in aid of collecting or executing any judgment and the execution of any judgment, and the posting of any bond required by a court in connection therewith), either in the Bankruptcy Court or in such other appropriate venue having jurisdiction of such Litigation Claims. In connection with the foregoing, the Litigation Trust shall defend and, if appropriate, settle, any counterclaims asserted or raised by a defendant to a Litigation Claim. The Litigation Trust may, if appropriate, settle any Litigation Claim.

6.    Distributions; Withholding

The Litigation Trust will make distributions at least annually to the Beneficiaries of all Net Litigation Recoveries in accordance with the Plan; provided, however, the Litigation Trust may retain such amounts reasonably necessary, as determined by the Litigation Trustee, (a) to fund the operations of the Litigation Trust or (b) to maintain the value of the Litigation Trust. The Litigation Trust may withhold from amounts distributable to any person or Entity any and all amounts, determined in the sole discretion of the Litigation Trustee, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.

7.    Investment Powers

The right and power of the Litigation Trustee to invest Litigation Trust funds, the proceeds thereof, or any income earned by the Litigation Trust shall be limited to the right and power to invest such assets (pending periodic distributions in accordance with Article IV.H.6) in such assets as permitted by Revenue Procedure 94-45, 1994-2 C.B. 684, or as modified by subsequent IRS guidance; provided however, that the Litigation Trustee may expend the assets of the Litigation Trust as reasonably necessary to maintain the value of the assets of the Litigation Trust or pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Litigation Trust or reasonable fees and expenses in connection with any Litigation Claim) necessary to further the purpose of the Litigation Trust.

8.    Insurance

The Litigation Trust will maintain customary liability insurance coverage, if appropriate and available, for the protection of the Litigation Trustee on and after the Effective Date. To the extent necessary, the premiums for such insurance shall be paid from the Exit Facility.

9.    Litigation Trust Implementation

On the Effective Date, the Litigation Trust will be established and become effective for the benefit of the Beneficiaries of the Litigation Trust entitled to distributions from the Litigation Trust. The Litigation Trust Agreement shall contain provisions similar to those contained in trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Litigation Trust as

a grantor trust for federal income tax purposes. All parties shall execute any documents or other instruments as necessary to cause title to the applicable assets to be transferred to the Litigation Trust. In the event of any conflict between the terms of the Plan and the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall control.

10.     Termination of Litigation Trust

The Litigation Trust shall terminate after its liquidation, administration and distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Litigation Trust Agreement. The Litigation Trust shall terminate no later than the fifth anniversary of the Effective Date; provided, however, that within a period of six months prior to such termination date or any extended termination date, the Litigation Trustee may extend the term of the Litigation Trust if necessary to facilitate or complete the liquidation of Trust Assets administered by the Litigation Trust; provided further, however, that the aggregate of all such extensions shall not exceed three years, unless the Litigation Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a "liquidation trust" for federal income tax purposes within the meaning of Treasury Regulation Section 301.7701-4(d).

11.     Termination of the Trustee for the Litigation Trust

The duties, responsibilities, and powers of the Litigation Trustee will terminate upon termination of the Litigation Trust.

I.     Substantive Consolidation

The Plan does not contemplate the substantive consolidation of the Debtor with any other Entity.

J.     Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of an Other Secured Claim, satisfaction in full of the portion of the Other Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Estate. Notwithstanding the foregoing and notwithstanding any other provision of the Plan or the Plan Support Stipulation, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates securing the Allowed Secured Lender Secured Claim, the Exit Financing or the Stapled Financing or granted in favor of or for the benefit of the Secured Lender (including for purposes of this provision any predecessor in interest to the Secured Lender) shall not be released, settled or compromised (unless and until the Secured Lender shall have received all of the distributions provided for in respect of the Allowed Secured Lender Secured Claim) and are (i) acknowledged to be duly perfected, unavoidable first priority Liens and security interests and (ii) hereby confirmed and preserved in full.

K.    Corporate Action

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects and all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), without any requirement of further action by the Interest holders, directors, members, trustees, officers, or managers of the Debtor or approval of the Bankruptcy Court. On or (as applicable) prior to the Effective Date, the Plan Administrator shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtor and the Estate, including any and all other agreements, documents, securities, and instruments relating to the foregoing; provided, however, that the foregoing shall not operate to waive or reduce any consent or approval rights of the Secured Lender. The authorizations and approvals contemplated by this Article shall be effective notwithstanding any requirements under non-bankruptcy law.

L.    Effectuating Documents; Further Transactions

On and after the Effective Date, the Debtor and any of the Debtor's directors, members, trustees, officers, and managers are authorized and directed to issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan as may be requested or directed by the Plan Administrator from time to time, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

M.    Withdrawal of Appeals

In the event that the Debtor and Mielczarek have not previously done so, the Debtor and Mielczarek shall withdraw the Appeals, such withdrawal shall be with prejudice to any further appeals or requests for similar relief.

N.    Division Place Collateral

In the event that the Secured Lender receives Net Sales Proceeds and Net Litigation Recoveries pursuant to the Waterfall in respect of the Allowed Secured Lender Secured Claim in an amount equal to or greater than $27,500,000.00, then the Secured Lender will, at no expense to the Secured Lender, release its mortgage against the property located at 15 Division Place, Brooklyn, New York (the "Division Place Collateral"), provided that Kew, Kew's equity holder(s) and any other Insiders (determined as if Kew were a debtor in a case under the Bankruptcy Code) of Kew (collectively, the "Kew Parties") delivers to the Secured Lender a release, exculpation and covenant not to sue in form and substance acceptable to the Secured Lender in its sole and absolute discretion.

In the event that the Secured Lender receives Net Sales Proceeds and Net Litigation Recoveries pursuant to the Waterfall in respect of the Allowed Secured Lender Secured Claim

in an amount less than $27,500,000.00, then the Kew Parties will, at the election of the Secured Lender, either consent to and cooperate with a "friendly" foreclosure of the Division Place Collateral or transfer the Division Place Collateral to the Secured Lender or its designee/nominee pursuant to a deed in lieu transaction. In either case, the Kew Parties shall deliver to the Secured Lender a release, exculpation and covenant not to sue in form and substance acceptable to the Secured Lender.

The Kew Parties shall enter in an agreement with respect to the foregoing in form and substance acceptable to the Secured Lender.

O.    Exemption from Certain Taxes and Fees

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property or any Interests pursuant to the Plan (including any liens or security interests granted in connection with the Stapled Financing), including the recording of any mortgages or liens or amendments thereto, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

P.    Insurance Policies

Notwithstanding anything herein to the contrary, on the Effective Date, the Debtor shall assume all of the Insurance Policies pursuant to Section 365 of the Bankruptcy.

Q.    Plan Administrator to Serve as Disbursing Agent

The Plan Administrator, or any other Entity or Entities selected by the Plan Administrator in his discretion to make or facilitate distributions, shall serve as the disbursing agent with respect to distributions to be made from the Estate.

R.    Dissolution of Entity

Upon the later of the consummation of the Property Sale Transaction and the final distribution to Holders of Allowed Claims against the Debtor following the resolution of all Disputed Claims, the Debtor shall be deemed dissolved under state law without further action by the Plan Administrator and without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity except as otherwise provided for in the Plan.

S.    Preservation of Rights of Action

The Plan Administrator shall have the right to reduce and/or disallow any Claim (other than the Allowed Secured Lender Secured Claim and the Allowed Secured Lender Administrative Claim) based upon the existence of a Cause of Action against the Holder of such Claim.  No Entity may rely on the absence of a specific reference in the Plan, the Plan

Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Administrator will not pursue any and all available Causes of Action against them. All rights to prosecute any and all Cause of Actions against any Entity, except as otherwise expressly provided in the Plan (including the General Release set forth in Article VIII.C of the Plan), are and shall be expressly reserved. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan Support Stipulation, the Plan or a Bankruptcy Court order, all Cause of Actions are expressly reserved for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Cause of Actions upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    Rejection of Executory Contracts and Unexpired Leases

All Executory Contracts and Unexpired Leases by and between the Debtor and any Insiders of the Debtor shall be rejected.

Except as otherwise provided in the Plan, the Executory Contracts or Unexpired Leases that are not assumed or rejected pursuant to an Order prior to the Effective Date shall be rejected, except to the extent that the Purchaser has designated any such Executory Contract or Unexpired Lease to be assumed and assigned to such Purchaser. Any Executory Contract or Unexpired Lease designated to be assumed and assigned to such Purchaser shall be specified as such in the Plan Supplement, which shall be filed with the Bankruptcy Court ___ days prior to the Confirmation Hearing. In the event that the Purchaser designates a Executory Contract or Unexpired Lease designated to be assumed and assigned to such Purchaser, the Purchaser shall be responsible for paying and performing any Cure Obligations (without any adjustment to the Purchase Price for such amounts) and for demonstrating adequate assurance of future performance under such Executory Contract or Unexpired Lease, as applicable.

Unless otherwise indicated in the Plan Supplement, all assumptions and assignments or rejections of the Debtor's Executory Contracts and Unexpired Leases in the Plan are effective as of the Effective Date. Notwithstanding anything to the contrary in the Plan, the Plan Administrator reserves the right to designate an Executory Contract or Unexpired Lease as a rejected Executory Contract or Unexpired Lease at any time through and including the later of thirty (30) days after the Effective Date (or such later date as provided in Article V in the event of any objection by a counterparty to an Executory Contract or Unexpired Lease to the amount of any Cure Obligation or other matter relating to the proposed assumption and assignment).

B.    Cure of Defaults for Assumed and Assigned Executory Contracts and Unexpired Leases

Any Executory Contracts or Unexpired Leases to be assumed and assigned pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the satisfaction of the Cure Obligations or by an agreed-upon waiver of the Cure Obligations on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the Plan

Administrator or the Purchaser and the counterparties to each such Executory Contract or Unexpired Lease may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption and assignment or related Cure Obligations must be Filed, served, and actually received by the Plan Administrator by twenty-five (25) days after the Effective Date. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption and assignment of such Executory Contract or Unexpired Lease or such Cure Obligations will be deemed to have assented to such matters and shall be forever barred, estopped, and enjoined from asserting such objection against the Debtor, the Estate or the Plan Administrator.

In the event of a dispute regarding: (1) the Cure Obligations; (2) the ability of the Purchaser to provide "adequate assurance of future performance" within the meaning of Section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed and assigned; or (3) any other matter pertaining to assumption and/or assignment, then the applicable Cure Obligations shall be satisfied following the entry of a Final Order resolving the dispute and approving the assumption and assignment of such Executory Contracts or Unexpired Leases or as may be agreed upon the Plan Administrator, and the counterparty to such Executory Contract or Unexpired Lease; provided that prior to the Effective Date, the Plan Administrator, may in consultation with and subject to the consent of the Secured Lender, settle any dispute regarding Cure Obligations without any further notice to any party or any action, order, or approval of the Bankruptcy Court. The Plan Proponents reserve the right to reject, or nullify the assumption and assignment of, any Executory Contract or Unexpired Lease no later than thirty (30) days after a Final Order determining the Cure Obligations, any request for adequate assurance of future performance required to assume and assign such Executory Contract or Unexpired Lease, and any other matter pertaining to assumption and/or assignment.

Assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption and/or assignment. Anything in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed no later than the later of (a) thirty (30) days after the effective date of rejection of such Executory Contract or Unexpired Lease and (b) thirty (30) days after the Effective Date.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim, (b) be permitted to vote to accept or reject the Plan, or (c) participate in any distribution in the Chapter 11 Case on account of such Claim, and such Claim shall be deemed fully satisfied, released, settled and compromised, and be subject to the permanent injunction set forth in Article VIII.F, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

D.    Pre-existing Obligations to the Debtor or Estate Under Executory Contracts and Unexpired Leases

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the right of the Debtor or the Estate to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtor from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases are expressly reserved and not waived.

E.    Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.    Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease in the Plan Supplement including any amendment or supplement thereof, nor anything contained in the Plan, shall constitute an admission by the Plan Proponents or the Plan Administrator that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption and assignment or rejection, the Secured Lender or the Plan Administrator shall have ninety (90) days following entry of a Final Order resolving such dispute to alter the treatment of such Executory Contract or Unexpired Lease as otherwise provided herein.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such a Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class from the Estate. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII. Except as otherwise provided herein, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim or Allowed Interest shall, on account of such Allowed Claim or Allowed Interest, receive a distribution in excess of the Allowed amount of such Claim or Interest plus any postpetition interest on such Claim or Interest payable in accordance with the Plan.

B.    Distributions to Holders of Claims Against the Debtor

All distributions that are to be made to the Holders of Claims against the Debtor shall be made pursuant to the terms of Article VI.B hereof.

C.    Rights and Powers of Plan Administrator as Disbursing Agent

1.    Powers of the Plan Administrator as Disbursing Agent

The Plan Administrator shall be empowered to, as applicable: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated under the Plan; (c) subject to consultation with and the consent of the Secured Lender, employ professionals to represent him with respect to his responsibilities; and (d) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Plan Administrator after the Effective Date (including taxes, other than income or other similar taxes of the Plan Administrator in an individual capacity) and any reasonable compensation and expense reimbursement Claims (including reasonable attorneys'

fees and expenses) made by the Plan Administrator shall be paid in Cash using, among other things, the Net Sales Proceeds, the Net Litigation Recoveries or advances under the Exit Facility, without any further notice to or action, order, or approval of the Bankruptcy Court but subject, in all events, to consultation with and the consent of the Secured Lender.

D.    Distributions on Account of Claims Allowed After the Effective Date

1.    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Plan Administrator, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

3.    Disputed Claims Reserve

On the Effective Date (or as soon thereafter as is reasonably practicable), the Plan Administrator shall deposit in the Disputed Claims Reserve the amount of Cash that would have been distributed to the Holders of all Disputed Claims against the Debtor as if such Disputed Claims had been Allowed on the Effective Date, with the amount of such Allowed Claims to be determined, solely for the purposes of establishing reserves and for maximum distribution purposes, to be the lesser of (a) the asserted amount of the Disputed Claim filed with the Bankruptcy Court, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code, or (c) amount otherwise agreed by the Plan Administrator and the Holder of such Disputed Claim for reserve purposes. To the extent the amount of Cash deposited in the Disputed Claims Reserve on account of Disputed Claims against the Debtor exceeds the amount of Disputed Claims against the Debtor (as of the funding of the Disputed Claims Reserve) that later become Allowed, the excess shall be distributed in accordance with the Waterfall.

E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.    Delivery of Distributions in General

Except as otherwise provided herein, the Plan Administrator shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor' books and records as of the date of any such distribution; provided that the manner of such distributions shall be determined at the discretion of the Plan Administrator; and provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder. If a Holder holds more than one Claim in

any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

      2.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Plan Administrator has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; <u>provided that</u> such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of three months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Estate, and shall be distributed by the Plan Administrator in accordance with the Waterfall, and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

      3.      Manner of Payment Pursuant to the Plan

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Plan Administrator by check or by wire transfer.

F.      Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

G.      Claims Paid or Payable by Third Parties

      1.      Claims Paid by Third Parties

The Plan Administrator on or prior to the Effective Date shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Plan

Administrator to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Plan Administrator annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtor' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or the Estate, the Plan Administrator, the Secured Lender or any other Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      Resolution of Claims Against the Debtor

1.      Allowance of Claims Against the Debtor

On or after the Effective Date, the Plan Administrator shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed as of the Effective Date and except with respect to the Allowed Secured Lender Secured Claim, the Allowed Secured Lender Administrative Claim and any claims arising under or relating to the Exit Facility. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

2.      Prosecution of Objections to Claims Against the Debtor

The Plan Administrator and the Secured Lender shall have the exclusive authority to File objections to Claims against the Debtor, and to settle, compromise, withdraw or litigate to judgment objections to any and all Claims against the Debtor, regardless of whether such Claims are in a Class or otherwise. From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim against the Debtor without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that settlement of Disputed Claims against the Debtor pursuant to which the Plan Administrator will pay $__,000 or more shall require the approval of the Bankruptcy Court and the Secured Lender. From and after the Effective Date, the Plan Administrator shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises of Claims against the Debtor without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Time to File Objections to Claims Against the Debtor

Any objections to Claims against the Debtor shall be Filed on or before the Claims Objection Bar Date.

4.      Estimation of Claims Against the Debtor

The Plan Administrator and the Secured Lender may, at any time, and shall have the exclusive authority to, request that the Bankruptcy Court estimate (a) any Disputed Claim against the Debtor pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Plan Administrator or the Secured Lender have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim against the Debtor, contingent Claim against the Debtor or unliquidated Claim against the Debtor, including during the litigation concerning any objection to any Claim against the Debtor or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim against the Debtor that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim against the Debtor, contingent Claim against the Debtor, or unliquidated Claim against the Debtor, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Plan Administrator may elect to pursue additional objections to the ultimate distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Administrator or the Secured Lender may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim against the Debtor that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one

41

another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

       5.       Expungement or Adjustment to Claims Against the Debtor Without Objection

Any Claim against the Debtor that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Plan Administrator and any Claim that has been amended may be adjusted thereon by the Plan Administrator in all Case without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

B.      Disallowance of Claims

All Claims against or Interests in the Debtor held by any Entity from which property is sought by the Plan Administrator under Section 542, 543, 550, or 553 of the Bankruptcy Code or that the Plan Administrator alleges is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Plan Administrator on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned Sections of the Bankruptcy Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

EXCEPT AS PROVIDED FOR UNDER THE PLAN OR OTHERWISE AGREED TO BY THE PLAN ADMINISTRATOR ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE (THAT DO NOT AMEND TIMELY FILED CLAIMS) SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE OF THE PLAN WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

C.      Amendments to Claims

On or after the Effective Date, except as provided in Section [II.A], a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Plan Administrator, and any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

# ARTICLE VIII.
## SETTLEMENT, RELEASES, EXCULPATIONS, INJUNCTIONS, AND RELATED PROVISIONS

A.    Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan or relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  Except as otherwise provided in the Plan and in the Plan Support Stipulation, a vote by a Holder of a Claim for or against this Plan does not constitute a waiver or release of any rights of the Debtor or the Estate, as applicable, or the Plan Administrator and the Secured Lender to object to that Holder's Claim on any basis, including pursuant to Section 502(d) of the Bankruptcy Code on the basis that such Holder has received or was the beneficiary of a preferential, fraudulent, or other voidable transfer of assets, regardless of whether any Claims, Causes of Action, or other rights of the Debtor or their Estates are specifically or generally identified herein or otherwise released pursuant to the General Release.  Notwithstanding the foregoing, the Allowed Secured Lender Secured Claim, the Allowed Secured Lender Administrative Claim and Claims arising under or relating to the Exit Facility shall not be subject to such objection or Disallowance.

B.    Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination and recharacterization, Section 510(b) of the Bankruptcy Code, or otherwise.  Except as otherwise provided in the Plan or the Plan Support Stipulation, pursuant to Section 510 of the Bankruptcy Code and equitable principles of recharacterization, the Plan Proponents reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, equitable subordination or recharacterization relating thereto.  Notwithstanding anything herein to the contrary, no Holder of a Section 510(b) Claim shall receive any distribution on account of such Section 510(b) Claim, and all Section 510(b) Claims shall be extinguished.

C.      General Releases

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE
BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF
THE GENERAL RELEASE SET FORTH BELOW, WHICH INCLUDES BY REFERENCE
EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN
AND FURTHER SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT
THE GENERAL RELEASE IS:  (1) IN EXCHANGE FOR THE GOOD AND VALUABLE
CONSIDERATION PROVIDED BY THE SECURED LENDER RELEASEES; (2) A GOOD
FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS AND CAUSES OF
ACTION RELEASED BY THE GENERAL RELEASE; (3) IN THE BEST INTERESTS OF
THE DEBTOR AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE
DEBTOR; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER
DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE
RELEASORS ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED
PURSUANT TO THE GENERAL RELEASE.

1.      Releases of Secured Lender Releasees and Chief Restructuring Officer by the
Debtor Party Releasors

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY,
ON THE EFFECTIVE DATE AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR
THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY OR ON BEHALF OF
THE SECURED LENDER RELEASEES AND THE CHIEF RESTRUCTURING OFFICER,
THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH OF THE DEBTOR
PARTY RELEASORS, ON BEHALF OF SUCH DEBTOR PARTY RELEASOR AND ALL
THOSE CLAIMING BY, THROUGH OR ON BEHALF OF SUCH DEBTOR PARTY
RELEASOR, TO THE MAXIMUM EXTENT OF APPLICABLE LAW, DISCHARGES AND
RELEASES AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE
AND RELEASE TO EACH OF THE SECURED LENDER AND THE CHIEF
RESTRUCTURING OFFICER, AND THEIR RESPECTIVE PROPERTY FROM ANY AND
ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES,
REMEDIES, CAUSES OF ACTION, LIABILITIES, INCLUDING ALL AVOIDANCE OR
OTHER ACTIONS UNDER SECTIONS 510, 544-49 AND 724 OF THE BANKRUPTCY
CODE AND, TO THE EXTENT RELATED THERETO, SECTIONS 542-43, 550 OR 553 OF
THE BANKRUPTCY CODE, OR ANY  CLAIMS UNDER THE NEW YORK DEBTOR &
CREDITOR LAW OR ANY OTHER SIMILAR OR COMPARABLE PROVISION UNDER
STATE LAW WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS ASSERTED
ON BEHALF OF THE DEBTOR OR THE ESTATE) WHETHER KNOWN OR UNKNOWN,
FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR
NON-CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR
OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF
FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR
RELATED IN ANY WAY TO THE DEBTOR, THE ESTATE, THE PLAN
ADMINISTRATOR, THE LITIGATION TRUSTEE, THE LITIGATION TRUST, THE
TRANSACTIONS CONTEMPLATED BY THE PLAN SUPPORT STIPULATION OR THE
PLAN (INCLUDING THE PROPERTY SALE TRANSACTION), THE CHAPTER 11 CASE,

THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN (INCLUDING THE ALLOWANCE, DISALLOWANCE OR COMPROMISE THEREOF), THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY OF THE DEBTOR AND ANY OF THE SECURED LENDER RELEASEES AND THE CHIEF RESTRUCTURING OFFICER, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASE, THE RECEIVERSHIP, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN SUPPORT STIPULATION, THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, THE PROPERTY SALE TRANSACTION, THE STAPLED FINANCING OR THE STAPLED FINANCING DOCUMENTS, THE EXIT FACILITY, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATED TO THE CHAPTER 11 CASE, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE SUCH EFFECTIVE DATE, INCLUDING THE SELECTION AND APPOINTMENT OF THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR AND THE RECEIVER AND THOSE THAT ANY OF THE RELEASORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE RELEASING PARTIES; <u>PROVIDED THAT</u> IN CONNECTION WITH THE FOREGOING GENERAL RELEASE, THE VALIDITY, ENFORCEABILITY, PRIORITY AND PERFECTION, IN ALL RESPECTS, OF THE LIENS, CLAIMS, INTERESTS, MORTGAGES, AND ENCUMBRANCES OF THE LOAN AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR THAT OTHERWISE SECURE THE ALLOWED SECURED LENDER SECURED CLAIM, THE ALLOWED SECURED LENDER ADMINISTRATIVE CLAIM AND THE EXIT FACILITY AND OF THE SECURED LENDER ARE HEREBY CONFIRMED AND ADJUDICATED BY THE BANKRUPTCY COURT; <u>PROVIDED FURTHER THAT</u> THE FOREGOING GENERAL RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE RELEASORS: (1) THE PLAN OR THE PLAN SUPPORT STIPULATION, OR ANY AGREEMENTS OR UNDERTAKINGS ARISING THEREUNDER, ENTERED INTO PURSUANT TO, OR RELATING TO THE FOREGOING; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, THE PLAN SUPPORT STIPULATION, OR RELATED DOCUMENTS (INCLUDING THE TREATMENT OF CLAIMS HEREUNDER).

     2.     Releases of Secured Lender Releasees and the Chief Restructuring Officer by the Plan Administrator and the Litigation Trustee

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY OR ON BEHALF OF THE SECURED LENDER RELEASEES AND THE CHIEF RESTRUCTURING OFFICER, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE PLAN ADMINISTRATOR AND THE LITIGATION TRUSTEE, ON BEHALF OF ALL THOSE CLAIMING BY,

THROUGH OR ON BEHALF OF THE PLAN ADMINISTRATOR AND/OR THE
LITIGATION TRUSTEE, INCLUDING THE ESTATE AND THE LITIGATION TRUST, TO
THE MAXIMUM EXTENT OF APPLICABLE LAW, DISCHARGES AND RELEASES
AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE
TO EACH OF THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCTURING
OFFICER AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS,
INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES,
CAUSES OF ACTION, LIABILITIES, INCLUDING ALL AVOIDANCE OR OTHER
ACTIONS UNDER SECTIONS 510, 544-49 AND 724 OF THE BANKRUPTCY CODE
AND, TO THE EXTENT RELATED THERETO, SECTIONS 542-43, 550 OR 553 OF THE
BANKRUPTCY CODE, OR ANY  CLAIMS UNDER THE NEW YORK DEBTOR &
CREDITOR LAW OR ANY OTHER SIMILAR OR COMPARABLE PROVISION UNDER
STATE LAW WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS ASSERTED
ON BEHALF OF THE DEBTOR OR TH ESTATE), AND ANY EASEMENT CLAIMS OR
EASEMENT RIGHTS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR
UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-
CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR
OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF
FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR
RELATED IN ANY WAY TO THE DEBTOR, THE ESTATE, THE PLAN
ADMINISTRATOR, THE LITIGATION TRUSTEE, THE LITIGATION TRUST, THE
TRANSACTIONS CONTEMPLATED BY THE PLAN SUPPORT STIPULATION, THE
PLAN (INCLUDING THE PROPERTY SALE TRANSACTION), THE CHAPTER 11 CASE,
THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO,
ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN (INCLUDING THE
ALLOWANCE, DISALLOWANCE OR COMPROMISE THEREOF), THE BUSINESS OR
CONTRACTUAL ARRANGEMENTS BETWEEN ANY OF THE DEBTOR OR THE
ESTATE AND ANY OF THE SECURED LENDER RELEASEES OR THE CHIEF
RESTRUCTURING OFFICER, THE RESTRUCTURING OF CLAIMS AND INTERESTS
PRIOR TO OR IN THE CHAPTER 11 CASE, THE RECEIVERSHIP, THE NEGOTIATION,
FORMULATION, OR PREPARATION OF THE PLAN SUPPORT STIPULATION, THE
PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, THE PROPERTY
SALE TRANSACTION, THE STAPLED FINANCING OR THE STAPLED FINANCING
DOCUMENTS, THE EXIT FACILITY, OR RELATED AGREEMENTS, INSTRUMENTS,
OR OTHER DOCUMENTS RELATED TO THE CHAPTER 11 CASE, UPON ANY OTHER
ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER
OCCURRENCE TAKING PLACE ON OR BEFORE SUCH EFFECTIVE DATE,
INCLUDING THE SELECTION AND APPOINTMENT OF THE CHIEF RESTRUCTURING
OFFICER, THE PLAN ADMINISTRATOR AND THE RECEIVER AND THOSE THAT
ANY OF THE RELEASORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN
THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY
HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN
LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE RELEASING
PARTIES; PROVIDED THAT IN CONNECTION WITH THE FOREGOING GENERAL
RELEASE, THE VALIDITY, ENFORCEABILITY, PRIORITY AND PERFECTION, IN ALL
RESPECTS, OF THE LIENS, CLAIMS, INTERESTS, MORTGAGES, AND

ENCUMBRANCES OF THE LOAN AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR THAT OTHERWISE SECURE THE ALLOWED SECURED LENDER SECURED CLAIM, THE ALLOWED SECURED LENDER ADMINISTRATIVE CLAIM AND THE EXIT FACILITY AND OF THE SECURED LENDER ARE HEREBY CONFIRMED AND ADJUDICATED BY THE BANKRUPTCY COURT; PROVIDED FURTHER THAT THE FOREGOING GENERAL RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE RELEASORS RELATING TO, ARISING UNDER OR AS PROVIDED IN: (1) THE PLAN OR THE PLAN SUPPORT STIPULATION, OR ANY AGREEMENTS OR UNDERTAKINGS ARISING THEREUNDER, ENTERED INTO PURSUANT TO, OR RELATING TO THE FOREGOING; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, THE PLAN SUPPORT STIPULATION, OR RELATED DOCUMENTS (INCLUDING THE TREATMENT OF CLAIMS HEREUNDER).

3.      Releases of Secured Lender Releasees, Chief Restructuring Officer, the Plan Administrator Releasees and the Litigation Trustee Releasees by Holders of Claims and Interests

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY OR ON BEHALF OF THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR RELEASEES AND THE LITIGATION TRUSTEE RELEASEES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH HOLDER OF A CLAIM OR INTEREST, INCLUDING ANY EASEMENT CLAIM OR EASEMENT RIGHT, WHETHER OR NOT SUCH CLAIM OR INTEREST IS ALLOWED AND WHETHER OR NOT SUCH HOLDER OF A CLAIM OR INTEREST HAS VOTED TO ACCEPT OR REJECT THE PLAN, ON BEHALF OF HOLDER AND ALL THOSE CLAIMING BY, THROUGH OR ON BEHALF OF HOLDER, TO THE MAXIMUM EXTENT OF APPLICABLE LAW, DISCHARGES AND RELEASES AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH OF THE SECURED LENDER RELEASEES, CHIEF RESTRUCTURING OFFICER AND THE PLAN ADMINISTRATOR RELEASEES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, LIABILITIES, INCLUDING ALL AVOIDANCE OR OTHER ACTIONS UNDER SECTIONS 510, 544-49 AND 724 OF THE BANKRUPTCY CODE AND, TO THE EXTENT RELATED THERETO, SECTIONS 542-43, 550 OR 553 OF THE BANKRUPTCY CODE, OR ANY CLAIMS UNDER THE NEW YORK DEBTOR & CREDITOR LAW OR ANY OTHER SIMILAR OR COMPARABLE PROVISION UNDER STATE LAW WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTOR OR TH ESTATE), AND ANY EASEMENT CLAIMS OR EASEMENT RIGHTS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF

FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, THE ESTATE, THE PLAN ADMINISTRATOR, THE TRANSACTIONS CONTEMPLATED BY THE PLAN SUPPORT STIPULATION, THE PLAN (INCLUDING THE PROPERTY SALE TRANSACTION), THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN (INCLUDING THE ALLOWANCE, DISALLOWANCE OR COMPROMISE THEREOF), THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY OF THE DEBTOR AND ANY OF THE SECURED LENDER RELEASEES AND THE CHIEF RESTRUCTURING OFFICER, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASE, THE RECEIVERSHIP, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN SUPPORT STIPULATION, THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, THE PROPERTY SALE TRANSACTION, THE STAPLED FINANCING OR THE STAPLED FINANCING DOCUMENTS, THE EXIT FACILITY, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATED TO THE CHAPTER 11 CASE, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE SUCH EFFECTIVE DATE, INCLUDING THE SELECTION AND APPOINTMENT OF THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR AND THE RECEIVER AND THOSE THAT ANY OF THE HOLDERS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY OTHER HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE FOREGOING RELEASING PARTIES; PROVIDED THAT IN CONNECTION WITH THE FOREGOING GENERAL RELEASE, THE VALIDITY, ENFORCEABILITY, PRIORITY AND PERFECTION, IN ALL RESPECTS, OF THE LIENS, CLAIMS, INTERESTS, MORTGAGES, AND ENCUMBRANCES OF THE LOAN AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR THAT OTHERWISE SECURE THE ALLOWED SECURED LENDER SECURED CLAIM, THE ALLOWED SECURED  LENDER ADMINISTRATIVE CLAIM AND THE EXIT FACILITY AND OF THE SECURED LENDER ARE HEREBY CONFIRMED AND ADJUDICATED BY THE BANKRUPTCY COURT; PROVIDED FURTHER THAT THE FOREGOING GENERAL RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE HOLDERS OF CLAIMS AND INTERESTS RELATING TO, ARISING UNDER OR AS PROVIDED IN:  (1) THE PLAN OR THE PLAN SUPPORT STIPULATION, OR ANY AGREEMENTS OR UNDERTAKINGS ARISING THEREUNDER, ENTERED INTO PURSUANT TO, OR RELATING TO THE FOREGOING; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, THE PLAN SUPPORT STIPULATION, OR RELATED DOCUMENTS (INCLUDING THE TREATMENT OF CLAIMS HEREUNDER).

Notwithstanding the foregoing, Holders of Claims against the Debtor (other than any Debtor Releasor or Debtor  Releasee) may elect to opt out of the foregoing General Release by indicating as such on the ballot submitted by each Holder.  Any Holder who fails to opt out

shall be deemed to have consented to the following General Release and shall be subject and bound by such General Release.

4.    Releases of Debtor Party Releasees by Secured Lender Parties, the Chief Restructuring Officer, the Plan Administrator and the Litigation Trustee

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY OR ON BEHALF OF THE DEBTOR PARTY RELEASEES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH OF THE SECURED LENDER PARTIES, THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR AND THE LITIGATION TRUSTEE, ON BEHALF OF SUCH SECURED LENDER PARTIES, THE PLAN ADMINISTRATOR AND THE LITIGATION TRUSTEE AND ALL THOSE CLAIMING BY, THROUGH OR ON BEHALF OF SUCH SECURED LENDER PARTIES, THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR AND THE LITIGATION TRUSTEE, TO THE MAXIMUM EXTENT OF APPLICABLE LAW, DISCHARGES AND RELEASES AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH OF THE DEBTOR PARTY RELEASEES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, LIABILITIES, INCLUDING ALL AVOIDANCE OR OTHER ACTIONS UNDER SECTIONS 510, 544-49 AND 724 OF THE BANKRUPTCY CODE AND, TO THE EXTENT RELATED THERETO, SECTIONS 542-43, 550 OR 553 OF THE BANKRUPTCY CODE, OR ANY CLAIMS UNDER THE NEW YORK DEBTOR & CREDITOR LAW OR ANY OTHER SIMILAR OR COMPARABLE PROVISION UNDER STATE LAW WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTOR OR TH ESTATE) WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, THE ESTATE, THE PLAN ADMINISTRATOR, THE TRANSACTIONS CONTEMPLATED BY THE PLAN SUPPORT STIPULATION, THE PLAN (INCLUDING THE PROPERTY SALE TRANSACTION), THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN (INCLUDING THE ALLOWANCE, DISALLOWANCE OR COMPROMISE THEREOF), THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY OF THE DEBTOR PARTY RELEASEES, AND ANY OF THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCTURING OFFICER, PLAN ADMINISTRATOR RELEASEES AND LITIGATION TRUSTEE RELEASEES, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASE, THE RECEIVERSHIP, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN SUPPORT STIPULATION, THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, THE PROPERTY SALE TRANSACTION, THE STAPLED FINANCING OR THE STAPLED FINANCING DOCUMENTS, THE EXIT FACILITY, OR

RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATED TO THE CHAPTER 11 CASE, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE SUCH EFFECTIVE DATE, INCLUDING THE SELECTION AND APPOINTMENT OF THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR AND THE RECEIVER AND THOSE THAT ANY OF THE RELEASORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE RELEASING PARTIES; <u>PROVIDED THAT</u> IN CONNECTION WITH THE FOREGOING GENERAL RELEASE, THE VALIDITY, ENFORCEABILITY, PRIORITY AND PERFECTION, IN ALL RESPECTS, OF THE LIENS, CLAIMS, INTERESTS, MORTGAGES, AND ENCUMBRANCES OF THE LOAN AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR THAT OTHERWISE SECURE THE ALLOWED SECURED LENDER SECURED CLAIM, THE ALLOWED SECURED  LENDER ADMINISTRATIVE CLAIM AND THE EXIT FACILITY AND OF THE SECURED LENDER ARE HEREBY CONFIRMED AND ADJUDICATED BY THE BANKRUPTCY COURT; <u>PROVIDED FURTHER THAT</u> THE FOREGOING GENERAL RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE RELEASORS RELATING TO, ARISING UNDER OR AS PROVIDED IN:  (1) THE PLAN OR THE PLAN SUPPORT STIPULATION, OR ANY AGREEMENTS OR UNDERTAKINGS ARISING THEREUNDER, ENTERED INTO PURSUANT TO, OR RELATING TO THE FOREGOING; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, THE PLAN SUPPORT STIPULATION, OR RELATED DOCUMENTS (INCLUDING THE TREATMENT OF CLAIMS HEREUNDER).

D.    Exculpations

The Plan Proponents, the Secured Lender Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees, the Litigation Trustee Releasees, and the Broker and each of their professionals, consultants, representatives, employees, officers, directors, managers and agents, and each of their successors and assigns, shall neither have, nor incur, any liability to any person or entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation of the Plan Support Stipulation or the Plan, including but not limited to the marketing of and sales process relating to the Property Sale Transaction, the Stapled Financing (including the negotiation and implementation of the Stapled Financing Documents), the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor; provided that the foregoing "Exculpation" shall have no effect on the liability of any of the Parties that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct or limit the liability of any professional to its client pursuant to DR 6-102 of the Code of Professional Responsibility; provided, further, that each of the foregoing Entities shall

be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan Support Stipulation or the Plan or any other related document, instrument, or agreement. Notwithstanding the foregoing, nothing set forth above shall operate to limit or excuse compliance by any Entity with any of their respective obligations under the Plan Support Stipulation or the Plan or otherwise or to modify the effect or consequence of any such failure to comply with such obligations.

The exculpation of the Secured Lender Releasees shall survive, among other things, the termination of the Plan Support Stipulation in accordance with the terms thereof, the Property Sale Transaction, any sale or transfer in whole or in part of the Allowed Secured Lender Secured Claim, the Allowed Secured Lender Administrative Claim, the Exit Facility and the Secured Lender's Claims thereunder, the Loan, the Loan Documents, the Stapled Financing or the Stapled Financing Documents.

Nothing contained in the Plan Support Stipulation, the Plan or the Confirmation Order shall be deemed to be an assumption by the Plan Administrator, the Secured Lender Releasees, the Chief Restructuring Officer, the Litigation Trustee Releasees or the Broker of any of the liabilities, obligations, or duties of the Debtor or the Estate and shall not be deemed to be or contain a covenant or agreement by any of the foregoing to assume or accept any such liability, obligation, or duty. Any successor Chief Restructuring Officer or Plan Administrator may accept and rely upon any accounting made by or on behalf of any predecessor Chief Restructuring Officer or Plan Administrator hereunder, and any statement or representation made as to the assets comprising the Estate or as to any other fact bearing upon the prior administration of the Estate, so long as it has a good faith basis to do so. The Chief Restructuring Officer and Plan Administrator shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. The Chief Restructuring Officer and Plan Administrator or any successor to the Chief Restructuring Officer or the Plan Administrator shall not be liable for any act or omission of any predecessor Chief Restructuring Officer or Plan Administrator, as the case may be, nor have a duty to enforce any claims against any predecessor Chief Restructuring Officer or Plan Administrator on account of any such act or omission, unless directed to do so by the Secured Lender or the Bankruptcy Court.

E.     Indemnification

The Secured Lender Parties, Chief Restructuring Officer, the Plan Administrator and the Litigation Trustee and each of their professionals, consultants, representatives, employees, principals, officers, directors, managers and agents, and each of their successors and assigns shall be indemnified and held harmless by Debtor and the Estate, to the fullest extent permitted by law, solely from the Estate and the Trust Assets, and any proceeds thereof, including any Net Sales Proceeds or Net Litigation Recoveries, for any losses, claims, damages, liabilities, and expenses, including, without limitation, reasonable attorneys' fees, disbursements, and related expenses which such indemnified parties may incur or to which such indemnified parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of such indemnified parties on account of the acts or omissions in connection with any Exculpated Matter or any Released Matter; provided, however, that the Debtor and the Estate shall not be liable to indemnify any such indemnified party for any act or

omission that has been determined by a Final Order as constituting gross negligence or willful misconduct. Notwithstanding any provision herein to the contrary, such indemnified parties shall be entitled to obtain advances from the Estate to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of any such indemnified party in its capacity as such; provided, however, that the Entities indemnified pursuant to this Article receiving such advances shall repay the amounts so advanced upon the entry of a Final Order finding that such indemnified parties were not entitled to any indemnity under the provisions of this Article.

The indemnification of the Secured Lender, Chief Restructuring Officer and the Plan Administrator shall survive any sale or transfer in whole or in part of the Allowed Secured Lender Secured Claim, the Allowed Secured Lender Administrative Claim, the Stapled Financing or the Stapled Financing Loan Documents.

F.    Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES, INCLUDING ANY EASEMENT CLAIMS OR EASEMENT RIGHTS, THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO THE GENERAL RELEASE PURSUANT TO ARTICLE VIII.C OF THE PLAN, (3) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.D; OR (4) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTOR, THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCRING OFFICER, THE PLAN ADMINISTRATOR RELEASEES, THE LITIGATION TRUSTEE RELEASEES, THE PROPERTY, OR ANY OTHER ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR, THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR RELEASEES, THE LITIGATION TRUSTEE RELEASES, THE PROPERTY, OR ANY OTHER ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR, THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR RELEASEES, THE LITIGATION TRUSTEE RELEASEES, OR ANY OTHER ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (C) CREATING, PERFECTING OR

ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND, INCLUDING ANY EASEMENT RIGHT, AGAINST THE DEBTOR, THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR RELEASEES, THE LITIGATION TRUSTEE RELEASES, THE PROPERTY, OR ANY OTHER ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY, THE PLAN ADMINISTRATOR RELEASEES, THE ESTATE, THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR RELEASEES, THE LITIGATION TRUSTEE RELEASEES, OR ANY OTHER ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR, THE SECURED LENDER RELEASEES, THE PLAN ADMINISTRATOR RELEASEES, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR, THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCTRUING OFFICER, THE PLAN ADMINISTRATOR RELEASEES, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF, SUBROGATION, OR RECOUPMENT ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO SECTION 553 OF THE BANKRUPTCY CODE OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR, THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR RELEASEES, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR, THE SECURED LENDER RELEASEES, THE CHIEF RESTRUCTURING OFFICER, THE PLAN ADMINISTRATOR RELEASEES, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; PROVIDED THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; PROVIDED FURTHER THAT NOTHING CONTAINED HEREIN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW. NOTWITHSTANDING THE FOREGOING, NOTHING SHALL PREVENT, LIMIT OR OTHERWISE IMPAIR THE RIGHT OF ANY ENTITY, WITH RESPECT TO ANY MATTER THAT IS (A) NOT RELEASED BY THE PLAN OR (B) WITH RESPECT TO A MATTER SUBJECT TO POTENTIAL FUTURE RELEASE FOR

WHICH ALL CONDITIONS PRECEDENT TO THE EFFECTIVENESS OF SUCH RELEASE SHALL NOT HAVE YET OCCURRED.

G.      Setoffs and Recoupments

Except as otherwise provided herein, the Plan Administrator, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off or recoup against any Allowed Claim (other than the Allowed Secured Lender Secured Claim, the Allowed Secured Lender Administrative Claim or Claims arising under or relating to the Exit Facility) or Allowed Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Allowed Interest (before any distribution is made on account of such Allowed Claim or Allowed Interest), any Claims, rights, and Causes of Action of any nature that such Debtor may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Debtor of any such Claims, rights, and Causes of Action that the Debtor may possess against such Holder.

## ARTICLE IX.
### CONDITIONS PRECEDENT

A.      Condition Precedent to Confirmation of the Plan

It shall be a condition precedent to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C:

1.      The Disclosure Statement Approval Order, the Confirmation Order, the Stapled Financing Documents (if applicable) and the Plan Supplement, along with any amendments, modifications, or supplements to any of the foregoing, shall be acceptable in all respects to the Secured Lender in its sole and absolute discretion;

2.      The Bankruptcy Court shall have entered the Disclosure Statement Approval Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Disclosure Statement Approval Order shall not be stayed and shall be effective immediately upon their respective entry;

3.      The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

4.     The Confirmation Date shall have occurred on or before the date specified for Confirmation of the Plan in the Plan Support Stipulation (as such date may be extended or waived by the Secured Lender in accordance with the terms of the Plan Support Stipulation); and

5.     All governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

B.     Conditions Precedent to the Effective Date of the Plan

It shall be a condition precedent to the occurrence of the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C:

1.     The Confirmation Date shall have occurred;

2.     The Confirmation Order shall not be subject to any stay;

3.     The Property Sale Transaction shall have closed on or before the date specified for such closing in the Plan Support Stipulation (as such date may be extended or waived by the Secured Lender in accordance with the terms of the Plan Support Stipulation); and

4.     The Secured Lender and the Plan Administrator shall have designated a Business Day as the Effective Date.

C.     Waiver of Conditions

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article IX may be waived only by consent of the Secured Lender, which consent may be withheld by the Secured Lender in its absolute and sole discretion.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.     Modification and Amendments

Subject to the limitations contained herein and in the Plan Support Stipulation, the Plan Proponents reserve the right to modify the Plan as to immaterial terms and seek Confirmation consistent with the Bankruptcy Code and the Plan Support Stipulation and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth

in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and in the Plan Support Stipulation, the Plan Proponents expressly reserve the right to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

B.    Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    Revocation or Withdrawal of the Plan

Subject to the limitations of the Plan Support Stipulation, the Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date or the Effective Date. If the Plan Proponents revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or, except as otherwise expressly provided in the Plan Support Stipulation, undertaking of any sort by the Secured Lender, the Debtor or any other Entity; and (d) the Secured Lender may take such action, including but not limited to scheduling a sale of Property pursuant to Section 363 of the Bankruptcy Code, as contemplated or permitted by the Plan Support Stipulation. The foregoing shall not operate to modify, waive or limit the terms of the Plan Support Stipulation.

## ARTICLE XI.
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.    Except as otherwise provided in the Plan or in the Plan Support Stipulation, Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for

payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to:  (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Obligations pursuant to Section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Plan Administrator amending, modifying, or supplementing, after the Effective Date, pursuant to Article V.A, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and the Plan Support Stipulation and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Support Stipulation or the Disclosure Statement;

8.      Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      Resolve any Case, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or the Plan Support Stipulation or any Entity's obligations incurred in connection with the Plan or the Plan Support Stipulation;

10.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation or enforcement of the Plan;

11.     Resolve any Case, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other

provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     Resolve any Case, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.G.1;

13.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     Determine any other matters that may arise in connection with or relate to the Plan Support Stipulation, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.     Determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

18.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan Support Stipulation, the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.     Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

20.     Hear and determine matters concerning Section 1145 of the Bankruptcy Code;

21.     Hear and determine all disputes involving the existence, nature, or scope of the Releases, the Exculpations, the Indemnities and the Injunctions;

22.     Enforce all orders previously entered by the Bankruptcy Court;

23.     To resolve any disputes arising under the Stalking Horse APA, APA or the Bid Procedures;

24.     Enter an order concluding or closing the Chapter 11 Case; and

25.     Enforce the Releases, the Exculpations, the Indemnities and the Injunctions, as set forth in Article VIII.

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    Immediate Binding Effect

Subject to Article IX.B and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Estate, the other Debtor Parties, the Plan Administrator, the Guarantor and any and all Holders of Claims or Interests against or in the Debtor (including any Holders of Easement Claims or Easement Rights), regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in such plan, each Entity acquiring property under such plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. All Claims and Interests shall be as fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

B.    Additional Documents

On or before the Effective Date, the Plan Proponents may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    Payment of Statutory Fees

All fees payable pursuant to Section 1930(a) of the Judicial Code shall be paid by the Debtor (prior to or on the Effective Date) or the Estate (after the Effective Date) for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

D.    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order with respect to the Plan. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Secured Lender or the Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Secured Lender or the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor,

administrator, successor, or assign, affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    Certain Rights of the Secured Lender

The Secured Lender is and shall be a party in interest for all purposes in connection with the Plan and the transactions contemplated by the Plan (including the Property Sale Transaction and any adversary proceeding or contested matter relating to or brought under the Plan or with respect to a Cause of Action) and shall have full standing and the right to be heard with respect thereto. Without limiting the foregoing, the Plan Administrator shall not make a Major Decision without the prior written consent of the Secured Lender, which consent may be withheld by the Secured Lender in its sole and absolute discretion. Notwithstanding the foregoing, the Plan Administrator may make a Major Decision without the prior written consent of the Secured Lender under emergency circumstances if, in the reasonable judgment of the Plan Administrator such decision is necessary to avoid irreparable harm to the Estate and there is insufficient time to attempt to obtain the Secured Lender's consent. In such circumstances, the Plan Administrator shall promptly provide notice to the Secured Lender of the Major Decision and of the basis or bases for the unilateral action. With regard to any decision that is not a Major Decision, the Plan Administrator shall consult with the Secured Lender with respect to such decision. Without limiting any of the foregoing, the Plan Administrator shall provide to the Secured Lender (a) periodic written reports, not less than quarterly, with respect to the resolution and estimation of Disputed Claims, contingent Claims and unliquidated Claims; (b) during the sale process, such information as the Secured Lender may request from time to time, including but not limited to the identity of any potential bidders and requests from such bidders for Stapled Financing; and (c) such other information as may be requested by or on behalf of the Secured Lender from time to time. The foregoing shall not operate or limit the obligations of the Plan Administrator to consult with and obtain the consent of the Secured Lender specifically provided for in the Plan or the Plan Administrator Engagement Letter.

G.    Service of Documents

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Secured Lender or the Plan Administrator shall be served on:

1.    if to the Secured Lender, to:

i.    If to the Secured Lender:

DOF IV Metroplex, LLC
c/o Torchlight Loan Services
475 Fifth Avenue
New York, NY 10169
Telephone:  (212) 808-3665
gmontalti@torchlightinvestors.com
Attn: Mr. Gianluca Montalti

with copies to:

Allegaert Berger & Vogel, LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 697-2400
Facsimile: (212) 571-0555
Attn: Lawrence P. Gottesman, Esq.
Email: lgottesman@abv.com

Kilpatrick Townsend & Stockton LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
Attention: Keith M. Brandofino, Esq
E-Mail: KBrandofino@kilpatricktownsend.com
  and
Attention: Colin Bernardino, Esq.
E-Mail: cbernardino@kilpatricktownsend.com

ii.   If to the Debtor or the Plan Administrator:

METROPLEX ON THE ATLANTIC, LLC
By Getzler Henrich & Associates, LLC,
Chief Restructuring Officer
Attn: Daniel Polsky
Mark Podgainy
295 Madison Avenue
20th Floor
New York, New York 10017
212-697-2400

with copies to:

Cullen and Dykman LLP
Attn: Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
100 Quentin Roosevelt Boulevard
Suite 402
Garden City, New York 11530
Telephone: (515) 296-9143
Email: bpollack@cullenanddykman.com

H.   Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any

injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      Entire Agreement

Except as otherwise indicated, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.  Notwithstanding the foregoing, the terms and conditions of the Plan Support Stipulation shall survive the occurrence of the Confirmation Date and of the Effective Date.

J.      Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. Respectfully submitted, as of the date first set forth above.

Dated: January 21, 2016

**[END OF TEXT; SIGNATURES CONTINUE ON NEXT PAGE]**

**DOF IV METROPLEX, LLC**, a Delaware limited
liability company

By: _____
    Name:
    Title: Authorized Signatory


METROPLEX ON THE ATLANTIC, LLC
By Getzler Henrich & Associates, LLC,
Chief Restructuring Officer

By:_____
Daniel Polsky
Mark Podgainy
295 Madison Avenue
20th Floor
New York, New York 10017
212-697-2400


**ELZBIETA MIELCZAREK**


  s/ Elzbieta Mielczarek_____
Elzbieta Mielczarek, Individually


**KEW GARDENS PROPERTY LLC**, a Delaware limited
liability company


By:   s/ Elzbieta Mielczarek_____
    Elzbieta Mielczarek
    Member