is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim against the Debtor, contingent Claim against the Debtor, or unliquidated Claim against the Debtor, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Plan Administrator may elect to pursue additional objections to the ultimate distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Plan Administrator or the Secured Lender may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim against the Debtor that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

3.    **Claims Filed After Bar Date.**

Any Claim filed after any applicable Bar Date shall, unless such Claim amends a Claim filed before the Bar Date or unless the Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Court.  Filed or Scheduled Claims may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.  A Claim may be

amended prior to the Effective Date only as agreed upon by the Plan Administrator and the

holder of such Claim, or as otherwise permitted by the Court, the Bankruptcy Rules or applicable

law. After the Effective Date, except as otherwise specifically set forth in the Plan, a Claim may

not be filed or amended without the authorization of the Court or consent of the Plan

Administrator.

4.    **Disallowance of Claims**

All Claims against or Interests in the Debtor held by any Entity from which property is

sought by the Plan Administrator under Section 542, 543, 550, or 553 of the Bankruptcy Code or

that the Plan Administrator alleges is a transferee of a transfer that is avoidable under Section

522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if

(1) the Entity, on the one hand, and the Plan Administrator on the other hand, agree or the

Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to

turnover any property or monies under any of the aforementioned Sections of the Bankruptcy

Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in

such agreement or Final Order.

5.    **Disputed Claims Reserve**

On the Effective Date (or as soon thereafter as is reasonably practicable), the Plan

Administrator shall deposit in the Disputed Claims Reserve the amount of Cash that would have

been distributed to the Holders of all Disputed Claims against the Debtor as if such Disputed

Claims had been Allowed on the Effective Date, with the amount of such Allowed Claims to be

determined, solely for the purposes of establishing reserves and for maximum distribution

purposes, to be the lesser of (a) the asserted amount of the Disputed Claim filed with the

Bankruptcy Court, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to Section

502(c) of the Bankruptcy Code, or (c) amount otherwise agreed by the Plan Administrator and the Holder of such Disputed Claim for reserve purposes. To the extent the amount of Cash deposited in the Disputed Claims Reserve on account of Disputed Claims against the Debtor exceeds the amount of Disputed Claims against the Debtor (as of the funding of the Disputed Claims Reserve) that later become Allowed, the excess shall be distributed in accordance with the Waterfall.

**6.      Withholding Taxes and Expenses of Distribution**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes, and the Plan Administrator shall be authorized to withhold distribution on such Claims until the requisite information is received.

**7.      Disputed Payment**

Notwithstanding anything to the contrary in the Plan, no distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by any such claimant, if at any time before an otherwise applicable distribution is issued, the Plan Administrator has taken action to recover on any causes of action or defenses against or with regard to the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such cause of action or defense is resolved by Final Order or agreement of the Plan Administrator.

Additionally, if any dispute arises as to the identity of a holder of an Allowed Claim who is entitled to receive any distribution, the Plan Administrator may, in lieu of making such distribution to such Person, reserve for such distribution until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

8.    **Setoffs and Recoupment**

Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Court, the Plan Administrator may, pursuant to applicable law, set off or recoup against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made and before any Distribution is made on account of such Claim), any and all of the claims, rights and causes of action of any nature that the Debtor or the Estate may hold against the holder of such Claim.  Notwithstanding the foregoing, there shall be no setoff against the Claims held by Secured Lender, which shall be Allowed without offset.

Neither the failure to affect such a setoff or recoupment, the allowance of any Claim hereunder, any other action or omission of the Plan Administrator, nor any provision of the Plan shall constitute a waiver or release by the Plan Administrator of any such claims, rights and causes of action that the Plan Administrator may possess against such holder.  To the extent the Plan Administrator fails to setoff or recoup against a creditor and seeks to collect a claim from such creditor after a distribution to such creditor pursuant to the Plan, the Plan Administrator, if successful in asserting such claim, shall be entitled to full recovery against such creditor.  The Plan Administrator may seek periodic Court approval for any such setoff or recoupment.

9.    **Interest on Claims.**

Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, post-petition and post-confirmation interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## V. MEANS OF IMPLEMENTATION OF THE PLAN; EFFECT OF CONFIRMATION

### A.    Funding of the Plan

The Secured Lender asserted that the value of the Property is $25 million pursuant to an appraisal performed on behalf of the Secured Lender by CBRE as of July 31, 2015. The proceeds of sale net of commissions and closing costs will first be used to repay the Exit Facility. Thereafter, the proceeds will be distributed to holders of Allowed Claims and Interests.

| Application of Estimated Proceeds | Distribution | Percentage Recovery |
|---|---|---|
| Secured Lender Administrative Claim | $293,973.52 (as of 10/31/15) | (100%) |
| Estimated U.S. Trustee Fees | $20,000 | (100%) |
| Estimated Professional Compensation Claims | $475,000 | (100 %) |
| Priority Tax Claims | $0 | (N/A) |
| Other Priority Claims | $0 | (N/A) |
| Other Secured Claims | $0 | (N/A) |
| Unliquidated and Disputed Easement Claims | $25,000 | (unknown |
| Disputed Easement Judgment | $25,000 | (unknown) |
| General Unsecured Claims | $50,000 | (unknown) |
| Punitive Damage Claim | $0 | (unknown) |
| Secured Lender Secured Claim | $37,734,103.11 (as of Petition Date) | (unknown) |

THE AMOUNTS CONTAINED IN THE FOREGOING TABLE REPRESENT ESTIMATES BASED ON A SALE PRICE OF $25,000,000.  IN THE EVENT THAT THE SALE PRICE IS LESS THAN $25,000,000, THE SECURED LENDER SECURED CLAIM

DISTRIBUTION WILL DECREASE.  TO THE EXTENT NET SALE PROCEEDS AND NET

LITIGATION RECOVERIES RESULT IN A DISTRIBUTION TO THE SECURED LENDER

WHICH EXCEEDS $27,500,000, DISTRIBUTIONS TO ALL CREDITORS WILL

INCREASE. ALTHOUGH THE DEBTOR BELIEVES THAT THE ESTIMATED

PERCENTAGE RECOVERIES ARE REASONABLE, NO REPRESENTATION CAN BE OR

IS BEING MADE WITH RESPECT TO WHETHER THE ESTIMATED PERCENTAGE

RECOVERIES SHOWN WILL BE REALIZED BY THE HOLDER OF AN ALLOWED

CLAIM IN A PARTICULAR CLASS.  THE ACTUAL RECOVERIES UNDER THE PLAN

WILL DEPEND UPON A VARIETY OF FACTORS INCLUDING, BUT NOT LIMITED TO,

THE AMOUNT RECEIVED FROM THE SALE OF THE PROPERTY.

**B.     Injunction**

**Except as otherwise provided in the Plan or the Confirmation Order, all entities**

**who have held, hold, or may hold claims, interests, causes of action, or liabilities, including**

**any Easement Claims or Easement Rights, that: (1) are subject to compromise and**

**settlement pursuant to the terms of the Plan; (2) have been released pursuant to the**

**General Release pursuant to Article VIII.C of the Plan, (3) are subject to exculpation**

**pursuant to Article VIII.D of the Plan; or (4) are otherwise stayed or terminated pursuant**

**to the terms of the Plan, are permanently enjoined and precluded, from and after the**

**Effective Date, from: (a) commencing or continuing in any manner any action or other**

**proceeding of any kind, including on account of any claims, interests, causes of actions, or**

**liabilities that have been compromised or settled against the Debtor, the Secured Lender**

**Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees, the**

**Litigation Trustee Releasees, the Property, or any other entity so released or exculpated (or**

the Property or estate of any entity, directly or indirectly, so released or exculpated) on account of or in connection with or with respect to any released, settled, compromised, or exculpated claims, interests, causes of action, or liabilities; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor, the Secured Lender Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees, the Litigation Trustee Releasees, the Property, or any other entity so released or exculpated (or the Property or Estate of the Debtor, the Secured Lender Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees, the Litigation Trustee Releasees, or any other entity so released or exculpated) on account of or in connection with or with respect to any such released, settled, compromised, or exculpated claims, interests, causes of action, or liabilities; (c) creating, perfecting or enforcing any lien, claim, or encumbrance of any kind, including any Easement Right, against the Debtor, the Secured Lender Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees, the Litigation Trustee Releasees, the Property, or any other entity so released or exculpated (or the Property, the Plan Administrator Releasees, the Estate, the Secured Lender Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees, the Litigation Trustee Releasees, or any other entity so released or exculpated) on account of or in connection with or with respect to any such released, settled, compromised, or exculpated claims, interests, causes of action, or liabilities; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor, the Secured Lender Releasees, the Chief Restructuring Officer , the Plan Administrator Releasees, or any entity so released or exculpated (or the Property or Estate of the Debtor, the Secured Lender Releasees, the Chief Restructuring

Officer, the Plan Administrator Releasees, or any entity so released or exculpated) on account of or in connection with or with respect to any such released, settled, compromised, or exculpated claims, interests, causes of action, or liabilities unless such holder has filed a motion requesting the right to perform such setoff, subrogation, or recoupment on or before the confirmation date, and notwithstanding any indication in a proof of claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Secured Lender Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees, or any entity so released or exculpated (or the Property or Estate of the Debtor, the Secured Lender Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees, or any entity so released or exculpated) on account of or in connection with or with respect to any such released, settled, compromised, or exculpated claims, interests, causes of action, or liabilities released, settled, or compromised pursuant to the Plan; provided that nothing contained herein shall preclude an entity from obtaining benefits directly and expressly provided to such entity pursuant to the terms of the Plan; provided further that nothing contained herein shall be construed to prevent any entity from defending against claims objections or collection actions whether by asserting a right of setoff or otherwise to the extent permitted by law.  Notwithstanding the foregoing, nothing shall prevent, limit or otherwise impair the right of any entity, with respect to any matter that is (a) not released by the Plan or (b) with respect to a matter subject to potential future release for which all conditions precedent to the effectiveness of such release shall not have yet occurred.

C.    Release of Secured Lender Releasees and the Chief Restructuring Officer by Debtor
       Party Releasors

Notwithstanding anything contained herein to the contrary, on the Effective Date

and effective as of such Effective Date, for the good and valuable consideration provided by

or on behalf of the Secured Lender Releasees and the Chief Restructuring Officer, the

adequacy of which is hereby confirmed, each of the Debtor Party Releasors, on behalf of

such Debtor Party Releasor and all those claiming by, through or on behalf of such Debtor

Party Releasor, to the maximum extent of applicable law, discharges and releases and shall

be deemed to have provided a full discharge and release to the Secured Lender Releasees,

the Chief Restructuring Officer and their respective property from any and all claims,

interests, obligations, debts, rights, suits, damages, remedies, causes of action, liabilities,

including all avoidance or other actions under sections 510, 544-49 and 724 of the

Bankruptcy Code and, to the extent related thereto, sections 542-43, 550 or 553 of the

Bankruptcy Code, or any  claims under the New York Debtor & Creditor Law or any

other similar or comparable provision under state law whatsoever (including any

derivative claims asserted on behalf of the Debtor or the Estate) whether known or

unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-

contingent, existing as of such effective date in law, equity or otherwise, whether for tort,

fraud, contract, violations of federal or state securities laws, or otherwise, arising from or

related in any way to the Debtor, the Estate, the Plan Administrator, the Litigation

Trustee, the Litigation Trust, the transactions contemplated by the Plan Support

Stipulation or the Plan (including the Property Sale Transaction), the Chapter 11 Case, the

subject matter of, or the transactions or events giving rise to, any Claim or Interest that is

treated in the Plan (including the allowance, disallowance or compromise thereof), the

business or contractual arrangements between any of the Debtor and any of the Secured

Lender Releasees and the Chief Restructuring Officer, the restructuring of claims and

interests prior to or in the Chapter 11 Case, the Receivership, the negotiation, formulation,

or preparation of the Plan Support Stipulation, the Plan, the Disclosure Statement, the

Plan Supplement, the Property Sale Transaction, the Stapled Financing or the Stapled

Financing Documents, the Exit Facility, or related agreements, instruments, or other

documents related to the Chapter 11 Case, upon any other act or omission, transaction,

agreement, event, or other occurrence taking place on or before such Effective Date,

including the selection and appointment of the Chief Restructuring Officer, the Plan

Administrator and the Receiver and those that any of the Releasors would have been

legally entitled to assert in their own right (whether individually or collectively) or that any

holder of a Claim or an Interest or other entity would have been legally entitled to assert on

behalf of any of the releasing parties; **provided that** in connection with the foregoing

general release, the validity, enforceability, priority and perfection, in all respects, of the

liens, claims, interests, mortgages, and encumbrances of the loan agreement or any of the

other loan documents or that otherwise secure the Allowed Secured Lender Secured Claim,

the Allowed Secured Lender Administrative Claim and the Exit Facility and of the Secured

Lender are hereby confirmed and adjudicated by the Bankruptcy Court; **provided further**

**that** the foregoing general release shall not operate to waive or release any claims, interests,

obligations, debts, rights, suits, damages, remedies, causes of action, and liabilities of the

Releasors:  (1) under the Plan or the Plan Support Stipulation, or any agreements or

undertakings arising thereunder, entered into pursuant to, or relating to the foregoing; or

(2) expressly set forth in and preserved by the Plan, the Plan Supplement, the Plan Support

Stipulation, or related documents (including the treatment of Claims hereunder).

Notwithstanding anything herein, any release and exculpation of the Receiver is

conditional upon the Receiver's agreement to release and exculpate the Debtor Parties as

and when provided for in Section V(F) below.

D.    Release of Secured Lender Releasees and Chief Restructuring Officer by the Plan
      Administrator and Litigation Trustee

Notwithstanding anything contained herein to the contrary, on the Effective Date

and effective as of such Effective Date, for the good and valuable consideration provided by

or on behalf of the Secured Lender Releasees and Chief Restructuring Officer, the

adequacy of which is hereby confirmed, the Plan Administrator and the Litigation Trustee,

on behalf of all those claiming by, through or on behalf of the Plan Administrator and/or

the Litigation Trustee, including the Estate and the Litigation Trust, to the maximum

extent of applicable law, discharges and releases and shall be deemed to have provided a

full discharge and release to each of the Secured Lender Releasees, the Chief Restructuring

Officer and their respective property from any and all claims, interests, obligations, debts,

rights, suits, damages, remedies, causes of action, liabilities, including all avoidance or

other actions under sections 510, 544-49 and 724 of the Bankruptcy Code and, to the extent

related thereto, sections 542-43, 550 or 553 of the Bankruptcy Code, or any  claims under

the New York Debtor & Creditor Law or any other similar or comparable provision under

state law whatsoever (including any derivative claims asserted on behalf of the Debtor or

the Estate), and any Easement Claims or Easement Rights, whether known or unknown,

foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing

as of such effective date in law, equity or otherwise, whether for tort, fraud, contract,

violations of federal or state securities laws, or otherwise, arising from or related in any

way to the Debtor, the Estate, the Plan Administrator, the Litigation Trustee, the Litigation

Trust, the transactions contemplated by the Plan Support Stipulation, the Plan (including

the Property Sale Transaction), the Chapter 11 Case, the subject matter of, or the

transactions or events giving rise to, any Claim or Interest that is treated in the Plan

(including the allowance, disallowance or compromise thereof), the business or contractual

arrangements between any of the Debtor or the Estate and any of the Secured Lender

Releasees or the Chief Restructuring Officer, the restructuring of claims and interests

prior to or in the Chapter 11 Case, the Receivership, the negotiation, formulation, or

preparation of the Plan Support Stipulation, the Plan, the Disclosure Statement, the Plan

Supplement, the Property Sale Transaction, the Stapled Financing or the Stapled

Financing Documents, the Exit Facility, or related agreements, instruments, or other

documents related to the Chapter 11 Case, upon any other act or omission, transaction,

agreement, event, or other occurrence taking place on or before such effective date,

including the selection and appointment of the Chief Restructuring Officer, Plan

Administrator and the Receiver and those that any of the Releasors would have been

legally entitled to assert in their own right (whether individually or collectively) or that any

holder of a claim or an interest or other entity would have been legally entitled to assert on

behalf of any of the releasing parties; <u>provided that</u> in connection with the foregoing

general release, the validity, enforceability, priority and perfection, in all respects, of the

liens, claims, interests, mortgages, and encumbrances of the loan agreement or any of the

other loan documents or that otherwise secure the Allowed Secured Lender Secured Claim,

the allowed Secured Lender Administrative Claim and the Exit Facility and of the Secured

Lender are hereby confirmed and adjudicated by the Bankruptcy Court; **provided further that** the foregoing general release shall not operate to waive or release any claims, interests, obligations, debts, rights, suits, damages, remedies, causes of action, and liabilities of the Releasors relating to, arising under or as provided in: (1) the Plan or the Plan Support Stipulation, or any agreements or undertakings arising thereunder, entered into pursuant to, or relating to the foregoing; or (2) expressly set forth in and preserved by the Plan, the Plan Supplement, the Plan Support Stipulation, or related documents (including the treatment of Claims hereunder).

E.    Release of Secured Lender Releasees, Chief Restructuring Officer, Plan Administrator Releasees and Litigation Trustee Releasees by Holders of Claims and Interests

Notwithstanding anything contained herein to the contrary, on the Effective Date and effective as of such Effective Date, for the good and valuable consideration provided by or on behalf of the Secured Lender Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees and the Litigation Trustee Releasees, the adequacy of which is hereby confirmed, each Holder of a Claim or Interest, including any Easement Claim or Easement Right, whether or not such Claim or Interest is allowed and whether or not such Holder of a Claim or Interest has voted to accept or reject the Plan, on behalf of Holder and all those claiming by, through or on behalf of Holder, to the maximum extent of applicable law, discharges and releases and shall be deemed to have provided a full discharge and release to each of the Secured Lender Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees and the Litigation Trustee Releasees and their respective property from any and all claims, interests, obligations, debts, rights, suits, damages, remedies, causes of action, liabilities, including all avoidance or other actions

under sections 510, 544-49 and 724 of the Bankruptcy Code and, to the extent related

thereto, sections 542-43, 550 or 553 of the Bankruptcy Code, or any claims under the New

York Debtor & Creditor Law or any other similar or comparable provision under state law

whatsoever (including any derivative claims asserted on behalf of the Debtor or the Estate),

and any Easement Claims or Easement Rights, whether known or unknown, foreseen or

unforeseen, liquidated or unliquidated, contingent or non-contingent, existing as of such

effective date in law, equity or otherwise, whether for tort, fraud, contract, violations of

federal or state securities laws, or otherwise, arising from or related in any way to the

Debtor, the Estate, the Plan Administrator, the transactions contemplated by the Plan

Support Stipulation, the Plan (including the Property Sale Transaction), the Chapter 11

Case, the subject matter of, or the transactions or events giving rise to, any Claim or

Interest that is treated in the Plan (including the allowance, disallowance or compromise

thereof), the business or contractual arrangements between any of the Debtor and any of

the Secured Lender Releasees and the Chief Restructuring Officer, the restructuring of

Claims and Interests prior to or in the Chapter 11 Case, the Receivership, the negotiation,

formulation, or preparation of the Plan Support Stipulation, the Plan, the Disclosure

Statement, the Plan Supplement, the Property Sale Transaction, the Stapled Financing or

the Stapled Financing Documents, the Exit Facility, or related agreements, instruments, or

other documents related to the Chapter 11 Case, upon any other act or omission,

transaction, agreement, event, or other occurrence taking place on or before such effective

date, including the selection and appointment of the Chief Restructuring Officer, Plan

Administrator and the Receiver and those that any of the Holders would have been legally

entitled to assert in their own right (whether individually or collectively) or that any other

Holder of a Claim or an Interest or other entity would have been legally entitled to assert on behalf of any of the foregoing releasing parties; **provided that** in connection with the foregoing general release, the validity, enforceability, priority and perfection, in all respects, of the liens, claims, interests, mortgages, and encumbrances of the loan agreement or any of the other loan documents or that otherwise secure the Allowed Secured Lender Secured Claim, the Allowed Secured Lender Administrative Claim and the Exit Facility and of the Secured Lender are hereby confirmed and adjudicated by the Bankruptcy Court; **provided further that** the foregoing general release shall not operate to waive or release any claims, interests, obligations, debts, rights, suits, damages, remedies, causes of action, and liabilities of the Holders of Claims and Interests relating to, arising under or as provided in:  (1) the Plan or the Plan Support Stipulation, or any agreements or undertakings arising thereunder, entered into pursuant to, or relating to the foregoing; or (2) expressly set forth in and preserved by the Plan, the Plan Supplement, the Plan Support Stipulation, or related documents (including the treatment of claims hereunder).

Notwithstanding the foregoing, Holders of Claims against the Debtor (other than any Debtor Releasor or Debtor Releasee) may elect to opt out of the foregoing general release by indicating as such on the Ballot submitted by each Holder.  Any Holder who fails to opt out shall be deemed to have consented to the following general release and shall be subject and bound by such general release.

F.      **Release of Debtor Party Releasees by Secured Lender Parties, the Chief Restructuring Officer, Plan Administrator and Litigation Trustee**

Notwithstanding anything contained herein to the contrary, on the Effective Date and effective as of such Effective Date, for the good and valuable consideration provided by or on behalf of the Debtor Party Releasees, the adequacy of which is hereby confirmed,

each of the Secured Lender Parties, the Chief Restructuring Officer, Plan Administrator

and Litigation Trustee and all those claiming by, through or on behalf of such Secured

Lender Parties, the Chief Restructuring Officer, Plan Administrator and Litigation

Trustee, to the maximum extent of applicable law, discharges and releases and shall be

deemed to have provided a full discharge and release to each of the Debtor Party Releasees

and their respective property from any and all claims, interests, obligations, debts, rights,

suits, damages, remedies, causes of action, liabilities, including all avoidance or other

actions under sections 510, 544-49 and 724 of the Bankruptcy Code and, to the extent

related thereto, sections 542-43, 550 or 553 of the Bankruptcy Code, or any  claims under

the New York Debtor & Creditor Law or any other similar or comparable provision under

state law whatsoever (including any derivative claims asserted on behalf of the Debtor or

the Estate) whether known or unknown, foreseen or unforeseen, liquidated or

unliquidated, contingent or non-contingent, existing as of such effective date in law, equity

or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws,

or otherwise, arising from or related in any way to the Debtor, the Estate, the Plan

Administrator, the transactions contemplated by the Plan Support Stipulation, the Plan

(including the Property Sale Transaction), the Chapter 11 Case, the subject matter of, or

the transactions or events giving rise to, any Claim or Interest that is treated in the Plan

(including the allowance, disallowance or compromise thereof), the business or contractual

arrangements between any of the Debtor Party Releasees and any of the Secured Lender

Releasees, the Chief Restructuring Officer, Plan Administrator Releasees and Litigation

Trustee Releasees, the restructuring of Claims and Interests prior to or in the Chapter 11

Case, the Receivership, the negotiation, formulation, or preparation of the Plan Support

Stipulation, the Plan, the Disclosure Statement, the Plan Supplement, the Property Sale

Transaction, the Stapled Financing or the Stapled Financing Documents, the Exit Facility,

or related agreements, instruments, or other documents related to the Chapter 11 Case,

upon any other act or omission, transaction, agreement, event, or other occurrence taking

place on or before such effective date, including the selection and appointment of the Chief

Restructuring Officer, Plan Administrator and the Receiver and those that any of the

Releasors would have been legally entitled to assert in their own right (whether

individually or collectively) or that any holder of a claim or an interest or other entity

would have been legally entitled to assert on behalf of any of the releasing parties; **provided**

**that** in connection with the foregoing general release, the validity, enforceability, priority

and perfection, in all respects, of the liens, claims, interests, mortgages, and encumbrances

of the loan agreement or any of the other loan documents or that otherwise secure the

Allowed Secured Lender Secured Claim, the Allowed Secured Lender Administrative

Claim and the Exit Facility and of the Secured Lender are hereby confirmed and

adjudicated by the Bankruptcy Court; **provided further that** the foregoing general release

shall not operate to waive or release any claims, interests, obligations, debts, rights, suits,

damages, remedies, causes of action, and liabilities of the Releasors relating to, arising

under or as provided in:  (1) the Plan or the Plan Support Stipulation, or any agreements

or undertakings arising thereunder, entered into pursuant to, or relating to the foregoing;

or (2) expressly set forth in and preserved by the Plan, the Plan Supplement, the Plan

Support Stipulation, or related documents (including the treatment of claims hereunder).

G.    **Discharge**

The Debtor is not entitled to, and will not receive, a discharge since the Plan is a liquidating plan and the Debtor will not be engaging in business after consummation of the Plan.

H.    **Exculpation**

The Plan Proponents, the Secured Lender Releasees, the Chief Restructuring Officer, the Plan Administrator Releasees, the Litigation Trustee Releasees, and the Broker and each of their professionals, consultants, representatives, employees, officers, directors, managers and agents, and each of their successors and assigns, shall neither have, nor incur, any liability (i) to any person or entity for any postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation of the Plan Support Stipulation or the Plan, including but not limited to the marketing of and sales process relating to the Property Sale Transaction, the Stapled Financing (including the negotiation and implementation of the Stapled Financing Documents), the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor and (ii) to the Debtor Parties for any of the foregoing matters set forth in (i) or for any act taken or omitted to be taken in connection with or related to the Foreclosures, the Appeals, the Receiver or the Receivership; _provided that_ the foregoing "Exculpation" shall have no effect on the liability of any of the parties that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct or

limit the liability of any professional to its client pursuant to DR 6-102 of the Code of Professional Responsibility; provided, further, that each of the foregoing entities shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan Support Stipulation or the Plan or any other related document, instrument, or agreement. Notwithstanding the foregoing, nothing set forth above shall operate to limit or excuse compliance by any entity with any of their respective obligations under the Plan Support Stipulation or the Plan or otherwise or to modify the effect or consequence of any such failure to comply with such obligations.

The exculpation of the Secured Lender Releasees shall survive, among other things, the termination of the Plan Support Stipulation in accordance with the terms thereof, the Property Sale Transaction, any sale or transfer in whole or in part of the Allowed Secured Lender Secured Claim, the Allowed Secured Lender Administrative Claim, the Exit Facility and the Secured Lender's claims thereunder, the Loan, the Loan Documents, the Stapled Financing or the Stapled Financing Documents.

Nothing contained in the Plan Support Stipulation, the Plan or the Confirmation Order shall be deemed to be an assumption by the Plan Administrator, the Secured Lender Releasees, the Chief Restructuring Officer, the Litigation Trustee Releasees or the Broker of any of the liabilities, obligations, or duties of the Debtor or the Estate and shall not be deemed to be or contain a covenant or agreement by any of the foregoing to assume or accept any such liability, obligation, or duty. Any successor Chief Restructuring Officer or Plan Administrator may accept and rely upon any accounting made by or on behalf of any predecessor Chief Restructuring Officer or Plan Administrator hereunder, and any statement or representation made as to the assets comprising the Estate or as to any other

fact bearing upon the prior administration of the Estate, so long as it has a good faith basis to do so. The Chief Restructuring Officer and Plan Administrator shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. The Chief Restructuring Officer and Plan Administrator or any successor to the Chief Restructuring Officer and Plan Administrator shall not be liable for any act or omission of any predecessor Chief Restructuring Officer or Plan Administrator, as the case may be, nor have a duty to enforce any claims against any predecessor Chief Restructuring Officer or Plan Administrator on account of any such act or omission, unless directed to do so by the Secured Lender or the Bankruptcy Court.

I.    **Indemnification**

The Secured Lender Parties, the Chief Restructuring Officer, the Plan Administrator and the Litigation Trustee and each of their professionals, consultants, representatives, employees, principals, officers, directors, managers and agents, and each of their successors and assigns shall be indemnified and held harmless by Debtor and the Estate, to the fullest extent permitted by law, solely from the Estate and the Trust Assets, and any proceeds thereof, including any Net Sales Proceeds or Net Litigation Recoveries, for any losses, claims, damages, liabilities, and expenses, including, without limitation, reasonable attorneys' fees, disbursements, and related expenses which such indemnified parties may incur or to which such indemnified parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of such indemnified parties on account of the acts or omissions in connection with any Exculpated Matter or any Released Matter; provided, however, that the Debtor and the

Estate shall not be liable to indemnify any such indemnified party for any act or omission that has been determined by a Final Order as constituting gross negligence or willful misconduct.  Notwithstanding any provision herein to the contrary, such indemnified parties shall be entitled to obtain advances from the Estate to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of any such indemnified party in its capacity as such; provided, however, that the entities indemnified pursuant to this Article receiving such advances shall repay the amounts so advanced upon the entry of a Final Order finding that such indemnified parties were not entitled to any indemnity under the provisions of this Article.

The indemnification of the Secured Lender, the Chief Restructuring Officer, the Plan Administrator and Litigation Trustee shall survive any sale or transfer in whole or in part of the Allowed Secured Lender Secured  Claim, the Allowed Secured Lender Administrative Claim, the Stapled Financing or the Stapled Financing Loan Documents.

**J.**     **Division Place Collateral**

As set forth above, Kew, an entity owned by the Debtor's principal, granted the Secured Lender a Collateral Mortgage in the Division Place Collateral.  Pursuant to the Plan Support Stipulation, in the event that the Secured Lender receives Net Sales Proceeds and Net Litigation Recoveries pursuant to the Waterfall in respect of the Allowed Secured Lender Secured Claim in an amount equal to or greater than $27,500,000.00, then the Secured Lender will, at no expense to the Secured Lender, release its mortgage against the Division Place Collateral, provided that Kew, Kew's equity holder(s) and any other Insiders (determined as if Kew were a debtor in a case under the Bankruptcy Code) of Kew (collectively, the "Kew Parties") delivers to the

Secured Lender a release, exculpation and covenant not to sue in form and substance acceptable to the Secured Lender in its sole and absolute discretion.

In the event that the Secured Lender receives Net Sales Proceeds and Net Litigation Recoveries pursuant to the Waterfall in respect of the Allowed Secured Lender Secured Claim in an amount less than $27,500,000.00, then the Kew Parties will, at the election of the Secured Lender, either consent to and cooperate with a "friendly" foreclosure of the Division Place Collateral or transfer the Division Place Collateral to the Secured Lender or its designee/nominee pursuant to a deed in lieu transaction. In either case, the Kew Parties shall deliver to the Secured Lender a release, exculpation and covenant not to sue in form and substance acceptable to the Secured Lender.

The Kew Parties shall enter in an agreement with respect to the foregoing in form and substance acceptable to the Secured Lender.

## K.    Post-Confirmation Management

Subsequent to the Confirmation Date of the Plan, the Plan Administrator and/or the Litigation Trustee will continue to perform their services on behalf of the Debtor's estate as set forth herein, the Litigation Trust and/or the Plan Support Stipulation.  No Insiders of the Debtor shall be in management subsequent to Confirmation of the Plan.

## L.    Post-Confirmation Jurisdiction of the Court

Notwithstanding confirmation of the Plan or the occurrence of the Effective Date, the Court will retain such jurisdiction as is legally permissible, including, without limitation, for the following purposes:

1.      To determine the allowability, classification, or priority of Claims upon objection by the Debtor or the Plan Administrator, and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances;

2.      To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Case on or before the Effective Date with respect to any Person;

3.      To protect the property of the Estate from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning liens, security interest or encumbrances on any property of the Estate;

4.      To determine any and all applications for allowance of Professional Compensation Claims;

5.      To determine any Priority Tax Claims, Other Priority Claims, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

6.      To determine any dispute relating the sale of the Property, bidding procedures, and confirmation of the sale and/or any other matter that in any way relates to the foregoing;

7.      To determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to the Plan;

8.      To determine all Litigation Claims, applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Case, including any remands;

9.      To enter a Final Order closing the Chapter 11 Case;

10.     To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purposes;

11.     To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the fullest extent authorized by the Bankruptcy Code;

12.     To determine any tax liability pursuant to section 505 of the Bankruptcy Code;

13.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

14.     To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan, and the making of distributions thereunder;

15.     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, any Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

16.     To resolve any dispute or matter arising under or in connection with any order of the Court, whether entered in the Chapter 11 Case or after the Confirmation Date;

17.     To resolve any disputes concerning any release of a Person hereunder whether or not such Person is a Debtor or the injunction against acts, employment of process or actions against such Person;

18.     To approve any distributions, or objections thereto, under the Plan;

19.     To approve any Claims settlement entered into or offset exercised by the Debtor or the Plan Administrator; and

20.     To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order, or as may be authorized under provisions of the Bankruptcy Code.

## VI.  CONFIRMATION OF THE PLAN

### A.     Introduction

The Bankruptcy Code requires the Bankruptcy Court to determine whether a plan of reorganization complies with the technical requirements of chapter 11 of the Bankruptcy Code. It further requires that a plan proponent's disclosures concerning such plan have been adequate and have included information concerning all payments made or promised in connection with the plan.

To confirm the Plan, the Court must find that all of these and certain other requirements have been met.  Thus, even if the requisite vote is achieved for each Class of impaired Claims, the Court must make independent findings respecting the Plan's conformity with the requirements of the Bankruptcy Code before it may confirm the Plan.  Some of these statutory requirements are discussed below.

### B.     Conditions to Confirmation

It shall be a condition precedent to Confirmation of the Plan that the following conditions shall have been satisfied or waived by the Secured Lender in its sole and absolute discretion:

1.     The Disclosure Statement Approval Order, the Confirmation Order, the Stapled Financing Documents (if applicable) and the Plan Supplement, along with any

amendments, modifications, or supplements to any of the foregoing, shall be acceptable in all respects to the Secured Lender in its sole and absolute discretion;

2.     The Bankruptcy Court shall have entered the Disclosure Statement Approval Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Disclosure Statement Approval Order shall not be stayed and shall be effective immediately upon their respective entry;

3.     The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

4.     The Confirmation Date shall have occurred on or before the date specified for Confirmation of the Plan in the Plan Support Stipulation (as such date may be extended or waived by the Secured Lender in accordance with the terms of the Plan Support Stipulation); and

5.     All governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent

authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

**C.    Conditions to the Effective Date**

It shall be a condition precedent to the occurrence of the Effective Date of the Plan that the following conditions shall have been satisfied or waived by the Secured Lender in its sole and absolute discretion:

1.    The Confirmation Date shall have occurred;

2.    The Confirmation Order shall not be subject to any stay;

3.    The Property Sale Transaction shall have closed on or before the date specified for such closing in the Plan Support Stipulation (as such date may be extended or waived by the Secured Lender in accordance with the terms of the Plan Support Stipulation); and

4.    The Secured Lender and the Plan Administrator shall have designated a Business Day as the Effective Date.

**D.    Voting Procedures and Standards**

Holders of Claims in Classes that are "impaired" under the Plan (but not deemed to reject the Plan by virtue of receiving no distributions thereunder) will receive a Ballot with this Disclosure Statement for the acceptance or rejection of the Plan.  Any Claim or Interest whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in section 1124 of the Bankruptcy Code is considered "impaired."  Instructions on how to complete a Ballot and the deadline for voting on the Plan are contained in the solicitation materials accompanying this Disclosure Statement and the Plan.

The following procedures for allowance of Claims for purposes of voting on the Plan shall apply to votes upon the Plan:

(a)    <u>Disputed Filed Claims</u>.  With regard to a Claim that is the subject of an objection filed at least twenty (20) days prior to the Ballot Deadline, such Claim will be disallowed provisionally for voting purposes, except to the extent and in the manner that (i) the Debtor or the Plan Administrator, as the case may be, agrees that the Claim should be allowed for voting purposes in its objection to such Claim; or (ii) such Claim is allowed temporarily for voting purposes in accordance with Bankruptcy Rule 3018.

(b)    <u>Claims Estimated for Voting Purposes.</u>  With respect to a Claim that has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, the amount and classification of such Claim will be that set by the Bankruptcy Court.

(c)    <u>Wholly Unliquidated Claims</u>.  A Claim recorded in the Schedules or in the Clerk's records as wholly unliquidated, contingent and/or undetermined will be accorded one vote, valued at $10.00, for the purposes of section 1126(c) of the Bankruptcy Code, unless the Claim is disputed as set forth in (a) above.  This provision shall apply to Allowed Unliquidated and Disputed Easement Claims, each of which, as provided in Section IV(C)(7) above, shall be Allowed in the amount of $10.00 for voting purposes only.

(d)    <u>Late Claims</u>.  With respect to a Claim as to which a proof of claim has not been timely filed (i.e., was filed after the Bar Date), the voting amount of such Claim (subject to any applicable limitations set forth below) will be equal to the amount listed, if any, in respect of such Claim in the Schedules, to the extent such Claim is not listed as contingent, unliquidated, or disputed, unless the Claim is disputed as set forth in (a) above.  If such Claim is either not listed

in the Schedules, or is listed as contingent, unliquidated or disputed, then the Claim respecting such proof of claim will be disallowed provisionally for voting purposes.

    (e)    Duplicate Claim.  A creditor will not be entitled to vote its Claim to the extent such Claim duplicates or has been superseded by another Claim of such creditor.

    (f)    Undisputed Scheduled Claims.  With respect to a Claim that appears on the Schedules as undisputed, noncontingent and liquidated, and as to which no objection has been filed at least twenty (20) days prior to the Ballot Deadline, the amount and classification of such Claim shall be that specified in the Schedules unless superseded by an undisputed proof of claim.

    (g)    Court Determined Claims.  With respect to a Claim for which an order has been entered reducing, reclassifying or allowing, the amount and classification of the Claim shall be that specified in such order.

The Ballots of creditors will be tabulated in accordance with the following procedures:

    (i)    For the purpose of voting on the Plan, the Balloting Agent will be deemed to be in constructive receipt of any Ballot timely delivered to the address set forth above as designated for the receipt of Ballots cast on the Plan;

    (ii)    Any Ballot received by the Balloting Agent after the Ballot Deadline shall not be counted;

    (iii)    Pursuant to Bankruptcy Rule 3018(a), whenever a holder of a Claim submits more than one Ballot voting the same Claim prior to the Ballot Deadline, the last such Ballot sent and received shall count unless such holder has sufficient cause within the meaning of Bankruptcy Rule 3018(a) to submit, or the Debtor consents to the submission of, a superseding Ballot;

(iv)    If a Ballot does not include a Claim amount, the Ballot shall be deemed filed in the amount of a filed Claim, and if no Claim has been filed, in the amount of the Claim as specified in the Schedules, as long as the Claim is listed in the Schedules as undisputed, non-contingent or liquidated; otherwise, the Ballot shall not be counted.

(v)    If a holder of a Claim casts simultaneous duplicative Ballots voted inconsistently, then such Ballots shall not be counted;

(vi)    The authority of the signatory of each Ballot to complete and execute the Ballot shall be presumed;

(vii)    Any Ballot that is not signed shall not be counted;

(viii)    Any Ballot received by the Balloting Agent by electronic communication (i.e. email) shall not be counted but signed Ballots received timely by the Balloting Agent by facsimile will be counted;

(ix)    A holder of a Claim must vote all of its Claims within a particular Class under the Plan either to accept or reject the Plan and may not split its vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan, or that indicates both a vote for and against the Plan, will not be counted; and

(x)    Any Ballot that is timely received and executed but does not indicate whether the holder of the relevant Claim is voting for or against the Plan will be deemed a vote in favor of the Plan.

IF A BALLOT IS DAMAGED OR LOST OR IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, YOU MAY CONTACT THE BALLOTING AGENT.

A VOTE MAY BE DISREGARDED IF THE COURT DETERMINES, AFTER

NOTICE AND A HEARING, THAT SUCH ACCEPTANCE OR REJECTION WAS NOT

MADE OR SOLICITED OR PROCURED IN GOOD FAITH OR IN ACCORDANCE WITH

THE PROVISIONS OF THE BANKRUPTCY CODE.

Any impaired Class of Claims that fails to achieve the requisite "accepted" vote will be deemed to have rejected the Plan.

**E.      Acceptance**

The Bankruptcy Code defines acceptance of a plan by an impaired Class of Claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of Claims of that Class that actually vote.  Acceptance of the Plan need only be solicited from holders of Claims whose Claims are "impaired" and not deemed to have rejected the Plan.  Except in the context of a "cram down" (i.e., confirmation of a plan that has not been accepted by all impaired classes), as a condition to confirmation of the Plan, the Bankruptcy Code requires that, with certain exceptions, each Class of impaired Claims accepts the Plan.

The Plan is predicated on the Voting Classes voting to accept the Plan.  In the event the requisite vote is not obtained, the Plan Proponents have the right, assuming that at least one Class of impaired Claims has accepted the Plan, to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code.  Section 1129(b) permits confirmation of a plan notwithstanding rejection by one or more Classes of impaired Claims or impaired Interests if the Bankruptcy Court finds that the plan does not discriminate unfairly and is "fair and equitable" with respect to the rejecting class or classes.  This procedure is commonly referred to in bankruptcy parlance as "cram down."  If the Voting Classes vote to reject the Plan, the Plan Sponsor will seek a cram down of any such Class at the Confirmation Hearing.

**F.    Confirmation and Consummation**

At the Confirmation Hearing, the Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied with respect to the Plan. Section 1129(a) of the Bankruptcy Code requires that, among other things, for a plan to be confirmed:

- The plan complies with the applicable provisions of the Bankruptcy Code.

- The proponents of the plan have complied with the applicable provisions of the Bankruptcy Code.

- The plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made by the proponents under the plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

- The proponents have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in the plan with the debtor, or a successor to the debtor under the plan. The appointment to, or continuance in, such office of such individual, must be consistent with the interests of creditors and equity security holders and with public policy and the proponents must have disclosed the identity of any insider that the reorganized debtors will employ or retain, and the nature of any compensation for such insider.

- With respect to each class of impaired claims or interests, either each holder of a claim or interest of such class has accepted the plan, or will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated on such date under chapter 7 of the Bankruptcy Code.

- Each class of claims or interests has either accepted the plan or is not impaired under the plan.

- Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that allowed administrative expenses and priority claims (other than tax claims) will be paid in full on the effective date and that priority tax claims will receive on account of such claims deferred cash payments, over a period not exceeding five (5) years after the order for relief in a case, of a value, as of the effective date, equal to the allowed amount of such claim.

- If a class of claims is impaired, at least one (1) impaired class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim in such class.

- Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan (unless, as here, such liquidation or reorganization is proposed in the plan).

Subject to receiving the requisite votes in accordance with section 1129(a)(8) of the Bankruptcy Code and the "cram down" of Classes not receiving any distribution under the Plan, the Plan Proponents believe that (i) the Plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code, (ii) the Plan Proponents have complied or will have complied with all of the requirements of chapter 11, and (iii) the Plan has been proposed in good faith.

Set forth below is a more detailed summary of the relevant statutory confirmation requirements.

### 1.    Best Interests of Holders of Claims and Interests

The "best interests of creditors" test requires that the Bankruptcy Court find either that all members of each impaired class have accepted the plan or that each holder of an allowed claim or interest of each impaired class of claims or interests will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

This is a liquidating Plan, which is expressly permitted by the Bankruptcy Code. Creditors should also understand that the best interests tests is hypothetical in part, that is, a Court must conclude that there is a reasonable likelihood that if the case were converted to Chapter 7, creditors would receive less than under this Plan.

If this case was converted to Chapter 7, no creditors other than the Secured Lender would be paid from a sale of the Property, so all creditors are benefiting by this Plan as opposed to conversion to Chapter 7.  Moreover, even if creditors would receive a distribution in Chapter 7, it would result in even more administrative expenses potentially reducing recoveries to unsecured creditors.  A Chapter 7 trustee would be appointed who would be entitled to commissions on all monies disbursed by or turned over to him.  A trustee would also likely hire his own professionals who would engage in due diligence on the trustee's behalf.  These added costs would result in less of a distribution in Chapter 7 than proposed by the Plan.

### 2.    Financial Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation should not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor unless such liquidation or reorganization is proposed in the plan.  The Plan is a liquidating plan of reorganization.  Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

### 3.    Acceptance by Impaired Classes

A class is "impaired" under a plan unless, with respect to each claim or interest in such class, the plan:  (i) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of such claim or interest; or (ii) notwithstanding any contractual provision or applicable law which entitles the holder of such claim or interest to demand or receive accelerated payment on account of a default, cures any default, reinstates the original maturity of the obligation, compensates the holder for any damages incurred as a result of reasonable reliance on such provision or law and does not otherwise alter the legal, equitable or contractual rights of such holder based upon such claim or interest.  A class that is not impaired

under a plan of reorganization is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.

4.    **Cram Down**

**THE PLAN PROPONENTS RESERVE THE RIGHT TO CRAM DOWN THIS PLAN AGAINST NON-ACCEPTING CLASSES OF HOLDERS OF CLAIMS OR INTERESTS.**

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the Plan.  The "cram down" provisions of the Bankruptcy Code are set forth in section 1129(b) of the Bankruptcy Code.  Under the "cram down" provisions, upon the request of a plan proponent the Bankruptcy Court will confirm a plan despite the lack of acceptance by an impaired class or classes if the Bankruptcy Court finds that (i) the plan does not discriminate unfairly with respect to each non-accepting impaired class, (ii) the plan is fair and equitable with respect to each non-accepting impaired class, and (iii) at least one impaired class has accepted the plan.  These standards ensure that holders of junior interests, such as stockholders, cannot retain any interest in the debtor under a plan of reorganization that has been rejected by a senior class of impaired claims or interests unless such impaired claims or interests are paid in full.

As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law.  A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics receive or retain property of similar value under a plan.  By establishing separate Classes for the holders of each type of Claim and by treating each holder of a Claim in each

Class identically, the Plan has been structured so as to meet the "unfair discrimination" test of section 1129(b) of the Bankruptcy Code.

The Bankruptcy Code sets forth different standards for establishing that a plan is "fair and equitable" with respect to a dissenting class, depending on whether the class is comprised of secured or unsecured claims or interests.  In general, section 1129(b) of the Bankruptcy Code permits confirmation notwithstanding non-acceptance by an impaired class if that class and all junior classes are treated in accordance with the "absolute priority" rule, which requires that the dissenting class be paid in full before any junior class may receive anything under the plan.  In addition, case law surrounding section 1129(b) requires that no class senior to a non-accepting impaired class receives more than payment in full on its claims.

With respect to a class of unsecured claims that does not accept the Plan, either (i) each holder of an unsecured claim in the dissenting class receives or retains under such plan property of a value equal to the allowed amount of its unsecured claim, or (ii) the holders of claims or holders of interests that are junior to the claims of the holders of such unsecured claims will not receive or retain any property under the plan.  Additionally, the holders of claims that are senior to the claims of the dissenting class of unsecured claims receive no more than payment in full on their claims under the plan.  The Plan is designed to satisfy these standards.

If all the applicable requirements for confirmation of the Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except that one or more of Classes of impaired Claims or Interests have failed to accept the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code, the Plan Proponents will request that the Bankruptcy Court confirm the Plan over the dissenting votes of such Classes in accordance with section 1129(b) of the Bankruptcy Code.  The Plan Proponents believe that the Plan satisfies the "cram down" requirements of the

Bankruptcy Code. The Plan Proponents may seek confirmation of the Plan over the objection of dissenting Classes, as well as over the objection of individual holders of Claims or Interests who are members of an accepting Class.

> 5.    **Classification of Claims and Interests**

The Plan Proponents believe that the Plan meets the classification requirements of the Bankruptcy Code which require that a plan of reorganization place each claim or interest into a class with other claims or interests which are "substantially similar."

## VII.  CERTAIN RISK FACTORS TO BE CONSIDERED

**HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.**

**A.    Risk That Distributions Will Be Less Than Estimated**

The projected distributions and recoveries set forth in this Disclosure Statement are based on the Debtor's estimate of Allowed Claims and Cash available for distribution. There can be no assurance that the estimates will prove accurate.

**B.    Bankruptcy Risks**

> **a.  Objection to Classifications**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Plan Proponents believe that the classification of Claims

and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code.

However, there can be no assurance that the Court would reach the same conclusion.

### b.  Risk of Non-Confirmation of the Plan

Even if the Voting Classes accept the Plan, the Plan might not be confirmed by the Court.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires,

among other things, that the confirmation of a plan of reorganization is not likely to be followed

by the liquidation or the need for further financial reorganization unless, as here, such liquidation

is proposed in the plan, and that the value of distributions to dissenting creditors and equity

security holders not be less than the value of distributions such creditors and equity security

holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

The Plan Sponsor believes that the Plan satisfies all the requirements for confirmation of a

liquidating plan of reorganization under the Bankruptcy Code.  There can be no assurance,

however, that the Court would also conclude that the requirements for confirmation of the Plan

have been satisfied.

## VIII.  TAX CONSEQUENCES

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS OR INTERESTS MAY

VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER.  NO

RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE

SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO

OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED BY THE DEBTOR

WITH RESPECT THERETO.

NOTHING HEREIN CONSTITUTES TAX ADVICE OR A TAX OPINION

CONCERNING THE MATTERS DESCRIBED HEREIN.  ACCORDINGLY, EACH HOLDER

OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

## IX. CONCLUSION

The Plan Proponents believes that confirmation and implementation of the Plan will provide each creditor with a greater recovery than it would receive if the Debtor were to liquidate and distribute its assets under chapter 7, in which case there would likely be a delay in making distributions to creditors and creditors would likely receive no distribution. Thus, the Plan Proponents recommend confirmation and implementation of the Plan as the best possible outcome for creditors.

The Plan Proponents urge holders of impaired Claims to vote to accept the Plan and to evidence such acceptance by returning their Ballots so they will be received by the Ballot Deadline.

DATED: January 21, 2016

METROPLEX ON THE ATLANTIC, LLC
By Getzler Henrich & Associates, LLC,
Chief Restructuring Officer

By:_____
Daniel Polsky
Mark Podgainy
295 Madison Avenue
20th Floor
New York, New York 10017
212-697-2400

CULLEN AND DYKMAN LLP
Attorneys for the Debtor

By:  /s/ Bonnie Pollack
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700

81

DOF IV METROPLEX, LLC

By: _____

ALLEGAERT BERGER & VOGEL, LLP
Attorneys for the Secured Lender

By: _____
Lawrence P. Gottesman, Esq.
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550