**EXHIBIT A**

**EXECUTION COPY**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re:

Chapter 11

METROPLEX ON THE ATLANTIC, LLC

Case No. 15-42499-CEC

Debtor.

-----------------------------------------------------------x

**SETTLEMENT AND PLAN SUPPORT STIPULATION BY AND AMONG METROPLEX ON THE ATLANTIC, LLC, DOF IV METROPLEX, LLC, KEW GARDENS PROPERTY LLC, ELZBIETA MIELCZAREK AND JERZY SZYMCZYK**

**RECITALS**

WHEREAS, on May 28, 2015 (the "Petition Date"), Metroplex on the Atlantic, LLC (the "Debtor") commenced a chapter 11 case (the "Case") by filing a petition for voluntary relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court");

WHEREAS, the Debtor is a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code;

WHEREAS, Elzbieta Mielczarek ("Mielczarek") is the sole member of the Debtor;

WHEREAS, Mielczarek is the manager of Debtor and Jerzy Szymczyk ("Szymczyk"; collectively with Mielczarek, the "Principals") is the construction manager of Debtor;

WHEREAS, DOF IV Metroplex, LLC (the "Secured Lender") holds a mortgage loan (the "Secured Loan") on which the Debtor is an obligor in the original principal amount of $22,825,000.00, evidenced by a Consolidated, Amended and Restated Building Loan Note dated August 6, 2007 (the "Note") and certain other documents executed or delivered in connection with the Loan, and secured by, among other things, a Building Loan Mortgage Modification, Consolidation, Extension, Assignment of Leases and Rents (the "Mortgage"; collectively, with the Note and all other documents executed or delivered in connection with the Secured Loan, the "Loan Documents");

WHEREAS, the Loan is secured by, among other things, a duly perfected and nonavoidable first priority lien against and security interest in all real and personal property (collectively, the "Property") of the Debtor;

WHEREAS, pursuant to that certain Limited Guaranty of Payment, dated August 6, 2007 (the "Guaranty") executed and delivered by Mielczarek, Mielczarek guaranteed and is fully liable for the Secured Loan and all of the Debtor's obligations under and with respect to the Loan Documents;

WHEREAS, Kew Gardens Property LLC ("Kew"; collectively with the Debtor and the Principals, the "Debtor Parties"), is the owner of certain real property and related buildings, fixtures and personal property located at 15 Division Place, Brooklyn, New York, which serves as additional collateral for the Loan (the "Division Place Collateral") pursuant to a Collateral Mortgage made on or about December 9, 2009 (the "Collateral Mortgage");

WHEREAS, Kew is not and does not intend to become a debtor in a case under the Bankruptcy Code;

WHEREAS, Mielczarek is the sole member of Kew;

WHEREAS, except as provided above with respect to the Collateral Mortgage, Kew is not an obligor of or otherwise liable for any of the claims against the Debtor;

WHEREAS, as a result of Debtor's default on its obligations under the Loan Documents, The Community Preservation Corporation ("CPC"), Secured Lender's predecessor in interest, commenced an action in the Supreme Court of the State of New York, County of Queens (the "State Court"), captioned The Community Preservation Corporation v. Metroplex on the Atlantic, LLC, et al. under Queens County index number 23079/10 to foreclose the Mortgage on the Property (the "Queens Foreclosure Action");

WHEREAS, by Order Appointing Receiver, dated May 18, 2011, the State Court in the Queens Foreclosure appointed Joseph John Risi, Esq. (the "Receiver") as receiver of the Property (the "Receivership");

WHEREAS, by Stipulation Regarding Management of the Mortgage Property, dated September 14, 2011, the parties to the Queens Foreclosure Action, inter alia, consented to the Receiver's engagement of Walters and Samuels, Inc. ("W&S") to assist Receiver with the management of the Property;

WHEREAS, the Receiver and W&S remain in control of the Property;

WHEREAS, by order entered February 5, 2013, the State Court granted CPC summary judgment on the foreclosure complaint filed in the Queens Foreclosure Action (the "Queens Foreclosure Order Granting Summary Judgment");

WHEREAS, Debtor and Mielczarek filed a notice of appeal, dated March 13, 2013 ("Appeal No. 1"), of the Queens Foreclosure Order Granting Summary Judgment and Appeal No. 1 has not yet been decided;

WHEREAS, by Final Judgment of Foreclosure and Sale dated October 1, 2014 (the "Queens Foreclosure Judgment"), the State Court, in the Queens Foreclosure Action, granted

final judgment in favor of Secured Lender and directed that the Property be sold at public auction under the direction of court-appointed referee;

WHEREAS, Debtor and Mielczarek filed a notice of appeal, dated December 19, 2014 ("Appeal No. 2"; with Appeal No. 1, the "Appeals"), of the Queens Foreclosure Judgment and Appeal No. 2 has not yet been decided;

WHEREAS, as a result of Debtor's default on its obligations under the Loan Documents, Secured Lender commenced an action in the Supreme Court of the State of New York, County of Kings, captioned DOF IV Metroplex, LLC v. Kew Gardens Property, LLC, et al. under Kings County index number 2508000/10 to foreclose the Collateral Mortgage on the Division Place Collateral (the "Brooklyn Foreclosure"; with the Queens Foreclosure, the "Foreclosures");

WHEREAS, before and after the Petition Date, with the knowledge and consent of the Debtor Parties, the Secured Lender has advanced sums to or for the benefit of the Debtor and the Debtor's estate in order to pay for security, utilities and other essential items;

WHEREAS, by Notice of Motion dated July 31, 2015 (Docket No. 36), Debtor, inter alia, sought an order authorizing it to incur post-petition debt on a secured basis under Section 364(c) and 364(d) of the Bankruptcy Code and to enter into definitive loan documents pursuant to a DIP Loan and Security Agreement in the amount of up to $19 million with PSG Capital Partners, Inc. and/or its nominee (the "DIP Motion");

WHEREAS, by Notice of Motion dated August 6, 2015 (Docket No. 40), Debtor sought an order extending the deadline for Debtor to comply with 11 U.S.C. § 362(d)(3) until one business day after the Court ruled on Debtor's Motion to Approve Post Petition Financing;

WHEREAS, upon the consent of Debtor and Secured Lender, the hearing on the DIP Motion scheduled for September 8-9, 2015 was adjourned until October 28-29, 2015;

WHEREAS, the Secured Lender and the Debtor entered into a stipulation (the "Exclusivity Stipulation") on October 26, 2015 by which the Debtor's exclusive periods under section 1121 of the Bankruptcy Code were terminated, effective 11:59 pm on November 2, 2015;

WHEREAS on October 30, 2015 an order approving the Exclusivity Stipulation was entered by the Bankruptcy Court [Docket No. 79];

WHEREAS, on October 28, 2015 Debtor withdrew its DIP Motion without prejudice;

WHEREAS, the Debtor, the Principals, Kew and the Secured Lender (collectively, the "Parties"), represented by counsel, or having had the opportunity to engage counsel, have engaged in extensive arms' length negotiations; and

WHEREAS, the Parties have agreed to that certain Joint Debtor/Secured Lender Plan Term Sheet dated as of the date hereof, a true and correct copy of which is annexed hereto as Exhibit A (the "Term Sheet") with respect to a chapter 11 plan to be jointly proposed by the Debtor and the Secured Lender (the "Chapter 11 Plan").

NOW, THEREFORE, in consideration of the premises and Stipulations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby stipulate and agree as follows:

1. Incorporation of Recitals. The foregoing recitals are incorporated by reference in their entirety and made a part hereof as if fully set forth herein.

2. Incorporation of Term Sheet. The Term Sheet is incorporated by reference in its entirety and made a part hereof as if fully set forth herein; provided, however, that in the event of any conflict between the terms of this Stipulation and of the Term Sheet, the terms of this Stipulation shall control.

3. Defined Terms. All defined terms not defined herein shall have the meanings provided for in the Term Sheet or in the Bankruptcy Code, as applicable.

4. Representations and Warranties. Each Party represents and warrants to each of the other Parties, solely as to itself, as follows:

(a) With respect to each Party that is not a natural person, such Party (i) is validly existing and in good standing under the laws of the jurisdiction of such Party's formation and(ii) has, subject to the entry of the Approval Order (as defined below) in the case of the Debtor, all requisite authority to enter into and perform this Stipulation, the Term Sheet and the transactions contemplated thereby;

(b) The execution, delivery and performance of this Stipulation and the Term Sheet and the consummation of the transactions contemplated thereby will not (i) violate any law, rule or regulation applicable to it or him and, with respect to each Party that is not a natural person, its constituent documents, by-laws or similar documents, (ii) conflict with, result in a breach of or a constitute a default under any material contractual obligation to which such Party is a party or otherwise bound or (iii) violate any order, writ, injunction, decree, statute, rule or regulation;

(c) Subject to the entry of the Approval Order in the case of the Debtor, the execution, delivery and performance of this Stipulation and the Term Sheet and the consummation of the transactions contemplated thereby will not require any registration or filing with, consent or approval of, or notice to, any federal, state or other governmental authority or body;

(d) Each party has been represented or advised in connection with the negotiation and drafting of this Stipulation by counsel and other advisors of such Party's choosing (or having had the opportunity for such representation) and that each Party is entering into this Stipulation voluntarily and without duress or coercion; and

(e) Subject to the entry of the Approval Order in the case of the Debtor, this Stipulation is the legally valid and binding obligation of such Party, enforceable in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or similar law relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

5. Support and Implementation of Term Sheet and Related Transactions.

(a) The Parties agree to use their best efforts to support and ensure the implementation of the transactions provided for and contemplated by the Term Sheet and this Stipulation, including full, complete and timely performance of the specific obligations set forth herein. Without limiting the foregoing, the Parties will promptly, fully and completely cooperate by (i) providing such affidavits, declarations, live testimony and other evidence as is reasonable and appropriate in connection with the hearings to approve the disclosure statement (the "Disclosure Statement") to be used to solicit acceptances of the Chapter 11 Plan, the motions required or contemplated by this Stipulation and the confirmation of the Chapter 11 Plan, (ii) filing such joinders, memoranda or other pleadings as may be reasonably requested by the Debtor or the Secured Lender in connection therewith, (iii) attending such hearings as may be reasonably requested by the Debtor or the Secured Lender or as required by the Bankruptcy Court in connection therewith, (iv) providing such information as may be necessary to ensure that the Disclosure Statement contains "adequate information" as such term is used in section 1125(a)(1) of the Bankruptcy Code, (v) providing such information to the Secured Lender, the Plan Administrator (as defined below) and/or the Broker (as defined below) as required by the Term Sheet or as may be reasonably requested by the Plan Administrator and/or the Broker, (vi) permitting potential bidders and purchasers to visit and inspect the Property and to meet with operational personnel thereof, (vii) taking all reasonable action necessary or helpful to obtain effectiveness and consummation of the Chapter 11 Plan and (viii) providing all information and cooperation set forth in this Stipulation. Without limiting the foregoing, the Debtor Parties shall cooperate fully with and shall not object to any sale of the Property scheduled by the Secured Lender if the sale of the Property shall not have occurred on or before the Sale Date Deadline, as provided for in the Term Sheet and in subparagraph (c) below.

(b) No Party will file or directly or indirectly solicit the filing of any objection to (i) this Stipulation or any application or motion for entry of the Approval Order, (ii) the Disclosure Statement, (iii) the Chapter 11 Plan, (iv) any of the other motions required or contemplated by this Stipulation or (v) the Allowed Secured Lender Secured Claim or the Allowed Secured Lender Administrative Claim.

(c) Prior to the termination of this Stipulation, no Party shall prosecute or any other chapter 11 plan in the Case other than the Chapter 11 Plan or seek dismissal or conversion of the Case to chapter 7; provided, however, that the foregoing shall not operate to preclude the filing by the Secured Lender of a motion for a sale pursuant to section 363 of the Bankruptcy Code, as and when provided for in "Timing" in the Term Sheet, and other ancillary relief in connection therewith, including a liquidating plan or motion to convert or dismiss the Case in accordance with the foregoing.

(d) Subject to the execution of confidentiality agreements, each of the Debtor Parties consents to the disclosure to potential bidders and/or purchasers of the Secured Loan of all information (including but not limited to confidential information) regarding the Debtor, the Property, the Division Place Collateral and the Secured Loan (including the Guaranty and the guarantor with regard to potential purchasers of the Secured Loan). For the

avoidance of doubt, information regarding the Guaranty and the guarantor may be provided to potential loan purchasers that are also potential bidders for the Property.

6. Chapter 11 Plan and Disclosure Statement. The transactions described in the Term Sheet will be consummated pursuant to the Chapter 11 Plan. The Debtor and the Secured Lender will be co-proponents of the Chapter 11 Plan. In furtherance thereof, the Parties agree as follows:

(a) The Parties will work cooperatively to prepare and finalize the Disclosure Statement and the Chapter 11 Plan; provided however, that both the Disclosure Statement and the Chapter 11 Plan shall be subject to the approval of the Secured Lender. Without limiting the foregoing, the Debtor will prepare an initial draft of the proposed Disclosure Statement and the Secured Lender will prepare an initial draft of the Chapter 11 Plan, each of which will be circulated to the other Parties on or before November 19, 2015.

(b) The Chapter 11 Plan and the proposed Disclosure Statement, along with an application or motion for approval of the Disclosure Statement, entry of a scheduling order and related relief, will be filed with the Bankruptcy Court on or prior to November 25, 2015

(c) The Parties agree to diligently seek Bankruptcy Court approval of the Disclosure Statement and to diligently prosecute the Chapter 11 Plan, including but not limited to opposing and/or seeking resolution to any and all objections to the Plan. Notwithstanding the foregoing, nothing set forth in this Stipulation shall operate to waive, limit or modify the provisions set forth in "Timing" in the Term Sheet or to extend the Sale Date Deadline, except as such date may be extended pursuant to the Term Sheet.

(d) Each Party eligible to vote with respect to the Chapter 11 Plan shall, following approval by the Bankruptcy Court of the proposed Disclosure Statement, submit timely a ballot with respect to any claims or interests held by such Party voting to accept the Chapter 11 Plan. To the extent a Party is in a class that is deemed pursuant to section 1126(g) of the Bankruptcy Code to have rejected the Chapter 11 Plan, such Party shall be deemed to have waived any objection to confirmation of the Plan under sections 1129(a)(7) and 1129(b) of the Bankruptcy Code or otherwise.

7. Plan Administrator.

(a) Selection and Retention of Plan Administrator. The Debtor will select a Plan Administrator (which term shall include any replacement) from one of the following: Daniel Polsky or Grant Lyon. The Debtor will promptly, but in any event no later than November 19, 2015, file any required application to retain the Plan Administrator on behalf of the Debtor's estate; provided, however, such relief may be sought in the motion filed by the Debtor seeking approval of this Stipulation.

(b) Duties of Plan Administrator. The Plan Administrator's duties shall be as set forth in the Term Sheet and in the Chapter 11 Plan, and shall include (i) the marketing of the Property, including the supervision of the Broker engaged by the Debtor pursuant to paragraph 8 of this Stipulation; (ii) the negotiation of confidentiality agreements and the provision of due diligence materials to potential purchasers of the Property; (iii) the

negotiation of a purchase and sale agreement with one or more potential purchasers of the Property; (iv) the determination as to whether a potential purchaser should serve as a "stalking horse" bidder and, if so, the bid protections and bid procedures in connection therewith; (v) the conduct of the auction, if any, of the Property; (vi) to the extent appropriate, the filing, prosecution and settlement of any objections to claims that are not Allowed Claims; (vii) other actions reasonably necessary to consummate the Chapter 11 Plan, including the filing of such reports as may be required under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or the Local Rules of the Bankruptcy Court; (viii) any other matter provided for in the Chapter 11 Plan, the Term Sheet or this Stipulation; and (ix) such other matters as are reasonably necessary and appropriate to accomplish the foregoing.

(c) Consultation and Consent Requirements. The Plan Administrator shall consult with the Debtor and the Secured Lender with respect to the matters set forth in this Stipulation and in the Term Sheet and shall obtain the consent of the Secured Lender with respect to the matters described in subparagraph (b) of this paragraph.

8. Broker or Brokers. The Debtor (or the Plan Administrator, if the Plan Administrator has been engaged and such engagement has been approved by the Bankruptcy Court), shall, in consultation with the Debtor and the Secured Lender and subject to the consent of the Secured Lender, select and engage one or more of the following brokers (with any replacement, the "Broker"): Hilco Real Estate (attention: Jeff Asuze), Newmark Grubb Knight Frank (attention: Steven M. Schultz) or such other broker nominated by the Secured Lender within five business days following the execution of this Stipulation by the Parties. If the Debtor selects a broker and the Secured Lender does not consent to such broker, then the Debtor shall choose a broker from the remaining brokers listed above. The foregoing shall apply if the Secured Lender does not consent to such secondary choice, in which case the Debtor shall choose the final remaining broker. The Debtor shall promptly seek the approval of the Bankruptcy Court regarding such engagement, but in any event no later than three business days after the selection thereof; provided however, this relief may be sought in the motion for the Approval Order.

9. Property Manager. The Debtor shall promptly retain as property manager (with any replacement, the "Property Manager"), pursuant to an agreement acceptable to the Secured Lender, from one of the following: KW Property Management (attention: Paul Kaplan) or CompassRock Real Estate LLC (attention: David Sorise). Without limiting the foregoing, such agreement shall provide for (a) monthly compensation of not more than $6,000.00; (b) termination rights by the Debtor's estate (which right shall be exercisable by the Plan Administrator) on not more than ten days written notice; and (c) other customary terms and provisions. The Debtor shall promptly seek the approval of the Bankruptcy Court regarding such engagement, but in any event no later than three business days after the selection thereof; provided however, this relief may be sought in the motion for the Approval Order. In the event that the Debtor fails to timely do so, the Secured Lender may file an application or motion with the Bankruptcy Court authorizing the retention of a Property Manager by the Debtor's estate. Upon the engagement of the Property Manager, the Receivership shall be terminated and the Receiver shall, pursuant to section 543 of the Bankruptcy Code, surrender any property of the estate held or controlled by the Receiver.

10. Replacement of Plan Administrator, Broker or Property Manager. In the event that it is necessary to replace the Plan Administrator, Broker or Property Manager, the shall be selected by the Debtor from one or more candidates provided by the Secured Lender at that time.

11. Funding of Compensation and Expenses Plan Administrator, Broker and Property Manager. The compensation and expenses of the Plan Administrator and the Property Manager shall be funded from the Exit Facility. The compensation and expenses of the Broker shall be paid from the proceeds of the sale of the Property; provided, however, in the event of a successful credit bid for the entire sales price which actually closes, such amounts shall be paid from the Exit Facility.

12. Allowance of Secured Lender Claims.

(a) Allowed Secured Lender Secured Claim. The Allowed Secured Lender Secured Claim is allowed, as more particularly provided for in the Term Sheet, as a duly perfected and unavoidable secured claim, secured by all property of the Debtor's estate, including but not limited to the Property and all pre and postpetition cash collateral, if any and senior to all other claims and interests against and in the Debtor. As of the Petition Date, the amount of the Allowed Secured Lender Secured Claim was $37,734,103.11, which amount shall be increased to reflect all expenses (including attorneys' fees and disbursements) incurred after the Petition Date and, to the extent that the Secured Lender is oversecured, interest on and after the Petition Date in accordance with the Loan Documents. Without limiting the foregoing, the amount of the Allowed Secured Lender Secured Claim as of the Petition Date and the validity, enforceability, priority and perfection, in all respects, of the liens, claims, interests, mortgages, and encumbrances of the Mortgage or any of the other Loan Documents or that otherwise secure the Allowed Secured Lender Secured Claim are hereby confirmed and the Debtor and each of the other Debtor Parties, each for itself, himself or herself, as applicable, and for the Debtor's estate and for any person or entity claiming by or through the Debtor or any of the other Debtor Parties, irrevocably waives any right to object to the Allowed Secured Lender Secured Claim, and shall not seek to challenge, reduce, avoid, exercise any alleged rights of setoff or recoupment, subordinate or recharacterize the Allowed Secured Lender Secured Claim in any respect, including but not limited to the priority thereof. This provision shall survive any termination of this Stipulation (a "Termination Event").

(b) Allowed Secured Lender Administrative Claim. The Allowed Secured Lender Administrative Claim is allowed, as more particularly provided for in the Term Sheet, as an allowed administrative expense pursuant to 11 U.S.C. § 503(b) and shall be entitled to the priority provided for in 11 U.S.C. § 507(a)(2). As of October 31, 2015, the amount of the Allowed Secured Lender Administrative Claim was $293,973.52 plus interest thereon, which amount shall be adjusted to account for any subsequent advances by the Secured Lender (without duplication for any amounts that may be advanced by the Secured Lender under the Exit Facility, if any). The amount and priority of the Allowed Secured Lender Administrative Claim as set forth in the preceding sentences is hereby confirmed and the Debtor and each of the other Debtor Parties, each for itself, himself or herself, as applicable, and for the Debtor's estate and for any person or entity claiming by or through the Debtor or any of the other Debtor Parties, irrevocably waives any right to object to the Allowed Secured Lender Administrative Claim, and shall not seek to challenge, reduce, avoid, exercise any alleged rights of setoff or recoupment, subordinate

or recharacterize the Allowed Secured Lender Administrative Claim in any respect, including but not limited to the priority thereof. This provision shall survive any Termination Event.

13. Additional Debtor Party Covenants. In addition to the other covenants and agreements set forth in this Stipulation, each of the Debtor Parties covenants and agrees as follows:

(a) To maintain the tax status of the Debtor as "pass through" entities for purposes of the Internal Revenue Code and applicable state and local tax laws or regulations;

(b) To comply with all stipulations between any of the Parties;

(c) To timely pay all post-petition obligations, including all real estate and other taxes owed by the Debtor, to the extent funds for such obligations are either advanced by the Secured Lender (which advances shall be treated as part of the Allowed Secured Lender Administrative Claim) or funds are otherwise available; and

(d) To comply with all orders of the Bankruptcy Court.

14. Acknowledgement and Confirmation of Right to Credit Bid. The Parties acknowledge and confirm the right of the holder of the Allowed Secured Lender Secured Claim to credit bid all or a portion of such claim. Without limiting the foregoing, the Debtor Parties irrevocably waive any right to assert that "cause" exists under section 363(k) of the Bankruptcy Code for limiting such right to credit bid.

15. Releases and Exculpations of Secured Lender Releasees.

(a) Releases. Notwithstanding anything contained in this Stipulation to the contrary, for the good and valuable consideration provided by or on behalf of the Secured Lender Releasees (as defined below), the adequacy of which is hereby confirmed, each of the Debtor Parties, on behalf of each such Debtor Party and any person claiming or purporting to claim through or on behalf of such Debtor Party (collectively, the "Debtor Party Releasors"), to the maximum extent of applicable law, hereby discharges and releases and shall be deemed to have provided a full discharge and release to each of the Secured Lender Releasees (as defined below) and their respective property from any and all claims, interests, obligations, debts, rights, suits, damages, remedies, causes of action, liabilities, and all avoidance or other actions under sections 510, 544-49 and 724 of the Bankruptcy Code and, to the extent related thereto, sections 542-43, 550 or 553 of the Bankruptcy Code, whatsoever (including any derivative claims asserted on behalf of the Debtor), whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing as of such effective date in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, arising from or related in any way to the Debtor, the Foreclosures, the Receiver, the Receivership, the Appeals, the transactions contemplated by this Stipulation and the Term Sheet (including the Chapter 11 Plan and the sale of the Property), the Case, the subject matter of, or the transactions or events giving rise to, any claim or interest that is to be treated in the Chapter 11 Plan, the business or contractual arrangements between any of the Debtor Parties and any of the Secured Lender Releasees (other than this Stipulation and the Term Sheet), the restructuring of claims and interests prior

NY02DOCS\1893398.13

to or in the Case, the negotiation, formulation, or preparation of this Stipulation, the Term Sheet and the Chapter 11 Plan and the transactions contemplated thereby (including the selection and engagement of the Plan Administrator and the broker and any successors), the Disclosure Statement, any plan supplement, the Stapled Financing, or any related stipulations, instruments, or other documents related to the Case), and any other act or omission, transaction, stipulation, event, or other occurrence relating thereto, including those that any of the Debtor Party Releasors would have been legally entitled to assert in their own right (whether individually or collectively) or that any person or other entity would have been legally entitled to assert on behalf of any of the Debtor Party Releasors; provided further that the general release shall not operate to waive or release any of the Secured Lender's obligations under this Stipulation, the Term Sheet or the Chapter 11 Plan. "Secured Lender Releasees" means the Secured Lender Parties (as defined below) and each of their and each of their respective predecessors, successors and assigns, shareholders, affiliates and Insiders (determined as if such entity were a debtor under the Bankruptcy Code), subsidiaries, principals, employees, agents, officers, directors, trustees, members, partners, professionals, consultants and advisors. "Secured Lender Parties" means the Secured Lender, DOF IV REIT Holdings, LLC, Debtor Opportunity Fund IV, LLC, Debtor Opportunity Fund (Cayman) IV, LLC, Debtor Opportunity Management, LLC, Torchlight Investors, LLC, Torchlight Loan Services, LLC, Trimont Real Estate Advisors, Inc., the Receiver and any past, current or future servicer with respect to the Loan. The Debtor Party Releasors acknowledge and understand that there is a risk that, subsequent to the execution of this Stipulation, they may accrue, obtain, incur, suffer or sustain claims which in some conceivable way arise out of, are caused by, are connected with, or relate to the Secured Lender Releases, which are unknown and unanticipated at the time this Stipulation is signed or which are not presently capable of being ascertained. The Debtor Party Releasors further acknowledge that there is a risk that any claims as are known or should be known with respect to the released matters may become more serious than they now expect or anticipate. Nevertheless, the Debtor Party Releasors hereby expressly waive all rights they may have in such unknown and unexpected consequences or results as to the matters released and discharged pursuant to this Stipulation. The Debtor Party Releasors acknowledge that they have had the benefit of or opportunity to consult with counsel.

(b) Exculpation. The Secured Lender Releasees shall neither have, nor incur, any liability to any person or entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation of this Stipulation, the Term Sheet, the Disclosure Statement or the Chapter 11 Plan, including but not limited to the marketing of and sales process relating to the Property, the decision to qualify or not qualify a potential bidder as a qualified bidder, the Stapled Financing, any contract, instrument, release, or other Stipulation or document created or entered into in connection with the Chapter 11 Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtor, including the Foreclosures, the Appeals, the Receiver or the Receivership; provided that the foregoing "Exculpation" shall have no effect on the liability of any of the Parties that results from any such act or omission that is determined in a Final Order (as defined below) to have constituted gross negligence or willful misconduct; provided, further, that each Party shall be entitled to rely upon the advice of counsel concerning his, her, or its

duties pursuant to, or in connection with, the Chapter 11 Plan or any other related document, instrument, or Stipulation. As used herein, "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

(c) Receiver. Notwithstanding subparagraphs (a) and (b) above, the releases and exculpations of the Receiver shall be conditional upon the Receiver's agreement to release and exculpate the Debtor Parties as and when provided for in paragraph 16 below.

(d) Effective Date Bringdown. The above releases and exculpations provided for in subsections (a) and (b) above shall brought down and extended through and including the effective date of the Chapter 11 Plan.

16. Releases and Exculpations of the Debtor Parties by Secured Lender Parties.

(a) Releases. Notwithstanding anything contained in this Stipulation to the contrary, for the good and valuable consideration provided by or on behalf of the Debtor Parties, the adequacy of which is hereby confirmed, upon the effective date of the Chapter 11 Plan and provided that the Secured Lender shall not have exercised its right of termination prior to such effective date, each of the Secured Lender Parties, on behalf of each such Secured Lender Party and any person claiming or purporting to claim through or on behalf of such Secured Lender Party (collectively, the "Secured Lender Party Releasors"), to the maximum extent of applicable law, shall upon the effective date of the Chapter 11 Plan discharge and release and shall be deemed to have provided a full discharge and release to each of the Debtor Party Releasees (as defined below) and their respective property from any and all claims, interests, obligations, debts, rights, suits, damages, remedies, causes of action, liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing as of such effective date in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, arising from or related in any way to the Debtor, the Foreclosures, the Receiver, the Receivership, the Appeals, the transactions contemplated by this Stipulation and the Term Sheet (including the Chapter 11 Plan and the sale of the Property), the Case, the subject matter of, or the transactions or events giving rise to, any claim or interest that is to be treated in the Chapter 11 Plan, the business or contractual arrangements between any of the Debtor Parties and any of the Secured Lender Parties (other than this Stipulation and the Term Sheet), the restructuring of claims and interests prior to or in the Case, the negotiation, formulation, or preparation of this Stipulation, the Term Sheet and the Chapter 11 Plan and the transactions contemplated thereby (including the selection and engagement of the Plan Administrator and the broker and any successors), the Disclosure Statement, any plan supplement, the Stapled Financing, or any related stipulations, instruments, or other documents related to the Case), and any other act or omission, transaction, stipulation, event, or other occurrence relating thereto, including those that any of the Secured Lender Party Releasors would have been legally entitled to assert in their own right (whether individually or collectively) or that any

person or other entity would have been legally entitled to assert on behalf of any of the Secured Lender Party Releasors; provided further that the general release shall not operate to waive or release any of the Debtor Parties' obligations under this Stipulation, the Term Sheet or the Chapter 11 Plan; provided further , however, that the foregoing release shall not waive or release any claim, such as environmental claims, that would survive a foreclosure or release of the mortgage. "Debtor Party Releasees" means the Debtor Parties and each of their respective predecessors, successors and assigns, shareholders, affiliates and Insiders (determined as if such entity were a debtor under the Bankruptcy Code), subsidiaries, principals, employees, agents, officers, directors, trustees, members, partners, professionals, consultants and advisors. The Secured Lender Party Releasors acknowledge and understand that there is a risk that, subsequent to the effective date of the Chapter 11 Plan, they may accrue, obtain, incur, suffer or sustain claims which in some conceivable way arise out of, are caused by, are connected with, or relate to the Debtor Party Releases, which are unknown and unanticipated at the time this Stipulation is signed or which are not presently capable of being ascertained. The Secured Lender Party Releasors further acknowledge that there is a risk that any claims as are known or should be known with respect to the released matters may become more serious than they now expect or anticipate. Nevertheless, the Secured Lender Party Releasors hereby expressly waive all rights they may have in such unknown and unexpected consequences or results as to the matters released and discharged pursuant to this Stipulation. The Secured Lender Party Releasors acknowledge that they have had the benefit of or opportunity to consult with counsel.

(b) Exculpation. Upon the effective date of the Chapter 11 Plan (in the case of counsel for the Debtor, upon the confirmation date of the Chapter 11 Plan) and provided that the Secured Lender shall not have exercised its right of termination prior to such effective date, effective as of such date, the Debtor Party Releasees shall neither have, nor incur, any liability to any person or entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation of this Stipulation, the Term Sheet, the Disclosure Statement or the Chapter 11 Plan, including but not limited to the marketing of and sales process relating to the Property, the decision to qualify or not qualify a potential bidder as a qualified bidder, the Stapled Financing, any contract, instrument, release, or other Stipulation or document created or entered into in connection with the Chapter 11 Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtor, including the Foreclosures, the Appeals, the Receiver or the Receivership; provided that the foregoing "Exculpation" shall have no effect on the liability of any of the Parties that results from any such act or omission that is determined in a Final Order (as defined below) to have constituted gross negligence or willful misconduct; provided, further, that each Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Chapter 11 Plan or any other related document, instrument, or Stipulation; provided further , however, that the foregoing exculpation shall not exculpate any claim, such as environmental claims, that would survive a foreclosure or release of the mortgage.

17. Guarantor Consent and Acknowledgement. By its execution of this Stipulation, guarantor hereby agrees, for the benefit of the Secured Lender, that, except as otherwise set forth

in the Term Sheet, neither this Stipulation (including the Term Sheet incorporated by reference herein), the performance of the transactions contemplated thereby nor the confirmation, effectiveness and consummation of the Chapter 11 Plan (as such plan may be modified in accordance with the terms thereof) shall release, diminish, impair, reduce or adversely affect any Stipulation or document to which guarantor is a party, including but not limited to the Guaranty and waives any common law, equitable, statutory or other rights (including, without limitation, rights to notice) which guarantor might otherwise have as a result of or in connection with any of the foregoing.

18.    Transfers.

(a)    Transfer of Secured Loan. The Secured Lender may assign or transfer the Loan, the Loan Documents and/or the Allowed Secured Lender Claims at any time; provided, however, that any assignee of the Loan, the Loan Documents and the Allowed Secured Lender Secured Claim shall assume the obligations of the Secured Lender under this Stipulation, the Term Sheet and the Plan.

(b)    Transfer of Claims or Interests of Debtor Parties. The Debtor Parties shall not transfer or permit to be transferred any direct or indirect interest in or claim against the Debtor unless such transferee has fully assumed such transferor's obligations under and with respect to this Stipulation and the Term Sheet. Without limiting the foregoing, the releases and exculpations shall be binding on any transferee or mediate or immediate transferee thereof.

19.    Motions and Applications.

(a)    Motion to Approve Stipulation. The Debtor and the Secured Lender shall use their best efforts to file a joint motion within five (5) business days of the execution of this Stipulation seeking entry, on an expedited basis, of an order (the "Approval Order") by the Bankruptcy Court, which order shall (i) approve the Stipulation and the Term Sheet, and authorize and direct the Debtor to perform its obligations thereunder, (ii) if an engagement letter with the Plan Administrator, Property Manager and/or the Broker has been executed, authorize the Debtor's engagement of the Plan Administrator, Property Manager and/or the broker pursuant to the terms of such engagement letters, (iii) schedule a hearing on the Disclosure Statement and seek approval of solicitation and voting procedures in connection therewith, (iv) schedule a hearing on the confirmation of the Chapter 11 Plan and (v) grant such other relief as is reasonably necessary to effectuate the transactions contemplated hereby; provided, however, in the event that the Plan Administrator and/or the Broker have not been engaged by the date of such joint motion, the Debtors and the Secured Lender shall file a separate motion or motions with respect to such engagements no later than three (3) business days after the execution of the respective engagement letter or letters. The Approval Order shall be acceptable to Secured Lender in its sole discretion.

(b)    Motion for Approval of Disclosure Statement. The Debtor and the Secured Lender shall file and prosecute a motion for approval of the proposed Disclosure Statement scheduled in accordance with subparagraph (a) above.

(c) Application to Establish Supplemental Bar Date. If the Debtor has not previously done so, the Debtor shall use its best efforts to file a motion within five (5) business days of the execution of this Stipulation seeking entry of a supplemental bar order requiring all holders of alleged easement claims (other than holders of alleged easement claims that have previously filed a proof of claim) against the Debtor or with respect to the Property to file a proof of claim within such date as may be set by the Bankruptcy Court. The Debtor shall give notice of such application as directed or approved by the Bankruptcy Court, which shall include notice by mail to such claimants' last known address and notice by publication. The Debtor shall, contemporaneously therewith, amend its schedules to schedule such claims as disputed and unliquidated.

(d) Best Efforts. The Parties shall use their best efforts to obtain the prompt approval of the motions required or contemplated by this Stipulation.

20. Withdrawal of Motions. Upon the entry of the Approval Order, the Secured Lender shall promptly withdraw the Dismissal Motion and the Lift Stay Motion without prejudice; provided, however, that the Secured Lender will not refile such motions prior to the occurrence of the termination of this Stipulation pursuant to paragraph 22. The Debtor will not refile the DIP Motion under any circumstances unless agreed to in writing by the Secured Lender or any successor thereto.

21. Effectiveness of Stipulation. This Stipulation shall be effective immediately upon the execution thereof by all of the Parties; provided, however, the Debtor's obligations under and with respect to this Stipulation (other than the Debtor's obligations under paragraphs 6(a) and 19 of this Stipulation), shall be effective upon the entry of the Approval Order.

22. Termination.

(a) Termination Rights of Parties. Any Party shall have the right but not the obligation to terminate this Stipulation by written notice upon the occurrence of any of the following:

(i) The Bankruptcy Court shall have denied the motion for entry of the Approval Order;

(ii) The Approval Order shall have been vacated, reversed, modified or amended (except for a modification or amendment with the prior consent of all of the Parties or that is immaterial), stayed or become subject to a writ of mandamus; or

(iii) The Case shall be dismissed or converted to cases under chapter 7 of the Bankruptcy Code.

(b) Secured Lender Termination Right. The Secured Lender shall have the right but not the obligation to terminate this Stipulation by (5) five days written notice upon the occurrence of any of the events described in subsection (a) above or of the following:

(i) The Approval Order shall not have been entered by the Bankruptcy Court on or before November 30, 2015;

(ii) The Chapter 11 Plan and the Disclosure Statement shall not have been filed on or before November 19, 2015;

(iii) If the engagement of the Property Manager, the Broker and the Plan Administrator are not approved or authorized pursuant to the Approval Order, a separate order by the Bankruptcy Court approving and authorizing the same *nunc pro tunc* shall not have been entered on or before November 30, 2015;

(iv) The Bankruptcy Court shall not have entered an order approving the Disclosure Statement on or before December 21, 2015;

(v) The Bankruptcy Court shall not have entered an order confirming the Chapter 11 Plan on or before January 29, 2016;

(vi) The sale date of the Property shall not have occurred on or before February 1, 2016;

(vii) Any of the orders described or referred to the above shall have been vacated, reversed, modified or amended (except for a modification or amendment with the prior consent of all of the Parties), stayed or become subject to a writ of mandamus or the effectiveness of the Chapter 11 Plan shall have been revoked;

(viii) Any Debtor Party breaches any material obligation under the Stipulation and such breach is not cured within five (5) days of written notice thereof; or

(ix) Any Debtor Party shall file or directly or indirectly solicit the filing of a motion, application or adversary proceeding challenging the alliance amount, validity, perfection, enforceability or priority of the Allowed Secured Lender Claims.

(c) Suspension of Termination Right. Notwithstanding subparagraphs (b)(i), (iii), (iv) and (v) above, the Secured Lender's right to terminate due to the failure of such events to occur on or before such dates shall be suspended to the extent such failure was caused solely as the result of the Bankruptcy Court's calendar in scheduling any necessary hearing; provided, however, that such dates shall not be extended more than thirty days as a result of the foregoing (subject to extension with the written consent of the Secured Lender).

(d) Debtor Parties' Termination Right. Any Debtor Party shall have the right but not the obligation to terminate this Stipulation by written notice upon the occurrence of any of the events described in subparagraph (a) above or if the Secured Lender breaches any material obligation under this Stipulation and such breach is not cured within five days written notice of such breach.

(e) Effect of Termination. Upon the termination of this Stipulation, the rights and obligations of the Parties under this Stipulation shall terminate and be null and void and of no further effect, except as otherwise provided herein. Without limiting the foregoing, the releases and exculpations set forth in paragraph 15 of this Stipulation and the right of the Secured Lender to prosecute the Chapter 11 Plan or seek a section 363 sale of the Property in accordance with the term sheet shall survive any termination of this Stipulation.

23. Right of Secured Lender to Prosecute Chapter 11 Plan. In the event that any of the Debtor Parties breach section 15 of this Stipulation or if the termination of the Stipulation occurs, the Secured Lender may continue to prosecute the Chapter 11 Plan as the sole proponent thereof, in which case the Debtor Parties agree not to oppose the approval of the Disclosure Statement, the Confirmation of the Chapter 11 or any related motion or request for relief.

24. Relationship Among the Parties. It is expressly understood and agreed that the Secured Lender Parties have no duty of trust or confidence or any fiduciary duty to any of the Debtor Parties or the Debtor's estate.

25. Independent Analysis. Each of the Parties confirms that she, he or it had made her, his or its own decision to enter into this Stipulation and the Term Sheet based upon its own independent analysis with the advice of counsel and other advisors of such Party's choosing, as deemed appropriate by such Party.

26. Reservation of Rights; No Admission. Except as expressly provided for in this Stipulation and in the Term Sheet, nothing set forth herein shall operate to waive, limit, impair or restrict the rights of the Parties under the Bankruptcy Code, applicable nonbankruptcy law or any other document or Stipulation, including but not limited to the Loan Documents. This Stipulation is a settlement Stipulation and shall not be deemed to be an admission as to any factual or legal matter in or relating to this Case, the Secured Loan or otherwise, except as expressly set forth herein.

27. Dismissal of Appeals. Upon entry of the Approval Order, the Debtor and Mielczarek shall withdraw the Appeals, which withdrawal shall be with prejudice to any further appeals or requests for similar relief.

28. Miscellaneous.

(a) Notices. Any notice required or desired to be served, given, or delivered under this Stipulation shall be in writing, and shall be deemed to have been validly served, given, or delivered if provided by personal delivery, or upon receipt of electronic mail delivery, as follows:

(i) If to the Secured Lender:

DOF IV Metroplex, LLC
c/o Torchlight Loan Services
475 Fifth Avenue
New York, NY 10169
Telephone: (212) 808-3665
gmontalti@torchlightinvestors.com
Attn: Mr. Gianluca Montalti

with copies to:

Bryan Cave LLP
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 541-2000
Facsimile: (212)541-4630
Attn: Lawrence P. Gottesman, Esq.
Email: lawrence.gottesman@bryancave.com

Kilpatrick Townsend & Stockton LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
Attention: Keith M. Brandofino, Esq
E-Mail: KBrandofino@kilpatricktownsend.com
and
Attention: Colin Bernardino, Esq.
E-Mail: cbernardino@kilpatricktownsend.com

(ii) If to the Debtor:

Metroplex on the Atlantic, LLC
c/o Elzbieta Mielczarek
1 Bridle Path Drive
Old Westbury, New York 11568
Telephone: (917) 939-8414
Email: elizabethmielczarek@yahoo.com

with copies to:

Cullen and Dykman LLP
Attn: Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
100 Quentin Roosevelt Boulevard
Suite 402
Garden City, New York 11530
Telephone: (515) 296-9143
Email: bpollack@cullenanddykman.com

(iii) If to the Principals:

Elzbieta Mielczarek
1 Bridle Path Drive
Old Westbury, New York 11568
Telephone: (917) 939-8414
Email: elizabethmielczarek@yahoo.com

Jerzy Szymczyk
1 Bridle Path Drive
Old Westbury, New York 11568
Telephone: (917) 939-8414
Email: jszymczyk1@yahoo.com

with copies to:

Donna Lanzetta, Esq.
Lanzetta & Associates P.C.
472 Montauk Highway
East Quogue, New York 11942
Telephone: (631) 653-9100
donna.lanzetta@yahoo.com

(iv) If to Kew:

c/o Elzbieta Mielczarek
1 Bridle Path Drive
Old Westbury, New York 11568
Telephone: (917) 939-8414
Email: elizabethmielczarek@yahoo.com

with copies to:

Donna Lanzetta, Esq.
Lanzetta & Associates P.C.
472 Montauk Highway
East Quogue, New York 11942
Telephone: (631) 653-9100
donna.lanzetta@yahoo.com

(v) If to the Guarantor:

Elzbieta Mielczarek
1 Bridle Path Drive
Old Westbury, New York 11568
Telephone: (917) 939-8414
Email: elizabethmielczarek@yahoo.com

with copies to:

Donna Lanzetta, Esq.
Lanzetta & Associates P.C.
472 Montauk Highway
East Quogue, New York 11942
631.653.9100
donna.lanzetta@yahoo.com

(b) Prior Negotiations. This Stipulation, including the Term Sheet and other document referred to herein, constitutes the entire understanding of the Parties with respect to the subject matter hereof.

(c) Amendment or Waiver. This Stipulation, including the Term Sheet, may not be modified, amended or waived except in a writing signed by each of the Parties or, in the case of a waiver, by the applicable Party waiving such right or remedy or the enforcement of any provision of this Stipulation.

(d) Governing Law. This Stipulation shall be governed by the internal laws of the State of New York without regard to any conflict of laws provisions which would require the application of the law of any other jurisdiction and, to the extent applicable, the Bankruptcy Code.

(e) Jury Trial Waiver. EACH OF THE PARTIES HEREBY AGREES NOT TO ELECT A JURY TRIAL OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT SUCH RIGHT NOW OR HEREAFTER EXISTS WITH RESPECT TO THIS STIPULATION, THE TERM SHEET AND THE TRANSACTIONS CONTEMPLATED THEREBY, INCLUDING ANY CLAIM, COUNTERCLAIM OR CROSS-CLAIM ARISING IN CONNECTION WITH OR RELATING THERETO. THIS WAIVER OF THE RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH PARTY AND IS INTENDED TO ENCOMPASS EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH PARTY IS AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE OTHER PARTIES.

(f) Specific Performance. It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Stipulation by any Party and that each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any breach, without the necessity of proving the inadequacy of money damages as a remedy or the posting of any bond.

(g) Headings. The headings of this Stipulation are inserted for convenience and shall not affect the interpretation of this Stipulation or, for any purposes, be deemed a part of this Stipulation.

(h) No Third Party Beneficiaries. This Stipulation is solely for the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators and

representatives, and no other person or entity shall be a third-party beneficiary of this Stipulation or the Term Sheet.

(i) Execution in Counterparts. This Stipulation may be executed in several counterparts, each of which shall be deemed to be an original, and all of which shall be deemed to be a single Stipulation. Execution copies of this Stipulation may be delivered by facsimile, PDF or otherwise, which shall be deemed to be an original.

(j) No Construction Against Drafter. This Stipulation and the Term Sheet shall not be construed against the drafter thereof.

(k) No Consequential Damages. In the event of a breach of this Stipulation or the Term Sheet, no Party shall be liable to any Party or any other person or entity for any consequential damages, and each of the Parties waives the right to seek recovery of any such consequential damages to the maximum extent permitted by law.

(l) Time of the Essence. Time is of the essence with respect to all dates and deadlines set forth in this Stipulation and the Term Sheet.

(m) Further Assurances. Subject to the terms of this Stipulation, the Parties shall take all such actions as may be reasonably necessary to carry out the intent and purposes of this Stipulation, including making and filing any required governmental, regulatory or licensing filings, and shall refrain from taking any action that would frustrate the purposes and intent of this Stipulation.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Stipulation to be duly executed by their duly authorized representatives, all as of November 17, 2015.

**[END OF TEXT; SIGNATURES CONTINUE ON NEXT PAGE]**

**DOF IV METROPLEX, LLC**, a Delaware limited liability company

By: ____________________
Name: Sam Chang
Title: Authorized Signatory
Authorized Signatory

**METROPLEX ON THE ATLANTIC, LLC**, a New York limited liability company

By: ____________________
Elzbieta Mielczarek
Member

**ELZBIETA MIELCZAREK**

____________________
Elzbieta Mielczarek, Individually

**JERZY SZYMCZYK**

____________________
Jerzy Szymczyk, Individually

**[SIGNATURES CONTINUE ON FOLLOWING PAGE]**

**KEW GARDENS PROPERTY LLC**, a Delaware limited liability company

By: [signature]
Elzbieta Mielczarek
Member

**EXHIBIT A**

[Term Sheet]

THIS PROPOSED TERM SHEET IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF ANY PLAN OF REORGANIZATION OR LIQUIDATION, WHICH WILL OCCUR ONLY PURSUANT TO A DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT

EXECUTION COPY

# IN RE METROPLEX ON THE ATLANTIC, LLC, CASE NO. 15-42499

# JOINT DEBTOR/SECURED LENDER PLAN TERM SHEET

| TERM | DESCRIPTION |
|---|---|
| **CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS** | |
| *Allowed Administrative, Allowed Professional Claims & Priority Claims* | All Allowed Administrative Claims, Allowed Professional Claims and Priority Claims will be paid in full on the later of Effective Date of the Plan, the date such claim is allowed or such other date as agreed to with the holder of such Allowed Claim. |
| *Class 1: Allowed Secured Lender Claim (Impaired-Entitled to Vote)* | The Secured Lender will receive, in respect of the Allowed Secured Lender Secured Claim, the Net Sales Proceeds and net proceeds of Litigation Claims allocated to the Secured Lender under the Waterfall. |
| *Class 2: Allowed Other Secured Claims (Unimpaired-Not Entitled to Vote)* | Each Holder of an Allowed Other Secured Claim [which shall be defined as Allowed Secured Claims which prime the Secured Lender or which are secured by collateral in which the Secured Lender does not hold as interest] shall either:<br>• be paid in full in cash in an amount equal to such Allowed Other Secured;<br>• receive the collateral securing any such Allowed Other Secured Claim and be paid interest required to be paid under section 506(b) of the Bankruptcy Code; or<br>• otherwise be treated in any other manner such that the Allowed Other Secured Claim shall be rendered unimpaired on the later of the Effective Date of the Plan and the date on which such Other Secured Claim becomes an Allowed Other Secured Claim or as soon as reasonably practicable.<br><br>Allowed Other Secured Claims do not include |

| TERM | DESCRIPTION |
|---|---|
| | claims of insiders or affiliates, which are recharacterized and treated, to the extent allowed, as Allowed Equity Interests. |
| *Class 3: Allowed Unliquidated and Disputed Easement Claims [which shall exclude Anderson](Impaired-Entitled to Vote)* | Pro rata share of Class 3 Payment Pool. The distribution to holders of Allowed Unliquidated and Disputed Easement Claims shall be in full satisfaction of any such claims and the holders will release and discharge and be deemed to release and discharge any easement rights held by such holders or which is appurtenant to any real property owned, leased or otherwise occupied by such holders. To the extent such holder (a) votes in favor of the Plan, (b) does not object to the plan and/or (c) accepts any distribution under the Plan, such holder shall be deemed to have consented to the transfer of the property free and clear of any such easement rights pursuant to § 363(f)(2). |
| *Class 4: Allowed Disputed Easement Judgment Claims [which shall be defined as Anderson's compensatory damage claim] (Impaired-Entitled to Vote)* | Pro rata share of Class 4 Payment Pool. The distribution to holders of Allowed Disputed Easement Judgment Claims shall be in full satisfaction of any such claims and the holders will release and discharge and be deemed to release and discharge any easement rights held by such holders or which is appurtenant to any real property owned, leased or otherwise occupied by such holders. To the extent such holder (a) votes in favor of the Plan, (b) does not object to the plan and/or (c) accepts any distribution under the Plan, such holder shall be deemed to have consented to the transfer of the property free and clear of any such easement rights pursuant to § 363(f)(2). |
| *Class 5: Allowed General Unsecured Claims (Impaired-Entitled to Vote)* | Pro rata share of Class 5 Payment Pool. |
| *Class 6: Allowed Punitive Damages Claims (Impaired-Entitled to Vote)* | Pro rata share of Class 6 Payment Pool. |
| *Class 7: Allowed Equity Interests (Impaired-Entitled to Vote)* | Pro rata share of Class 7 Payment Pool. |
| **MEANS FOR IMPLEMENTATION** | |
| *Sale of Property* | The property will be marketed and sold by the Plan Administrator (who will be retained prior to confirmation) free and clear of all liens, claims and interests (except to the extent the Secured Lender elects to provide Stapled Financing) pursuant to 11 U.S.C. § 363(f)(2) & (4). |

| TERM | DESCRIPTION |
|---|---|
| | Pursuant to 11 U.S.C. § 1146(a), the sale shall not be subject to any stamp or other transfer tax, unless the Property is sold pursuant to 11 U.S.C. § 363 outside of a plan. At any sale, the Secured Lender may credit bid all or part of the Allowed Secured Lender Secured Claim. In the event that the Secured Lender submits a credit bid, is the winning bidder and the sale closes, then the Secured Lender will be required to fund Allowed Administrative and Priority Claims, the Class 3 Payment Pool, the Class 4 Payment Pool and the Class 5 Payment Pool in an amount equal to the funding that would have been provided in the event of a cash purchase price in the amount of such credit bid. |
| *Exit Facility* | To the extent necessary, the Secured Lender will make available to the reorganized debtor's estate a secured loan (the "Exit Facility") on the Effective Date, the proceeds of which shall be used to fund payments to holders of Allowed Administrative and Priority Claims and other amounts necessary to implement the Plan. The Exit Facility will be paid in full from the gross sales proceeds prior to the payment of any other obligation in accordance with the Waterfall. The Exit Facility will be secured by a first priority security interest in and lien against all of the Debtor's assets and will be entitled to all of the protections available to a DIP lender under § 364 of the Bankruptcy Code. |
| *Funding of Distributions/ Waterfall* | The Net Sales Proceeds will be distributed in accordance with the following Waterfall:<br><br>• First, to repay all amounts due under the Exit Facility, if any;<br>• Second, to the extent such claims are not paid from the Exit Facility, to pay all Allowed Administrative Claims, Allowed Professional Claims and Allowed Priority Claims;<br>• Third, the aggregate sum of $100,000.00 to fund the Class 3 Payment Pool in the amount of $25,000.00, the Class 4 Payment Pool in the amount of $25,000.00 and the Class 5 Payment Pool of $50,000.00; |

NY02DOCS\1893097.6

| TERM | DESCRIPTION |
| --- | --- |
| | • Fourth, 100% of the Net Sales Proceeds and of the net proceeds of Litigation Claims to the Secured Lender, until the Secured Lender has received the aggregate amount of $27,500,000.00 in respect of the Allowed Secured Lender Secured Claim;<br>• Fifth, 90% of the Net Sales Proceeds and net proceeds of Litigation Claims to the Secured Lender and 10% of the Net Sales Proceeds and net proceeds of Litigation Claims to be allocated to the Class 3 Payment Pool, the Class 4 Payment Pool and Class 5 Payment Pool in the same proportion as the initial funding of such payment pools pursuant to "Third" above, until the Secured Lender has received the total aggregate amount of $29,500,000.00 in respect of the Allowed Secured Lender Secured Claim;<br>• Sixth, 75% of the Net Sales Proceeds and net proceeds of Litigation Claims to the Secured Lender and 25% of the Net Sales Proceeds and net proceeds of Litigation Claims to be allocated to the Class 3 Payment Pool, the Class 4 Payment Pool and Class 5 Payment Pool in the same proportion as the initial funding of such payment pools pursuant to "Third" above, until the Secured Lender has received the total aggregate amount of $33,500,000.00 in respect of the Allowed Secured Lender Secured Claim;<br>• Seventh, 50% of the Net Sales Proceeds and net proceeds of Litigation Claims to the Secured Lender and 50% of the Net Sales Proceeds and net proceeds of Litigation Claims to be allocated to the Class 3 Payment Pool, the Class 4 Payment Pool and Class 5 Payment Pool in the same proportion as the initial funding of such payment pools pursuant to "Third" above;<br>• Eighth, after payment in full of the |

| TERM | DESCRIPTION |
|---|---|
| | Allowed Secured Lender Secured Claim and of all Allowed Claims in Class 3, Class 4 and Class 5, to the Class 6 Payment Pool; and<br>• Ninth, after payment in full of all Allowed Claims in Class 6, to the Class 7 Payment Pool.<br><br>Notwithstanding the foregoing, in no event shall any amount be allocated to the Class 3 Payment Pool, the Class 4 Payment Pool, the Class 5 Payment Pool and/or the Class 6 Payment Pool if all Allowed Claims entitled to payment from such Payment Pool have either been paid, or reserved for, in full without interest, in which case any such amount that would otherwise have been allocated to such Payment will be reallocated to the Secured Lender and, upon payment in full of all the All Allowed Secured Lender Secured Claim, to Class 7.<br><br>The Secured Lender will carve out its lien to permit the funding of distributions to holders of Allowed Claims in accordance with the above Waterfall and the other terms set forth in this Term Sheet. |
| *Sales Process* | The sales process, including any auction, will be run by a Plan Administrator. The Plan Administrator will be retained in advance of confirmation. The selection of the Plan Administrator, as well as the compensation and other terms and conditions of the Plan Administrator's employment, shall be acceptable to the Secured Lender. |
| *Stapled Financing* | The Secured Lender may in its discretion permit a purchaser to assume all or a portion of the secured loan, on terms to be determined by the Secured Lender in its discretion. |
| *Timing* | The sale contemplated above shall occur on or before February 1, 2016 (the "Sale Deadline"), time being of the essence; provided, however, that the Secured Lender in its discretion may elect to extend the Sale Deadline in one or more thirty day increments. In the event that the Sale does not occur on or before Sale Deadline (as such date may be extended in accordance with |

NY02DOCS\1893097.6

| TERM | DESCRIPTION |
|---|---|
| | the foregoing), then the Secured Lender shall schedule a straight auction sale of the property, which sale may be without a "stalking horse." This sale may be pursuant to a plan or may be outside of a pursuant to 11 U.S.C. § 363. The Secured Lender shall have the right to credit bid all or a portion of the Allowed Secured Lender Secured Claim at such auction sale.<br><br>In the event of such an auction sale, the Net Proceeds will be distributed in accordance with the following waterfall (the "Auction Waterfall"):<br><br>• First, to repay all amounts due under the Exit Facility, if any;<br>• Second, to the extent such claims are not paid from the Exit Facility, payment in full of other Allowed Administrative, Allowed Professional Claims and Priority Claims;<br>• Third, the aggregate sum of $100,000.00 to fund the Class 3 Payment Pool in the amount of $25,000.00, the Class 4 Payment Pool in the amount of $25,000.00 and the Class 5 Payment Pool of $50,000.00;<br>• Fourth, 100% of the Net Sales Proceeds to the Secured Lender, until the Secured Lender has received Net Sales Proceeds in payment in full of the Allowed Secured Lender Secured Claim and the Allowed Secured Lender Administrative Claim;<br>• Fifth, 100% to the Class 6 Payment Pool; and<br>• Sixth, any remaining amounts to the Class 7 Payment Pool.<br><br>In the event that the Secured Lender submits a credit bid at the auction sale, is the winning bidder and the sale closes, then the Secured Lender will be required to fund Allowed Administrative and Priority Claims, the Class 3 Payment Pool, the Class 4 Payment Pool and the Class 5 Payment Pool in an amount equal to the funding that would have been provided in the |

| TERM | DESCRIPTION |
|---|---|
| | event of a cash purchase price in the amount of such credit bid. |
| **LITIGATION TRUST** | |
| *Litigation Claims* | Litigation Claims are all claims held by the Debtor's estate, other than Released Claims. Any Litigation Claims will be transferred to a Litigation Trust. Litigation Claims will not include claims held by any creditor, including but not limited to Guaranty Claims held by the Secured Lender. |
| *Prosecution and Settlement of Litigation Claims* | A litigation trustee (who may be the same person as the Plan Administrator) will be appointed to prosecute and settle Litigation Claims. |
| **RELEASES AND EXCULPATIONS; CLAIMS ALLOWANCE** | |
| *Releases and Exculpations by Debtor and Debtor's Estate* | The Debtor, its estate, its equity holder and Jerzy Symczyk (the "Debtor Parties") will release any and all claims possessed by or on behalf of the Debtor Parties against the Secured Lender, the receiver, etc. and their respective servicers, affiliates, professionals, etc. (the "Lender Parties"). These parties will also receive customary exculpations. These releases and exculpations will include all derivative claims that a creditor or interest holder might otherwise be entitled to assert on behalf of the Debtor Parties. |
| *Releases and Exculpations by Nondebtors* | In consideration of the Secured Lender's agreement to carve out its liens to permit the funding of the Payment Pools, as well as the other distributions under the Plan, any nondebtor that does not effectively opt out will be deemed to have released and exculpated the Secured Lender, the receiver, etc. |
| *Releases and Exculpations by the Secured Lender* | Upon the Sale of the Property, provided that the Debtor Parties shall not have breached any of their obligations under the Plan, the Plan Support Agreement or any other post-petition agreement between any of the parties, the Secured Lender Parties shall release and exculpate the Debtor Parties and any Guaranty Claims; provided, however, that the foregoing release and exculpation shall not release or exculpate any claim, such as environmental claims, that would survive a foreclosure or release of the mortgage. The failure to meet deadlines shall not be a breach by the Debtor Parties if such failure was solely the result of the |

NY02DOCS\1893097.6

| TERM | DESCRIPTION |
|---|---|
| | schedule of the Bankruptcy Court or any delay by the Bankruptcy Court in entering an order required hereunder. |
| *Allowance of Allowed Secured Lender Secured Claim* | The Secured Lender shall have an Allowed Secured Claim (the "Allowed Secured Lender Secured Claim") in an amount equal to all amounts due under and in respect of the Loan and the Loan Documents, including but not limited to (a) the outstanding principal balance, (b) all accrued and unpaid interest on amounts due to the Secured Lender, (c) all fees, charges and similar items owed by the Debtor to the Secured Lender, (d) all amounts advanced or incurred by the Secured Lender to or for the benefit of the Debtor or the Debtor's estate before the Petition Date and (e) all expenses, including professional fees and disbursements, paid or incurred by the Secured Lender. |
| *Allowance of Allowed Secured Lender Administrative Claim* | The Secured Lender shall have an Allowed Administrative Claim in an amount equal to all amounts advanced or incurred by the Secured Lender to or for the benefit of the Debtor or the Debtor's estate on or after the Petition Date. |
| *No Offset* | The Allowed Secured Lender Claim and the Allowed Secured Lender Administrative Claim will be allowed in full without offset, reduction, etc. The security interests of the Secured Lender will be allowed as perfected and unavoidable first priority security interests in and liens against all of the Debtor's assets, subject only to any perfected and unavoidable liens that prime the Secured Lender's mortgage under applicable state law. |
| *Release of Division Place Mortgage/ Consent to Foreclosure* | In the event that the Secured Lender receives Net Sales Proceeds in respect of the Allowed Secured Lender Secured Claim in an amount equal to or greater than $27,500,000.00, then the Secured Lender will, at no expense to the Secured Lender, release its mortgage against the property located at 15 Division Place, Brooklyn, NY (the "Division Place Collateral"), provided that the owner of the Division Place Collateral, the equity holder(s) and any affiliated parties delivers to the Secured Lender a release, exculpation and covenant not to sue in form and substance acceptable to the Secured Lender. |

| TERM | DESCRIPTION |
| --- | --- |
| | In the event that the Secured Lender receives Net Sales Proceeds in respect of the Allowed Secured Lender Secured Claim in an amount less than $27,500,000.00, then the owner of the Division Place Collateral, the equity holder(s) and any affiliated parties will, at the election of the Secured Lender, either consent to and cooperate with a "friendly" foreclosure of the Division Place Collateral or transfer same to the Secured Lender or its designee/nominee pursuant to a deed in lieu transaction. In either case, the owner of the Division Place Collateral, the equity holder(s) and any affiliated parties shall deliver to the Secured Lender a release, exculpation and covenant not to sue in form and substance acceptable to the Secured Lender. The owner of the Division Place Collateral, the equity holder(s) and any affiliated parties shall enter in an agreement with respect to the foregoing in form and substance acceptable to the Secured Lender. Without limiting the foregoing, upon approval of a plan support agreement by the Court, the appeal filed by the owner of the Division Place Collateral shall be withdrawn and dismissed. |
| *Prosecution of Plan* | The Debtor and the Secured Lender will be co-proponents of the Plan and will diligently seek the confirmation and the effectiveness of the Plan. Without limiting the foregoing, in the event that either party fails to do so, then the other party may prosecute the Plan as the sole proponent thereof. |
| *Reservation of Rights* | Except as expressly set forth herein, the Secured Lender reserves all of its rights and remedies against the Debtor and all other persons under the Bankruptcy Code and any application non-bankruptcy law. |