UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                  Chapter 11

          Metroplex on the Atlantic, LLC,              Case No. 15-42499-cec

                              Debtor.
------------------------------------------------------------x


DECISION AFTER HEARING



APPEARANCES

Bonnie Pollack, Esq.                          Philip Smaylovsky, Esq.
Alissa Piccione, Esq.                         Peter J. Amend, Esq.
Cullen & Dykman LLP                           Orrick, Herrington & Sutcliffe LLP
100 Quentin Roosevelt Boulevard               51 West 52nd Street
Garden City, NY 11530                         New York, New York 10019
*Counsel for the Debtor*                      Telephone: (212) 506-5000
                                              *Counsel for Richard George*

Lawrence P. Gottesman, Esq.
Allegaert Berger & Vogel LLP
111 Broadway, 20th Floor                      William Curtin, Esq.
New York, New York 10006                      Office of the United States Trustee
*Counsel for Secured Creditor DOF IV*         201 Varrick Street, Suite 1006
*Metroplex, LLC*                              New York, New York 10014
                                              *Counsel for the United States Trustee*



CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the joint motion (the "Motion") of Metroplex on the Atlantic, LLC (the "Debtor") and DOF IV Metroplex, LLC ("DOF" and, together with the Debtor, the "Movants") seeking an order in support of confirmation of their Amended Chapter 11 Plan determining that the Debtor's property located in Far Rockaway, Queens County, New York may be sold under the Plan pursuant to § 363(f)(4) and (5)[1] free and clear of all claims and interests including an alleged easement running with the land. For the reasons stated below, the Motion is granted.

BACKGROUND

On May 28, 2015 (the "Filing Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. No trustee has been appointed in this case and the Debtor has continued to operate its business as a debtor in possession. The Debtor is the owner of certain real property located at 120 Beach 25th Street a/k/a 121 Beach 26th Street a/k/a Block 15817, Lot 1 in Far Rockaway, Queens County, New York (the "Property"). DOF currently holds a mortgage encumbering the Property. Pursuant to a stipulation between the Debtor and DOF, the amount of DOF's claim has been fixed at approximately $38 million. (Join Mot. to Approve Stip. Ex. A § 12(a), ECF Doc. No. 88.)[2] The Property is also allegedly subject to a 24-foot wide easement (the "Easement") running through the middle of Block 15817 (the "Block"). (Obj. of Richard George ¶ 1, ECF Doc. No. 144 (hereinafter "George Obj.").)

A.    The Property

The Block, where the Property is located, is bounded by Beach 25th and 26th Streets on the east and west, Seagirt Avenue on the north, and the Atlantic Ocean on the south. (George Obj. ¶ 1). The Property is located at the southern end of the Block. (Decl. of Peter J. Amend in Supp.

---

[1] All statutory references are to the Bankruptcy Code, unless otherwise indicated.
[2] All references to "ECF Doc. No." refer to the docket in this case, Case No. 15-42499, unless otherwise noted.

of the Obj. of Richard George Ex. A, ECF Doc. No. 146 (hereinafter "George Decl.").) It stretches the width of the Block fronting on both Beach 25th and Beach 26th Streets and bordered on the south by a public beach belonging to the City of New York. (George Decl. Ex. A.) The Far Rockaway boardwalk (the "Boardwalk") is located directly south of the Property. (Joint Mot. for an Order in Aid of Confirmation ¶ 10, ECF Doc. No. 140 (hereinafter "Confirmation Mot.").) North of the Property are several bungalows. (Confirmation Mot. ¶ 10.) The bungalows lie on both sides of the Block, along Beach 25th and Beach 26th Streets, with some facing the streets (the outside bungalows) and some facing the middle of the block (the inside bungalows). (Tr. of July 15, 2015 Hr'g 27:17-20, ECF Doc. No. 33.)

In 2007, the Debtor began construction of a 126 unit, fifteen-story condominium complex on the Property (the "Building"). (Am. Disclosure Statement § II.A, ECF Doc. No. 130 (hereinafter "Am. Disc."); Tr. of Feb. 17, 2016 Hr'g 39:23-40:5, ECF Doc. No. 157 (hereinafter "Trial Tr.").) The Debtor substantially completed the majority of the Building including the entire exterior, but before construction could be fully completed, the Debtor defaulted on its obligations under the mortgage held by DOF's predecessor in interest. (Am. Disc. § II.A.) DOF commenced foreclosure proceedings, and a foreclosure judgment was entered on October 1, 2014. (Am. Disc. § II.A.)

B.    The Easement

The Easement was granted to the owners of property on the Block by express grant in 1922. (George Obj. ¶ 1.) The Easement is a 24-foot right of way running down the middle of the Block from Seagirt Avenue to the Atlantic Ocean and is reflected in the Debtor's deed to the Property. (George Decl. Ex. A.; George Decl. Ex. B.) In addition to the Easement, two other easements were granted on either side of the Block that are now Beach 25th and Beach 26th Streets. (George Decl. Ex. B; Confirmation Mot. ¶ 11.)

The Boardwalk lies to the south of the Property and was built in the 1930s. (Confirmation Mot. ¶ 11.) It runs along the beach across several blocks and streets. (Debtor's Ex. B; Aff. of Jeff Azuse in Further Supp. of Mot. in Aid of Confirmation, Ex. A, ECF Doc No. 149 (hereinafter "Azuse Decl. 2").) The Boardwalk is raised a few feet above the ground and is easily accessible by ramps at the ends of Beach 25th and Beach 26th Streets. (Debtor's Ex. A; Aff. of Jeff Azuse in Supp. of Mot. in Aid of Confirmation, Ex. A, ECF Doc No. 140-1 (hereinafter "Azuse Decl. 1").) Currently, the Boardwalk is approximately three feet above the ground. (Trial Tr. 31:8-10; Debtor's Ex. B.) Accessing the beach via the Easement would require a person to first navigate through the thicket of trees and plants in front of the Boardwalk and then crawl underneath the Boardwalk. (Debtor's Ex. A; Debtor's Ex. B; Trial Tr. 31:8-32:1.) George contends that prior to the construction of the building, the Boardwalk was around ten to twelve feet above the ground, and that he maintained a path through the vegetation. (Trial Tr. 43:1-9.) He testified that the Debtor planted new trees and bushes over the Easement which caused additional sand to accumulate under the Boardwalk resulting in the reduction of the height of the Boardwalk. (Trial Tr. 46:11-48:16.) However, Elzbieta Mielczarek ("Mielczarek"), the principal of the Debtor, testified that the height of the Boardwalk is similar now to what it was before construction of the Building. (Trial Tr. 40:12-41:5.)

Owners of the inside bungalows (of which George is one), use the Easement to access their properties from Seagirt Avenue to the north and, allegedly, prior to the construction of the Building, also used it to get to the beach by going underneath the Boardwalk to the south. (Trial Tr. 43:5-13, 49:14-50:13.) Both before the construction of the Building and after, all residents of the Block were able to access the Boardwalk and the beach by utilizing the ramps at the ends of Beach 25th and Beach 26th streets. (Trial Tr. 48:22-49:13.) Residents of the inner bungalows are

4

also able to walk directly through the openings between the bungalows and do not have to walk

north to Seagirt Avenue to access Beach 25th and Beach 26th Streets. (Trial Tr. 59:20-60:9.)

C.    The Easement Litigation

In 2006, the Debtor commenced an action in the New York State Supreme Court to quiet

title to the Property (the "Quiet Title Action"). (George Obj. ¶ 9.) The Debtor sought a declaratory

judgment that the Easement had terminated on January 1, 1930. (George Obj. ¶ 9.) The Debtor,

however, failed to prosecute the Quiet Title Action, and the case was dismissed by a judgment

dated March 18, 2014. (George Obj. ¶ 11.)

Two of the defendants alleged in the Quiet Title Action to hold rights to the Easement have

appeared in this case: Susan Anderson ("Anderson") and Richard George ("George"). Anderson's

claim is based on counterclaims asserted in the Quiet Title Action for violations of the Easement.

(Confirmation Mot. ¶ 14.) Because the Debtor abandoned the Quiet Title Action, the court struck

the Debtor's answer to the counterclaims and entered judgment in favor of Anderson.

(Confirmation Mot. ¶ 15; George Obj. ¶ 13.) The court found that there was a valid easement, and

that the Debtor had intentionally and willfully violated the easement. (Anderson Judgment 14-19.)[3]

The judgment is in the amount of $650,400.00, comprising $115,000.00 in damages for diminution

of value in Anderson's property, $35,400.00 in damages to Anderson's property, and $500,000.00

in punitive damages. (Anderson Judgment 11.) George was also a defendant in the Quiet Title

Action, but did not assert any counterclaims. (Tr. of Feb. 18, 2016 Hr'g 63:15-65:15.)

---

[3] Exhibit M to the George Decl., ECF Doc. No. 146-13, was admitted into evidence at the Hearing. It consists of a Notice of Entry of Judgment filed in the Quiet Title Action followed by a true and correct copy of the Final Judgment as Exhibit A. Exhibit A consists of a Notice of Settlement of Judgment, a Final Judgment, a Stipulation, and a transcript of the inquest on damages held on Anderson's Counterclaim. For convenience, this entire document will be referred to as the "Anderson Judgment," and the referenced page numbers will refer to the individual pages of the PDF file as it appears on the docket.

In addition to the Quiet Title Action, George also filed an action seeking to halt the construction of the building.[4] See George v. Metroplex on the Atlantics, LLC, Index No. 6138/06; (Limited Obj. of Susan Anderson and Richard George to Debtor's DIP Financing Motion ¶ 10, ECF Doc. No. 50 (hereinafter "George DIP Obj.").) The court denied George's request for a preliminary injunction and construction continued. (George DIP Obj. ¶ 10.) According to the transcript attached to the Anderson Judgment, construction was not halted because the Debtor represented to the court that the Easement had terminated, and, even if it had not terminated, they would accommodate it in the construction; however, the Debtor did not make any accommodations for the Easement. (Anderson Judgment 19.)

D.    The Plan

On January 21, 2016, the Movants filed an amended plan (the "Plan") and an amended disclosure statement (the "Disclosure Statement"). (Am. Chapter 11 Plan, ECF Doc. No. 129 (hereinafter "Plan"); Am. Disclosure Statement, ECF Doc. No. 130.) The Plan proposes to sell the Property at auction pursuant to § 363 free and clear of all claims and interests including the Easement. (Plan Art. IV.A.) Under the terms of the Plan, DOF has agreed to allow $100,000.00 of the proceeds from the sale[5] of the Property to be paid to certain creditors, including any alleged easement holders, before DOF recovers on account of its claim. (Plan Art. IV.E.) Of that $100,000.00, $25,000.00 will go to fund the Class 4 Payment Pool,[6] $25,000.00 will go to fund

---

[4] This action was not the first time George has been involved in litigation over construction along the Far Rockaway beach. In the last ten years, he has filed at least three actions seeking to halt or limit construction and development in the neighborhood. See George v. Evans, 311 Fed. Appx. 426 (2d Cir. 2009); George v. Home Impressive, Inc., 180 Fed. Appx. 256 (2d Cir. 2006); George v. NYC Dep't of City Planning, 436 F.3d 102 (2d Cir. 2006). George's claims were dismissed in all three cases, and, in the most recent case, the Second Circuit warned George that repeatedly raising the same frivolous claims could subject him to sanctions. George v. Evans, 311 Fed. Appx. at 428-29. George is also the president of the Beachside Bungalow Preservation Association, an organization dedicated to preserving the bungalows in the neighborhood. (Trial Tr. 53:5-11.)

[5] DOF is also entitled to credit bid at any sale of the Property, but if it does so and is the successful bidder, it is required to pay the $100,000.00 in cash itself. (Plan Art. IV.D.6.)

[6] Capitalized terms not defined herein shall have the same meaning as used in the Plan.

the Class 5 Payment Pool, and $50,000.00 will go to fund the Class 6 Payment Pool. (Plan Art. IV.E.) In the event the Net Sale Proceeds exceed $27,500,000.00, additional funds will be directed to the Payment Pools pursuant to the Waterfall. (Plan Art. IV.E.) Class 4 consists of all Allowed Unliquidated and Disputed Easement Claims, including George's claim. (Plan Art. III.B; Claim No. 11.[7]) As of the Easement Claim Bar Date,[8] only one other person had filed a claim based on the Easement. (Claim No. 13.) Class 5 consists of all Allowed Disputed Easement Judgment Claims, including Anderson's claim (Plan Art. III.B; Claim No. 10.)

E.      Procedural History

Prior to filing the Plan, the Debtor and DOF engaged in extensive litigation, including a motion filed by the Debtor to approve post-petition financing secured by a lien senior to DOF's (the "DIP Motion") and motions filed by DOF to dismiss the case and lift the automatic stay. (Am. Disc. § III.C.) After extensive negotiation, the Debtor ultimately withdrew the DIP Motion, and the Movants then entered into a Plan Support Stipulation and Term Sheet on November 19, 2015. (Am. Disc. § III.C.) On December 14, 2015, an order was entered approving the Plan Support Stipulation and Term Sheet. (Order, ECF Doc. No. 109) The Movants then filed the first plan and disclosure statement as joint proponents on December 23, 2015. (Chapter 11 Plan, ECF Doc. No. 114; Disclosure Statement, ECF Doc. No. 115.)

On December 23, 2015, the Debtor also filed a motion to approve the first disclosure statement (the "Disclosure Motion.). (Mot. to Approve Disclosure Statement, ECF Doc. No. 116.) Both George and the United States Trustee filed objections to the Disclosure Motion. (Obj. of Richard George to Debtor's Mot. for an Order Approving Disclosure Statement, ECF Doc. No.

---

[7] All references to "Claim No." refer to claims filed in this case, Case No. 15-42449, unless otherwise specified.
[8] On November 16, 2015, an order was entered establishing December 31, 2015 as the last day for all purported easement holders to file claims (the "Easement Claim Bar Date"). (Order, ECF Doc. No. 86.) That order was served on all the record property owners for the Block. (Aff. of Service, ECF Doc. No. 87.)

123; Obj. of the United States Trustee to the Debtor's Mot. for an Order Approving Disclosure Statement, ECF Doc. No. 124.) A hearing was held on the Disclosure Motion on January 20, 2016. The Debtor subsequently filed the Plan and Disclosure Statement on January 21, 2016. On January 22, 2016, an order was entered approving the Disclosure Statement. (Order Approving Am. Disclosure Statement, ECF Doc. No. 132.) On January 29, 2016, the Debtor filed the Motion. (Mot. for Order in Aid of Confirmation, ECF Doc. No. 140.) George filed an Objection on February 8, 2016 (the "George Objection"). (George Obj.) On February 12, 2016, DOF filed a reply on its own behalf, and the Movants field a joint reply to the George Objection. (Reply to Obj. of Richard George, ECF Doc. No. 148; Joint Reply to Obj. to Mot., ECF Doc. No. 149.) On February 17, 2016, an evidentiary hearing (the "Hearing") was held on the Motion and the George Objection.

<u>DISCUSSION</u>

The ultimate question to be addressed in deciding this motion is whether a court applying New York law would issue a mandatory injunction requiring the Debtor to tear down the Building to restore the Easement. Assuming the Easement is valid, the Building obstructs the southern portion of it and prevents anyone from using it to walk south across the Property. The south end of the Easement is at the end of the edge of the Boardwalk, and there is no ramp for beach access there. Accessing the beach via the Easement, even without the Building, is difficult if not impossible due to the height of the Boardwalk, which is three feet above the ground, and the presence of extensive vegetation along the land side of the Boardwalk. All the residents of the Block have easy access to both the Boardwalk and the beach via the ramps on Beach 25th and Beach 26th Streets. Restoring the Easement would be of no practical benefit to anyone (except, perhaps, providing personal satisfaction to George). On the other hand, removal of the building

would impose a substantial burden on the Debtor, DOF, and all the other unsecured creditors in this case. The Property is the only asset the Debtor owns with any significant value. Removing the Building would significantly reduce the value of the Property and eliminate any hope of the Debtor's creditors (including George) realizing on their claims in this case. The Plan as proposed provides for payments to holders of Allowed Easement Claims and other unsecured creditors. If the Property cannot be sold free and clear of the Easement, the Plan cannot be confirmed and there will be no recovery for creditors other than DOF in this case.

A.      Section 363(f)

Section 363 of the Bankruptcy Code governs the use, lease, or sale of property of the estate. 11 U.S.C § 363. Under § 363(b), a debtor in possession, such as the Debtor, may sell property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. §§ 363(b) and 1107. In addition, § 363(f) allows a debtor in possession to sell such property

> free and clear of any interest in such property of an entity other than the estate, only if--
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C § 363(f). The language of this section is disjunctive; thus, only one of the conditions set forth in § 363(f) need be satisfied in order to sell the property free and clear of claims and interests. Collier on Bankruptcy ¶ 363.06 (16th ed.).

*1.   The Easement is an "Interest" Under § 363(f)*

"An easement is more than a personal privilege to use another's land, it is an actual interest in that land." Sutera v. Go Jokir, Inc., 86 F.3d 298, 301-02 (2d Cir. 1996) (citing *Trustees of*

*Southampton v. Jessup,* 56 N.E. 538, 539 (N.Y. 1900)). It is, in other words, a property right or an interest <u>in rem</u>. The term "interest in such property," as used in § 363(f), is not defined in the Bankruptcy Code. Some courts adopt a narrow definition, limiting the term to <u>in rem</u> property interests. <u>In re USA United Fleet Inc.</u>, 496 B.R. 79, 85 (Bankr. E.D.N.Y. 2013). The Second Circuit takes the more expansive view, defining "interest in such property" as any "claims that 'arise from the property being sold.'" <u>In re Chrysler LLC</u>, 576 F.3d 108, 126 (2d Cir.) <u>cert. granted, judgment vacated sub nom.</u> <u>Indiana State Police Pension Trust v. Chrysler LLC</u>, 558 U.S. 1087, 130 S. Ct. 1015, 175 L. Ed. 2d 614 (2009) and <u>vacated sub nom.</u> <u>In re Chrysler, LLC</u>, 592 F.3d 370 (2d Cir. 2010) (quoting <u>In re Trans World Airlines, Inc.</u>, 322 F.3d 283, 290 (3d Cir. 2003)).

In this case, the Easement is an <u>in rem</u> interest. Thus, even using the narrower definition of "interest in such property," the Easement would be subject to § 363(f). George, however, argues that the Property cannot be sold free and clear of the Easement under § 363(f) unless George consents (363(f)(2)) or the Easement is in bona fide dispute (363(f)(4)). To support this argument, George cites <u>Silverman v. Ankari (In re Oyster Bay Cove, Ltd.)</u>, 196 B.R. 251 (E.D.N.Y. 1996) (<u>Oyster Bay II</u>). <u>Oyster Bay II</u> affirmed the order of the bankruptcy court in <u>In re Oyster Bay Cove, Ltd.</u>, 161 B.R. 338 (Bankr. E.D.N.Y. 1993) (<u>Oyster Bay I</u>).

In <u>Oyster Bay I</u>, the trustee filed a motion seeking to hold the winning bidder of an auction held pursuant to § 363 in default for failure to close on the sale. <u>Oyster Bay I</u>, 161 B.R. at 341. The winning bidder opposed the motion, arguing, among other things, that he was excused from performance because the trustee had failed to deliver marketable title as required under the terms and conditions of the sale. <u>Id.</u> at 342-43. He alleged the title was unmarketable because of an offer of dedication to the Incorporated Village of Oyster Bay Cove of a road running through the property. <u>Id.</u> The bankruptcy court held that the trustee had delivered marketable title because the

terms and conditions of the sale "explicitly provided, *inter alia,* that the property was being sold 'as is' and subject to 'any covenants, restrictions and easements of record.'". Id. at 343. In addition to the contract language, the bankruptcy court held that, "[u]nder New York law, easements and encroachments, particularly when they are open and notorious, do not automatically render title unmarketable. . . ." Id. at 344. Maps were prominently displayed at the auction showing the road running through the property. Id. at 343. Because the sale was "as is" and subject to "any covenants, restrictions and easements of record," and because the dedication at issue was open and notorious, the winning bidder was in default and the trustee was entitled to retain the deposit as liquidated damages. Id. at 345.

The winning bidder appealed this decision to the district court. Oyster Bay II, 196 B.R. at 253. The district court affirmed the bankruptcy court, but then went beyond the holding of Oyster Bay I, stating "[a]s the Bankruptcy Court correctly points out, a sale 'free and clear of liens and other interests' has no impact on restrictions of record that run with the land." Id. at 255. The district court went on to say that

> [c]learly, 11 U.S.C.A. § 363(f) and Bankruptcy Rule 6004, which refer to the sale of land "free and clear" from these "interests," are not intended to sever easements and other non-monetary property interests that are created by substantive State law. Indeed, absent the consent of the owner of the easement or the easement being in bona fide dispute, the Bankruptcy Code does not even allow the Bankruptcy Court to authorize a sale of the property "free and clear" of an easement.

Id. at 255-56 (footnotes omitted).

These statements are dicta. In Oyster Bay I, whether the property *could* be sold free and clear of an easement or other restriction running with the land was not at issue. The bankruptcy court made no determination regarding whether property could be sold free and clear of the easement. Rather, it decided that, based upon the language of the court's order approving the terms and conditions of the sale, the property was offered for sale subject to the easement:

> The Order which approved the Trustee's application to sell the property free and clear of all liens, claims encumbrances and rights of others of whatever kind or nature (the "Liens"), with such liens to attach to the proceeds of the sale of the property, means that the property was to have been sold free and clear of liens *against the property, i.e.* mortgage liens, judgment liens, etc., which could attach to the proceeds. The language does not indicate that the property is to be sold free and clear of non-monetary restrictions of record which run with the land. The recitation of a dedication of a street or road to the village is a statement of fact as is the recitation of metes and bounds which runs with the land, and describes that which is being offered for sale.

Oyster Bay I, 161 B.R. at 343. The language of the terms and conditions of the sale in Oyster Bay I specifically stated that the property was *not* being sold free and clear of "any covenants, restrictions and easements of record." Id. Whether the property *could* be sold free and clear of an easement under § 363(f) was not at issue in Oyster Bay I. Therefore, the district court's statements that property can *never* be sold free and clear of an easement unless the holder consents or there is a bona fide dispute are dicta. It is well settled that dictum is of no precedential value. In re McBreaty, 335 B.R. 513 518-19 (Bankr. E.D.N.Y. 2005) (holding that bankruptcy court was not bound by dictum from district court); see also Jama v. Immigration & Customs Enf't, 543 U.S. 335, 367 n.12, 125 S. Ct. 694, 160 L. Ed. 2d 708 (2005) ("Dictum settles nothing, even in the court that utters it.").

In addition, the district court provides no authority for its statement, citing only § 363(f) and Bankruptcy Rule 6004 in it its discussion of the sale of property free and clear of easements. Oyster Bay II, 196 B.R. at 255-56. Nothing in the text of § 363(f) suggests that "any interest in such property," of which property of the estate may be sold free and clear, does not include easements. The district court's opinion goes on to state, in a footnote, that property may only be sold free and clear of easements under §§ 363(f)(2) and (4), without any authority or discussion. It is unclear why different rules should apply to subsections (f)(2) and (f)(4) than to the other subsections in § 363(f), and the district court supplies no reason or authority for the distinction.

George also cites to <u>Koepp v. Holland</u>, 688 F. Supp. 2d 65 (N.D.N.Y. 2010) and <u>City of New York v. Nat'l R.R. Passenger Corp.</u>, No. 06-cv-793, 2008 WL 5169636 (E.D.N.Y. 2008) for the proposition that property may not be sold free and clear of an easement under § 363(f). In these two cases, however, the only authority for the proposition that property may not be sold free and clear of an easement is <u>Oyster Bay II</u>. <u>See</u> <u>Koepp</u>, 688 F. Supp. 2d at 92; <u>City of New York</u>, 2008 WL 5169636 at *8. As <u>Oyster Bay II's</u> discussion of easements in the context of § 363(f) is dictum, the precedential value of those two cases is similarly limited.

Several cases support the proposition that property may be sold free and clear of an easement, like any other in interest in property, under all the prongs of § 363(f), including subsection (f)(5). In <u>In re Dulgerian</u>, an easement holder objected to a motion seeking to sell property free and clear of an easement. No. 06-10203, 2008 WL 220523, at *2 (Bankr, E.D. Pa. Jan. 25, 2008). The court held that property could be sold free and clear of an easement under § 363(f) just like any other property interest. <u>Id.</u> at *4. The court then conducted an analysis under Pennsylvania state law and determined that the applicable law allowed the easement to be extinguished in a sale, and that the property could therefore be sold free and clear of the easement under § 363(f)(1). <u>Id.</u> The <u>Dulgerian</u> court did determine that <u>Oyster Bay II</u> was "distinguishable because there, apparently, the relevant law did not provide for elimination of the easement." <u>Id.</u> at *5. <u>Oyster Bay II</u>, however, does not contain any discussion of New York state law regarding easements or whether a party could be compelled to accept a monetary satisfaction of such interest.

In <u>Newco Energy v. Energytec, Inc. (In re Energytech, Inc.)</u>, a holder of a purported covenant running with the land challenged whether a sale of the debtor's property was free and clear of its interest. 739 F.3d 215, 218 (5th Cir. 2013). The bankruptcy court found that the interest in question was not a covenant and the district court affirmed. <u>Id.</u> The Fifth Circuit, however,

vacated, finding that the interest was a covenant running with the land under state law. Id. 217, 225. The court then remanded the case to the bankruptcy court to determine whether the holder of the covenant could be compelled to accept monetary satisfaction under state law. Id. at 225-26. Implicit in this decision is the determination that property may be sold free and clear of a covenant running with the land if the holder may be compelled to accept monetary satisfaction. The Fifth Circuit made no distinction between property interests running with the land and other types of interests. See also In re Jurgielewicz Duck Farm, No 8-10-70231-478, 2010 WL 2025503, at *5 (holding that a restrictive covenant running with the land was an interest subject to § 363(f));[9] In re Daufuskie Island Properties, LLC, 431 B.R. 626, 643 (Bankr. D.S.C. 2010) (holding a that covenant running with the land was an interest subject to § 363(f)). A covenant running with the land is an interest in property similar to an easement, and there is no reason to treat these property interests differently under § 363(f). See Restatement (Third) of Property (Servitudes) § 1.1-1.3. Thus, relevant precedent provides no basis to conclude that property may not be sold free and clear of an easement if one of the conditions in subsection § 363(f) is satisfied.

### 2. George Can Be Compelled to Accept Monetary Satisfaction for the Easement Under New York State Law

Under New York law, a party whose easement rights are violated by an encroachment generally has the right to seek "an injunction directing the removal" of the encroaching structure. N.Y. Real Prop. Acts. Law § 871(1). That statute, however, specifically provides that a court in such an action may "award damages in an appropriate case in lieu of an injunction or to render such other judgment as the facts may justify." Id. Thus, whether an easement holder is entitled to an injunction, or may be compelled to accept damages, depends on the facts and circumstances of

---

[9] The court ultimately held that the property could not be sold free and clear of the covenant in that case because the covenant could not be extinguished under applicable non-bankruptcy law, nor could the holder be compelled to accept monetary satisfaction. Jurgielewicz Duck Farm, 2010 WL 2025503 at *8.

the case. In deciding whether to grant an injunction, New York state courts will weigh the equities. Forstmann v. Joray Holding Co., 154 N.E. 652, 654 (N.Y. 1926). The analysis gives consideration "to factors such as the extent of impairment created by the encroachment, the defendant's hardship in removing the encroachment, whether any alternatives would afford more equitable relief, or whether money damages would have been a just and adequate remedy." Marsh v. Hogan, 919 N.Y.S.2d 536, 538 (N.Y. App. Div. 3d Dep't 2011).

The balance of the equities, however, will generally cut against requiring an owner to tear down a completed structure. See Evangelical Lutheran Church of the Ascension of Snyder v. Sahlem, 172 N.E. 455, 457 (N.Y. 1930) ("Inequity there may be in a demand for a mandatory injunction that will tear a completed building down. . . ."); Angiolillo v. Town of Greenburgh, 801 N.Y.S.2d 629, 631 (N.Y. App. Div. 2d Dep't 2005) ("As a general rule, a mandatory injunction to remove or destroy a building is a drastic remedy which will only be granted if the benefit to the movant if the injunction were granted and the irreparable harm to the movant if the injunction were not granted substantially outweighs the injury to the party against whom the injunction is sought."); Sunrise Plaza Associates, L.P. v. Int'l Summit Equities Corp., 733 N.Y.S.2d 443, 445 (N.Y. App. Div. 2d Dep't 2001) ("Where the removal or destruction of a building is the object of an injunction, the courts will generally exercise caution in granting such relief, and will generally not do so unless there is a substantial benefit to be gained by the plaintiff."). New York courts are reluctant to issue an "injunction merely for the purpose of protecting a technical right where the defendant has acted innocently, and when it will produce great public or private mischief." Andrews v. Cohen, 116 N.E. 862, 863 (N.Y. 1917); see also Garvey v. Long Island R. Co., 54 N.E. 57, 60 (N.Y. 1899) ("[A] court of equity 'is not bound to issue an injunction when it will produce great public or

private mischief merely for the purpose of protecting a technical or unsubstantial right.'") (quoting Gray v. Manhattan R. Co., 28 N.E. 498, 499 (N.Y. 1891)).

George, however, relies on two cases for a different rule: that New York courts will issue an injunction to tear down a completed building where the defendant willfully violated the plaintiff's property rights and where the property rights so violated are substantial. In Andrews v. Cohen, the Court of Appeals held that the rule against requiring demolition of completed buildings "is to be applied with great caution and never where the property affected is substantial, and where the defendant has full knowledge of the facts." Andrews, 116 N.E. at 863. In Andrews, an easement holder sought an injunction to remove a building that had encroached on the easement. Id. at 862. The trial court granted the injunction, but the Appellate Division reversed. Id. at 862-83. The Court of Appeals reversed, holding that an injunction was appropriate because the defendant had full knowledge of the easement, and the property affected by the encroachment was substantial. Id. at 863. In Batchelor v. Hinkle, a property owner sued a neighboring property owner seeking an injunction to remove an encroaching building. 125 N.Y.S. 929, 929-30 (N.Y. App. Div. 1std Dep't 1910). The trial court determined that even though the encroachment was willful, an injunction still was not proper due to the balancing of the equities. Id. at 930. The Appellate Division reversed, holding that because the violation was willful and the property had substantial value, an injunction should have been issued. Id. at 932. Some more modern cases also recite this rule. See, Sahlem, 172 N.E. at 457-58; Sussman Volk Co. v. 88 Delicatessen, Inc., 100 N.Y.S.2d 303, 307 (N.Y. Sup. Ct. 1950).

Despite this stated rule, however, Andrews is the only case cited by George and the only case this Court can find that finally determined that a completed structure should be removed, even when the defendant's actions were willful. In Batchelor v. Hinkle, after the Appellate Division

remanded the case with instruction to issue an injunction, the trial court issued the injunction and the Appellate Division affirmed. Batchelor v. Hinkle, 133 N.Y.S. 501 (N.Y. App. Div. 1st Dep't 1912). The Court of Appeals then reversed, finding that the property right at issue was actually a covenant and not an easement. Batchlor v. Hinkle, 104 N.E. 629, 630-31 (N.Y. 1914). The court held that due to the changed circumstances of the neighborhood, it would be inequitable to enforce the covenant. Id. at 632. In every case, save Andrews, cited by the parties or found by the Court where a completed structure was at issue, the courts have declined to issue an injunction, either finding that the violation was not willful, or the property right was not substantial.

In Forstmann v. Joray Holding Co., the plaintiffs brought suit against the defendants seeking an injunction to remove a two-story building on the defendants' property. Forstmann 154 N.E. at 652. The property was subject to a restrictive covenant requiring that only one-story, single-family homes be constructed on it. Id. The trial court denied the injunction, but the Appellate Division reversed. Id. at 654. The Court of Appeals reversed the Appellate Division, holding that it would be inequitable to remove the building because the harm to the defendants outweighed the harm to the plaintiffs. Id. at 655. This was despite the fact that the defendants "proceeded with full knowledge of the facts, and with notice of plaintiffs' claim. . . ." Id. at 655.

In Sussman Volk Co. v. 88 Delicatessen, Inc., a lease holder brought an action seeking an injunction against its sublessee for extensive modifications the sublessee made to the premises in violation of the terms of the sublease. Sussman, 100 N.Y.S.2d at 306-07. Despite the fact that the court found the violation to be willful and deliberate, it denied the injunction and awarded damages instead. Id. at 307. The court found that because the lease holder only had six months left on the lease, the benefit to the lease holder was too insubstantial to justify requiring the sublessee to restore the premises. Id.

While not dealing with a completed building, the case of <u>Evangelical Lutheran Church of the Ascension of Snyder v. Sahlem</u>, cited by George, provides a thorough discussion of the issues. In that case, a church brought an action against a landowner seeking a declaratory judgment that certain restrictive covenants were not in force. <u>Sahlem</u>, 172 N.E. at 456. The trial court found that the covenants were still in force, but also held that the defendant would not be entitled to an injunction to halt construction and could only seek damages. <u>Id.</u> The Appellate Division affirmed. <u>Id.</u> The Court of Appeals reversed, however, holding that an injunction would be appropriate in this case. <u>Id.</u> at 458. The court held that since there was a willful violation and the building was still in the planning stages with only preliminary work done, equity favored granting the injunction. <u>Id.</u> at 457-58. This determination was based, in part, on the court's finding that this situation did not present a "case of irreparable hardship, shocking to the conscience, as where a mandatory injunction would destroy a finished building to vindicate a doubtful right." <u>Id.</u> at 458.

Thus, despite the stated rule that willful violation of a substantial property right justifies injunctive relief, no reported New York case since <u>Andrews</u> has applied this rule to require the removal of a completed structure. It is more accurate to say that the party seeking an injunction to remove a completed structure must show exceptional circumstances of willfulness and a truly substantial property right before an injunction will issue.

For purposes of this decision, it will be assumed that the Debtor had notice of the Easement before constructing the Building. In 2006, prior to the commencement of construction in 2007, George filed a lawsuit against the Debtor in an effort to prevent construction. It will also be assumed the Debtor acted willfully. The Anderson Judgment found that the Debtor willfully violated the Easement. (Anderson Judgement 19.) Although the Anderson Judgment was a default judgment, the Debtor instituted the action and actively participated for a time before abandoning

it. Such a judgment may be entitled to preclusive effect under New York law. See Kanat v. Ochsner, 755 N.Y.S.2d 371 (N.Y. App. Div. 1st Dep't 2003) (holding that default judgment had preclusive effect where party participated in litigation but then abandoned it).[10]

The next question is whether granting the injunction would provide substantial benefit to George. The purpose of the Easement, as set forth in the granting document, is to provide "free and uninterrupted passage" over the right of way created by the Easement. (George Decl. Ex B.) The right of way extends from Seagirt Avenue on the north to the Atlantic Ocean on the south. The Building does not obstruct access to Seagirt Avenue. The Property is the southernmost property on the Block; no bungalows or other buildings lie between it and the beach. The only useful purpose of the portion of the Easement that is obstructed by the Building is to access the Boardwalk and the beach. Therefore, the precise question to be answered is whether access across the Property to get to the beach and the Boardwalk has substantial value such that George would be entitled to an injunction to remove the Building.

First, George does not live at his property on the Block. He lives on Beach 24th Street, one block over and rents the properties he owns to tenants.

Second, even if the Building were removed, it would not improve access to the beach. Both the Boardwalk and the extensive vegetation prevent anyone from actually reaching the beach via the Easement. George contends that he previously maintained a path through the vegetation, and that the Boardwalk was, prior to the construction of the Building, around ten feet above the sand. Mielczarek testified that the Boardwalk was only about three feet off the ground prior to

---

[10] "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006). If the issue has not been litigated, there is no identity of issues between the present action and the prior determination. Id. at 282. Normally, the issue is not fully litigated in a default judgment. Id. (citing Kaufman v. Eli Lilly & Co., 482 N.E.2d 63, 68 (N.Y. 1985))

construction. The Court does not find George's testimony regarding the height of the Boardwalk prior to the construction of the Building credible. Further, even if at one point the Boardwalk was at a height from the ground sufficient to allow a person to walk underneath, the surrounding land, including the beach, is now at a similar elevation to the ground under the Boardwalk. This is apparent from the photographs of the Boardwalk, beach, and the Easement that were received in evidence at the Hearing. (Debtor's Ex. B.) George testified that the actions of the Debtor in placing vegetation along the Boardwalk caused the build-up of the sand under the Boardwalk. (Trial Tr. 47:10-48:16.) The photographs received in evidence, however, show a similar elevation of sand on the beach side of the Boardwalk and in front of other properties and on other blocks. (Debtor's Ex. B.) It would strain credulity to suggest that the actions of the Debtor on the Property caused a general increase in the elevation of the entire beach. Rather, the evidence supports the conclusion that the current elevation of the beach is due to natural forces and not any action of the Debtor. Furthermore, restoring the Boardwalk to its former alleged height would require digging a seven-foot hole underneath it. This would in no way improve access to the beach, as the land on either side of the Boardwalk would remain at its current height. Anyone attempting to access the beach would have to first climb all the way down into the trench under the Boardwalk, and then climb all the way out. The Debtor would not be allowed to excavate sufficient sand from the public beach to make beach access feasible from underneath the Boardwalk, and no party has suggested the Debtor should be compelled to do so. See 6 N.Y.C.R.R. 505.8(b).

Third, accessing the Boardwalk itself from the Easement is impossible for all practical purposes. The Boardwalk is approximately three feet above the ground and has railings on either side. A person would have to climb up the side of the railing to get onto the Boardwalk from the Easement.

Fourth, all the residents of the Block have easy access to both the Boardwalk and the Beach via the ramps on Beach 25th and Beach 26th Streets. This fact is undisputed. The Building does not block access except to the small portion of the Easement running through the Property. Even residents of the inside bungalows can simply walk to one of the streets, and then walk up to the Boardwalk using the ramps. Residents can also access the vegetation on the inside of the Boardwalk by walking to the side of the ramps.

While the Easement is a property right, the evidence shows that the portion of the Easement obstructed by the Building has de minimis value at best. George did not present any evidence at the Hearing regarding the value of the Easement with respect to his property, much less any evidence concerning the value of the portion of the Easement running from his property to the Boardwalk, which is the relevant question here. Rather, George relied upon the Anderson Judgment, which, he claims, shows that the Easement is worth $115,000.00. This amount, however, was awarded by the state court for the diminution of value to *Anderson's* property, not George's. For collateral estoppel to apply under New York law, "the identical issue necessarily must have been decided in the prior action and be decisive of the present action. . . ." Kaufman, 482 N.E.2d at 67. Since the Anderson Judgment determined the diminution of value of Anderson's property only, it has no preclusive effect regarding the diminution of value of George's property. Nor is it entitled to any evidentiary weight. To the extent that the state court's determination of damages awarded to Anderson constitutes evidence concerning the diminution in value of Anderson's property resulting from the obstruction of the southern portion of the Easement, it is hearsay. Moreover, there is no record that the state court considered any valuation evidence in setting the damage amount in the Anderson Judgment. On the record of this case, the Court finds that the portion of the Easement running through the Property is not of substantial value.

The final question to be evaluated is the harm that an injunction would work on the Debtor and its creditors. The evidence presented shows that removal of the Building would impose a substantial burden on the Debtor and its creditors. The testimony at the Hearing established that the Property would have significantly lower value without the building, and George does not dispute this. The Property is the only significant asset owned by the Debtor. The Plan is premised on the sale of the Property, including the Building, free and clear of Easement. Under the Plan, all creditors are receiving a distribution through a carve out from DOF. If the Plan is not confirmed, no creditors other than DOF will realize anything on their claims, including George. In short, removing the Building would scuttle the Plan and leave all creditors except DOF with nothing. Thus, an injunction would be a substantial burden on the Debtor and its creditors.

George argues that the Debtor willfully violated his rights and attempts to profit from wrongful conduct. However, George's conduct in this matter is not that of a litigant with clean hands. George will derive no benefit from the removal of the building, with possible exception of the satisfaction that may come from prevailing over the Debtor, his long-time adversary. He acknowledged as much at the Hearing stating

> Okay, I'm just telling you. So my reason is I'm upset is the law says, what the statutory law, the Public Trust Doctrine says there shall be no obstruction. She stole our property for her own profit and gain. She's making private use out of public property and the Court should not condone that. That's my main argument. Whether it's this or that or I can, with my belly under the boardwalk or go to 26th Street that's not the issue. The issue is they're thieves. They stole our property and they shouldn't be rewarded with a 15 story condominium. That's my argument.

(Trial Tr. 52:8-18.) Nor should the court reward a litigant's stubborn desire to pursue a remedy that would not benefit him, and would harm others (including innocent creditors of the Debtor).

Moreover, George had an opportunity to obtain a determination of his rights with respect to the Easement prior to the construction of the Building, and indeed commenced an action in 2006 to halt construction. After initially granting a temporary restraining order, the state court denied

22

George's application for a preliminary injunction. Order, <u>George v Metroplex on the Atlantics, LLC</u>, Index No. 6138/06, May 2, 2006. The state court, in issuing the Anderson Judgment, noted that "the only reason why, allegedly, that wasn't granted was by [the Debtor] saying there is no easement. And if it shows there is we'll grant a different easement going through our building so they'll have the same beach access." (Anderson Judgment 19.) Even when it must have become apparent to George that no access through the Building was being provided, he took no further steps to halt construction of the Building. The foreclosure proceedings commenced in September, 2010. (Mot. to Dismiss ¶ 14, ECF Doc. No. 13.) A receiver was appointed on May 18, 2011. (<u>Id.</u> at ¶ 17.) Once in the hands of the receiver, no more construction occurred on the building. George, however, did not move to restore the case to active status until July 23, 2013 and made no further motions in that action prior to the Filing Date. (Mot. to Restore to Active Case Status, Index No. 6138/06, July 23, 2013.) For George now, years later, to insist on demolishing the Building to vindicate his rights is inconsistent with the principles of equity. <u>See</u> <u>Marsh</u>, 919 N.Y.S.2d at 538 ("Furthermore, equitable relief may be denied based on the plaintiff's delay in vindicating his or her rights . . . .")

Because the removal of the building would impose a substantial burden on the Debtor and its creditors without providing any actual benefit to George, the Court finds that George can be compelled to accept a monetary satisfaction for his interest in the Easement under state law. Indeed, this is precisely the type of case where an injunction is properly refused. Removal of the Building "would destroy a finished building to vindicate a doubtful right." <u>Sahlem</u>, 172 N.E. at 458.

B.      Bona Fide Dispute Under § 363(f)(4)

The Movants also argue that the Property may be sold free and clear of the Easement under

§ 363(f)(4) because the Easement is in bona fide dispute. However, because the Easement is an

interest subject to § 363(f)(5) for which George can be compelled to accept a monetary remedy,

the Court does not reach and makes no decision concerning the validity of the Easement or whether

it is in bona fide dispute.

C.      Unconstitutional Taking

George also argues that the sale of the Property free and clear of the Easement would be

an unconstitutional taking under the Fifth Amendment. The provisions of the Bankruptcy Code

are subject to the Fifth Amendment's protections. United States v. Sec. Indus. Bank, 459 U.S. 70,

75, 103 S. Ct. 407, 410, 74 L. Ed. 2d 235 (1982). The sale in this case, however, is consistent with

the Fifth Amendment. The Court has found that George can be compelled to accept a monetary

satisfaction for the damages resulting from the obstruction of the Easement under New York law.

A determination by a court that a certain interest is subject to a monetary award does not violate

the Fifth Amendment. See In re Gulf States Steel, Inc. of Alabama, 285 B.R. 497, 513 (Bankr.

N.D. Ala. 2002).

D.      Adequate Protection

George contends that if the Property can be sold free and clear of the Easement, he is

entitled to adequate protection. Section 363(e) allows the holder of an interest in property of the

debtor to seek adequate protection for any proposed use, sale, or lease of the property. 11 U.S.C.

§ 363(e). In this case, George's claim is part of Class 4 under the Plan. At a minimum, Class 4 will

share in a distribution of $25,000.00. As of the Easement Claim Bar Date, only one other Alleged

Easement Holder had filed a claim. Thus, George is set to receive a distribution of $12,500.00

under the Plan, which, the Debtor argues, is sufficient to satisfy any right George may have to adequate protection. In light of the evidence that George's claim for damages resulting from the obstruction of the Easement by the Building is of <u>de minimis</u> value, the Court finds that the proposed distribution under the plan is more than sufficient to adequately protect George's interest.

<u>CONCLUSION</u>

For the reasons stated above, the Motion is granted and all objections are overruled. A separate order will issue.



**Dated: Brooklyn, New York**
**February 24, 2016**

**Carla E. Craig**
**United States Bankruptcy Judge**